Scott D. Baker (SBN 84923)
Email:  sbaker@reedsmith.com
John P. Bovich (SBN 150688)
Email:  jbovich@reedsmith.com
Jonah D. Mitchell (SBN 203511)
Email:  jmitchell@reedsmith.com
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA  94111-3922
Telephone:     415.543.8700
Facsimile:     415.391.8269

Attorneys for Siemens Medical Solutions USA,
Inc. and Siemens AG

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR SYSTEMS, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>FUJIFILM MEDICAL SYSTEMS USA, INC.; GE HEALTHCARE LTD, GE MEDICAL SYSTEMS, INC., KONINKLJKE PHILIPS ELECTRONICS N.V., PHILIPS ELECTRONICS NORTH AMERICA CORPORATION, AGFA-GEVAERT N.V., AGFA CORPORATION, DYNAMIC IMAGING, LLC, SIEMENS MEDICAL SOLUTIONS USA, INC., SIEMENS CORPORATION, SIEMENS AG AND EASTMAN KODAK COMPANY,<br><br>Defendants. | No.: 06 CV0417B (NLS)<br><br>**OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4 (A)**<br><br>Date:          February 27, 2007<br>Time:          9:00 a.m.<br><br>Honorable  Rudi M. Brewster |
| SIEMENS MEDICAL SOLUTIONS USA, INC.,<br><br>Counterclaimant,<br><br>vs.<br><br>DR SYSTEMS, INC., a California corporation,<br><br>Counterdefendant. | |

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

No.: 06 CV0417B (NLS)                                                                        DOCSSFO-12462735.1

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

**EXHIBIT LIST**

Pages

**Exhibit A**
United States Patent No. 6,032,120 — 1-9

**Exhibit B**
United States Patent No. 6,241,668 B1 — 10-14

**Exhibit C**
United States Patent No. 6,603,868 B1 — 15-24

**Exhibit D**
Prosecution history for the '120 Patent — 25-143

**Exhibit E**
Prosecution history for the '668 Patent — 144-235

**Exhibit F**
Prosecution history for the '868 Patent — 236-371

**Exhibit G**
Amended Joint Claim Construction Chart for the '668 and '868 Patents — 372-399

**Exhibit H**
Joint Claim Construction Chart, as originally filed,
for the '668, '868 and '120 Patents — 400-447

**Exhibit I**
Excerpts from The Manual for Patent Examination Procedures (MPEP),
Section 2173.05(e) (8th ed. 2001); and Robert C. Faber,
Landis on Mechanics of Patent Claim Drafting, Ch. 3, § 3:11 (PLI 2005). — 448-452

No.: 06 CV0417B (NLS)                    – i –                    DOCSSFO-12462735.1

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**TABLE OF CONTENTS**

Page

I  INTRODUCTION ............................................................................................. 1

II  GENERAL PRINCIPLES OF CLAIM CONSTRUCTION ............................ 2

    A.  Patent Claim Terms Are Construed As A Matter Of Law ............................. 2

    B.  The Starting Point For Claim Construction Is The Intrinsic Record ............................ 2

    C.  Special Rules Apply For The Construction Of "Means-Plus-Function" Claim Terms ................................................................................. 4

III  LEGAL ANALYSIS ........................................................................................ 5

    A.  The '120 Patent ............................................................................................. 6

        1.  Asserted Claims of the '120 Patent ................................................... 8

        2.  Proper Construction of the Disputed Claim Terms of The '120 Patent ...................................................................................... 8

            a.  Claim 1 ....................................................................................... 8

                (1)  "Information" means "a string of characters" .................................................................. 8

                (2)  "Client application" means "a software program that is executed on a client computer" ................................................ 10

                (3)  "Server Application" means "a software program that is executed on a server computer" ............................................. 13

                (4)  "Said information not being provided by the server application" means what it says ............................. 14

                (5)  "Using the client application to display" means what it says .................................................. 16

             b.  Claim 2 ....................................................................................... 18

                (1)  "Said user request being the only user request sent from the client application during the accessing-and-displaying process to identify said medical study" means what it says ....................................................... 18

             c.  Claim 15 ..................................................................................... 20

                (1)  "Client device" means "a client computer" ............................. 21

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL  RULE 4.4

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

(2)   "Server device" means "a server computer"............................22

B.   The '668 Patent............................................................................23

1.   The Asserted Claims of the '668 Patent ................................25

2.   Proper Construction of the Disputed Terms of The '668
Patent.......................................................................................25

a.   Claim 1............................................................................25

(1)   "Patient-related data" means "patient data
related to a patient or otherwise associated
with patient images, such as a patient name,
identifier and other patient specific
information, including patient specific
information compatible with, for example,
the DICOM standard"............................................26

(2)   "Entering patient-related data for
permanent association with said medical
image" means "entering patient-related data
that is inseparably joined with a medical
image"....................................................................28

(3)   The Associated Structure for "Means for
entering said digital data into said work
station" is the data and electrical
connections shown in Figs. 1 and 2 and
their descriptions ..................................................30

(4)   "For permanent association in said patient-
related data with said medical image for
unambiguously identifying said
examination subject" means "fixed
association in the patient-related data
including a medical image for
unambiguously identifying a patient".....................34

C.   The '868 Patent............................................................................36

1.   The Asserted Claims of the '868 Patent ................................37

2.   Proper Construction of the Disputed Claim Terms of the
'868 Patent ..............................................................................37

a.   Claim 1............................................................................37

(1)   "Arbitrarily oriented" means "no fixed or
predefined angular relationship".............................38

IV   CONCLUSION .................................................................................................39

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ACTV, INC v. Walt Disney Co.*,
  346 F.3d 1082 (Fed. Cir. 2003) ...................................................................9, 11, 13, 21, 27, 38

*Atmel Corp. v. Information Storage Devices, Inc.*,
  198 F.3d 1374 (Fed. Cir. 1999) ...............................................................................................32

*Brown v. 3M*,
  265 F.3d 1349 (Fed. Cir. 2001) ...........................................................................3, 14, 17, 19

*Budde v. Harley-Davidson, Inc.*,
  250 F.3d 1369 (Fed. Cir. 2001) .........................................................................................5, 32

*Callicrate v. Wadsworth Mfg. Inc.*,
  427 F.3d 1361 (Fed. Cir. 2005) .................................................................................................4

*CVI/Beta Ventures, Inc. v. Tura LP*,
  112 F.3d 1146 (Fed. Cir. 1997) .................................................................................4, 10, 25, 30, 35

*Dorel Juvenile Group Inc. v. Graco Children's Prods., Inc.*,
  429 F.3d 1043 (Fed. Cir. 2005) .................................................................................................4

*Eolas Techs. Inc. v. Microsoft Corp.*,
  399 F.3d 1325 (Fed. Cir. 2005) ...........................................................................................4, 12

*GTE Wireless, Inc. v. Qualcomm, Inc.*,
  188 F. Supp. 2d 1201 (S.D. Cal. 2002).............................................................................2, 3, 4

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
  381 F.3d 1111 (Fed. Cir. 2004) .................................................................................................3

*In re Dossel*,
  115 F.3d 942 (Fed. Cir. 1997) ................................................................................................32

*Intel Corp. v. Via Techs., Inc.*,
  319 F.3d 1357 (Fed. Cir. 2003) ..............................................................................................33

*Interactive Gift Express, Inc. v. Compuserve, Inc.*,
  256 F.3d 1323 (Fed. Cir. 2001) .................................................................3, 11, 15, 17, 19, 21, 29

*Johnson Worldwide Assoc. v. Zebco Corp.*,
  175 F.3d 985 (Fed. Cir. 1999).............................................................................15, 17, 19, 29

*JVW Enters. v. Interact Accessories, Inc.*,
  424 F.2d 1324 (Fed. Cir. 2005) ....................................................................................... passim

*Lemelson v. United States*,
  752 F.2d 1538 (Fed. Cir. 1985) ..............................................................................................17

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004) ...........................................................................................15, 17

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Markman v. Westview Instruments, Inc. ("Markman I")*,
    52 F.3d 967 (Fed. Cir. 1995)(en banc), aff'd 517 U.S. 370 (1996)....................................5, 33

*Markman v. Westview Instruments, Inc. ("Markman II")*,
    517 U.S. 370 (Fed. Cir. 1996) .......................................................................2, 26

*Multiform Desiccants, Inc. v. Medzam, Ltd.*,
    133 F.3d 1473 (Fed. Cir. 1998) ...................................................................... 3

*Nazomi Commc'ns, Inc. v. ARM Holdings, PLC*,
    403 F.3d 1364 (Fed. Cir. 2005) .......................................................................12

*Orion IP LLC v. Staples, Inc.*,
    406 F. Supp. 2d 717 (E.D. Tex. 2005)..................................................................5

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ................................................................. passim

*Power Mosfet Techs. v. Siemens AG*,
    378 F.3d 1396 (Fed. Cir. 2004) .......................................................................27

*S3 Inc. v. nVIDIA Corp.*,
    259 F.3d 1364 (Fed Cir. 2001) ...................................................................5, 32

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
    242 F.3d 1337 (Fed. Cir. 2001) .......................................................................15

*Turrill v. Mich. S. & N. Ind. R.R.*,
    68 U.S. 491 (1863)..........................................................................................34

*Vas-Cath, Inc. v. Mahurkar*,
    935 F.2d 1555 (Fed. Cir. 1991) .......................................................................32

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) .......................................................................2

**STATUTES**

35 U.S.C. § 112, ¶ 6......................................................................................................4

**OTHER**

Landis on Mechanics of Patent Claim Drafting, Ch. 3 § 3:11 ......................................29

The Manual for Patent Examination Procedures (MPEP), Section 2173.05(3) ...........................29

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

## I      INTRODUCTION

This case involves patents relating to medical imaging, display and retrieval technology. A "medical image" is an image (such as an MRI or X-ray) used by a radiologist to diagnose illness or injury. The images are viewed on networked computer systems typically including one or more server computers and a series of workstation computers. The workstation computers also display a user interface for system operation and navigation. Plaintiff and Counterclaim Defendant, DR Systems Inc. ("DR") and Defendant and Counterclaimant, Siemens Medical Solutions U.S.A. ("Siemens Medical"),[1] sell these systems to hospitals and medical imaging centers. The market for these products is a highly-competitive one in which Siemens is a leader and innovator. Not surprisingly, Siemens owns a robust portfolio of patents relating to the viewing and management of medical images.[2]

In this action, Siemens Medical and Siemens AG have asserted counterclaims for patent infringement against DR's "Dominator," "Web Dominator," and "Catapult" products ("DR's Infringing Products"). Siemens Medical asserts U.S. Patent No. 6,032,120, entitled "Accessing Stored Ultrasound Images and Other Digital Medical Images ("the '120 Patent"). Siemens AG asserts U.S. Patent No. 6,241,668, entitled "Medical System Architecture" ("the '668 Patent"), and U.S. Patent No. 6,603,868, entitled "Method and Apparatus for Processing and Playback of Images at a Display Monitor" ("the '868 Patent").[3]

---

[1]  Defendant and Counterclaimant, Siemens AG, is a German corporation globally offering a diverse array of products and services, including communications systems, consumer electronics, transportation solutions and business and financial services. Defendant and Counterclaimant Siemens Corporation asserts only counterclaims for declaratory relief. Siemens AG and Siemens Medical are collectively referred to herein as "Siemens."

[2]  DR has asserted against the industry its sole patent, U.S. Patent No. 5,452,416 ("the '416 patent"). Construction of the '416 patent is the subject of separate briefing.

[3]  Collectively, the three patents asserted by the Siemens entities are referred to herein as "the Siemens Patents."

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

1   A claim for patent infringement involves a two step inquiry. First, the claims of the

2   patent are construed by the Court as a matter of law. Once the claims are properly construed, the

3   second issue is whether the claims "read on" the accused devices. This latter issue presents a

4   factual question. The parties come now before the Court to address the first step: claim

5   construction.

6

7   For the reasons discussed below, Siemens' proposed constructions afford disputed

8   claim terms their ordinary and customary meaning in view of the intrinsic evidence and follow the

9   canons of claim construction. The Court should, therefore, adopt them. Conversely, DR's self-

10  serving, litigation-driven proposed claim constructions improperly limit the scope of the claims of

11  the Siemens' Patents by running afoul of well-established claim construction principles.

12  Accordingly, the Court should reject DR's proposed claim constructions.

13

14  **II       GENERAL PRINCIPLES OF CLAIM CONSTRUCTION**

15  **A.      Patent Claim Terms Are Construed As A Matter Of Law**

16  The claims of a patent define the scope of the invention to which the patentee is

17  entitled the right to exclude. *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en*

18  *banc*); *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("we look to the

19  words of the claims themselves … to define the scope of the patented invention"). As the Court is

20  well aware, under *Markman* and its progeny, claim construction is a matter of law within the

21  exclusive province of the Court. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 391

22  (1996) (*Markman II); GTE Wireless, Inc. v. Qualcomm, Inc.,* 188 F. Supp. 2d 1201, 1207 (S.D.

23  Cal. 2002) (J. Brewster).

24

25  **B.      The Starting Point For Claim Construction Is The Intrinsic Record**

26  In construing claim language, the starting point for the Court is the "intrinsic

27  record," which includes the claim language itself, the rest of the specification and the prosecution

28  history of the patent. *Vitronics,* 90 F.3d at 1582; *GTE Wireless,* 188 F. Supp. 2d at 1208. The

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

1   words of a claim "are generally given their ordinary and customary meaning." *Phillips*, 415 F.3d

2   at 1312; *GTE Wireless*, 188 F. Supp. 2d at 1208. The "ordinary and customary meaning of a claim

3   term is the meaning that the term would have to a person of ordinary skill in the art in question at

4   the time of the invention…." *Phillips*, 415 F.3d at 1313; *Interactive Gift Express, Inc. v.*

5   *Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) ("In construing claims, the analytical

6   focus must begin and remain centered on the language of the claims themselves ….")

7

8        In some cases, the customary meaning of claim language as understood by a person

9   of ordinary skill in the art may be readily ascertainable to judges, and "claim construction in such

10  cases involves little more than the application of the widely accepted meaning of commonly

11  understood words." *Phillips*, 415 F.3d at 1314; *see Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir.

12  2001) (holding that the claims did "not require elaborate interpretation").

13

14       In other instances, however, determining the ordinary and customary meaning of the

15  claim requires examination of terms that have a particular meaning in a field of art. *Id.* In those

16  instances, "and because patentees frequently use terms idiosyncratically, the court looks to 'those

17  sources available to the public that show what a person of skill in the art would have understood

18  disputed claim language to mean.'" *Phillips*, 415 F.3d at 1314, *quoting, Innova/Pure Water, Inc. v.*

19  *Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004). "Those sources include

20  'the words of the claims themselves, the remainder of the specification, the prosecution history,

21  and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms,

22  and the state of the art.'" *Id.*

23

24       In *Phillips*, the Federal Circuit reaffirmed the central role of the specification in

25  construing claim terms, noting that "the best source for understanding a technical term is the

26  specification from which it arose…." *Phillips*, 415 F.3d at 1315, *quoting, Multiform Desiccants,*

27  *Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1478 (Fed. Cir. 1998). While the specification is the primary

28  source to be consulted during claim construction, it is also axiomatic that the court should not

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    import limitations from the specification not present in the claims themselves. *Dorel Juvenile*

2    *Group, Inc. v. Graco Children's Prods., Inc.,* 429 F.3d 1043, 1045 (Fed. Cir. 2005); *Callicrate v.*

3    *Wadsworth Mfg. Inc.,* 427 F.3d 1361, 1367-68 (Fed. Cir. 2005); *JVW Enters. v. Interact*

4    *Accessories, Inc.,* 424 F.3d 1324, 1325 (Fed. Cir. 2005). Further, the Court should not read a

5    preferred embodiment into a claim in the absence of clear evidence in the record that the claim is

6    so limited. *Eolas Techs. Inc. v. Microsoft Corp.,* 399 F.3d 1325, 1336 (Fed. Cir. 2005) ("absent a

7    clear disclaimer in the specification, the embodiments in the specification do not limit broader

8    claim language").

9

10    Finally, the Court should give claim terms a consistent meaning when used similarly

11    and consistently within the same claim, or other claims, in the patent. *Phillips,* 415 F.3d at 1314

12    ("[C]laim terms are normally used consistently throughout the patent"). The parties do not dispute

13    that this canon of claim construction should be applied here.

14

15    **C.    Special Rules Apply For The Construction Of "Means-Plus-Function" Claim**

16    **Terms**

17    Title 35 U.S.C. Section 112, paragraph 6 provides special rules for construing

18    claims that are drafted in a "means-plus-function" format. Section 112, paragraph 6 provides that

19    claim limitations must "be construed to cover the corresponding structure, material, or acts

20    described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6. Consequently, "a

21    claim element written in means-plus-function format will have two parts: (1) a function and (2) a

22    corresponding structure which performs the function." *GTE Wireless,* 188 F. Supp. 2d at 1208. To

23    constitute "corresponding structure," the specification or prosecution history must link or associate

24    the structure to the function recited in the claim. *Id.*

25

26    The first step in construing a means-plus-function limitation is a determination of

27    the function. *JVW Enters.,* 424 F.3d at 1330. In determining the function, the Court should use the

28    function explicitly recited in the claim. *Id.* After determining the limitation's function, a court

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  must "identify the corresponding structure in the written description that performs that function.

2  *Id.*

3

4          It is also axiomatic that means-plus-function claim terms are presumed to be valid

5  and to be supported by corresponding structure. *S3* Inc. *v. nVIDIA Corp.,* 259 F.3d 1364, 1367

6  (Fed Cir. 2001) ("claims as granted are accompanied by a presumption of validity based on

7  compliance with, *inter alia,* §112, ¶ 2"). Accordingly, because the consequence is invalidity, any

8  argument that a means-plus-function element lacks structural support must be proven by clear and

9  convincing evidence. *Budde v. Harley-Davidson, Inc.,* 250 F.3d 1369, 1347 (Fed. Cir. 2001).

10  Finally, courts have concluded that claim construction is not the appropriate time for addressing

11  such invalidity arguments. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 986 (Fed.

12  Cir. 1995) (*en banc*) ("*Markman I*"); *Orion IP, LLC v. Staples, Inc.,* 406 F. Supp. 2d 717, 737-38

13  (E.D. Tex. 2005).

14

15                       **III    LEGAL ANALYSIS**

16          The claim terms of the Siemens' '120, '668 and '868 Patents are discussed below in

17  the order in which they appear in the claims. The parties have stipulated (1) to the construction of

18  certain terms and (2) that to the extent a term is repeated in the same or subsequent claim, the term

19  or phrase should be interpreted consistently (with one exception advanced by DR that is addressed

20  below). The full text of the patents, their prosecution/file histories ("FH") and the joint claim

21  construction charts, as originally filed and amended, are attached as Exhibits to the supporting

22  Declaration of John P. Bovich (the "Bovich Declaration" or "Bovich Dec.").[4]

23

24

25

26

27  [4]     Accordingly, all evidentiary/exhibit citations are to the Bovich Declaration unless
otherwise noted.

28

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

## A.    The '120 Patent

The '120 Patent simplifies the methods used to retrieve medical images of a patient from a database.  Prior art techniques for retrieving medical images typically involved the use of a complex, multiple "request/response" dialogue between a workstation computer, which displays the medical images, and a database computer, which the provides the images to the client from a database.  In the prior art, a user wishing to view certain medical images of a patient would enter a search query containing a patient identifier (*e.g.,* a patient ID number).  In response, a server might list many different studies each containing multiple series of medical images associated with that patient.  From this list, the user would, for example, select the appropriate image study and further would navigate to locate required images in a series.  In contrast, when a system is practicing the invention described and claimed by the '120 Patent, the client uses a "single request" to allow immediate retrieval of particular patient specific images thereby reducing dramatically navigational burden and retrieval time.  The full text of the '120 Patent and its prosecution history are attached as Exhibits A and D, respectively, to the Bovich Declaration.

//

//

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware



Fig. 1

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

1.      **Asserted Claims of the '120 Patent**

Siemens has asserted Claims 1, 2, 3, 6, 7, 15, 16, 17, 19, 20, 24 and 25 of the '120 Patent.  Because Claims 1, 2 and 15 contain all the terms and phrases that require construction, only those claims are addressed below. The seven terms and phrases within those three claims that require construction are set forth, in the order in which they appear, in bold italics below.

2.      **Proper Construction of the Disputed Claim Terms of The '120 Patent**

a.      **Claim 1**

Five terms or phrases in Claim 1 of the '120 Patent require construction:  (1) "Information," (2) "Client Application," (3) "Server Application," (4) "Said information not being provided by the server application; and (5) "Using the client application to display."

Claim 1, in full, provides:

A method for accessing and displaying a digital medical image; said method comprising the steps of:
(a) sending a request comprising *information* identifying a medical study from a *client application*  to *a server application*, *said information not being provided by the server application*; then
(b) using the server application to automatically send the client application a digital medical image associated with said medical study in response to said request; and then
(c) *using the client application to display* said digital medical image.

(1)      **"Information" means "a string of characters"**

| Claim Term | SIEMENS' Proposed Construction | DR SYSTEMS' Proposed Construction |
|------------|-------------------------------|-----------------------------------|
| "information" | a string of characters (such as letters or numbers) | non image data particular to a patient's medical study |

The proper construction of the term "information" cannot be seriously disputed.  By way of background, the parties agree to the construction of a number of terms in Claim 1, including the phrase "information identifying a medical study" ("*a string of characters (such as letters or numbers)* to uniquely identify a medical study").  While DR has, therefore, agreed to the construction of "information identifying a medical study," DR refuses to agree to the construction

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   of the term "information" in isolation, and instead urges a construction of the term "information"
2   which is inconsistent with the agreed construction of the phrase "information identifying a medical
3   study." Put differently, DR refuses to stipulate that "information" means the same thing in
4   isolation as it admittedly does when the term is used in conjunction with the words that
5   immediately follow it -- "information identifying a medical study." Conversely, Siemens'
6   proposed construction for "information": "a string of characters (such as letters or numbers)"
7   mirrors the agreed construction of the term "information" as it occurs within the phrase
8   "information identifying a medical study."

10       Not only is Siemens' proposed construction of the term "information" consistent
11  with the parties' agreement, it also comports with a plain and ordinary meaning of the term, and is
12  further supported by intrinsic evidence, including the context of the other terms in the claim and
13  the patent as a whole. *Phillips,* 415 F.3d at 1314 *citing ACTV, Inc. v. Walt Disney Co.,* 346 F.3d
14  1082, 1088 (Fed. Cir. 2003) ("the context of the surrounding words of the claim also must be
15  considered in determining the ordinary and customary meaning of those terms"). For example, the
16  specification describes information identifying a particular medical study and then expressly
17  provides that this "*information* can be in the form of, for example, a patient accession number *(i.e.*
18  *a string of alpha-numeric characters* that is typically generated by a hospital's medical
19  information system to uniquely identify a particular medical study)." Ex. A ('120 Patent, Col.
20  3:11-18).

22       Siemens' proposed construction of "information," as being coextensive with
23  "information for identifying a medical study," also finds support in the prosecution history of the
24  '120 Patent. *See* Ex. D ('120 Patent, FH (9/24/99 Response to Initial Office Action at SM031030-
25  033 ("With the claimed invention, the information in the request used to identify the medical study
26  is *not* provided by the server application")) (emphasis in original).

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Inexplicably, in support of its proposed construction of "information," DR cites to the same evidence relied on by Siemens in support of its proposed construction. However, DR then adds to its construction the phrase "non-image data," a phrase which is entirely *inconsistent* with this evidence and not found in the specification or prosecution history. As mentioned above, this approach invites legal error by urging a construction of "information" which is inconsistent with the agreed-upon construction of "information identifying a medical study." *Phillips,* 415 F.3d at 1314 ("[C]laim terms are normally used consistently throughout the patent") *CVI/Beta Ventures* at 1159 ("[W]e are obliged to construe the term 'elasticity' consistently throughout the claims").

Accordingly, the Court should reject DR's proposed construction and construe "information" to mean "a string of characters (such as letters or numbers)."

**(2)      "Client application" means "a software program that is executed on a client computer"**

| Claim Term | SIEMENS' Proposed Construction | DR SYSTEMS' Proposed Construction |
|---|---|---|
| "client application" | a software program that is executed on a client computer | an application process (i.e., software) on a medical image reviewing computer that includes, at least, a request sending routine, a digital medical image display routine and a user interface driver |

Siemens' proffered construction for "client application" – "a software program that is executed on a client computer" –comports with the canons of construction and should be adopted. Siemens' proposed construction is straightforward and, when read in context with the other terms and limitations of Claim 1 and the '120 Patent as a whole, comports with the plain and ordinary meaning of the term. *Phillips,* 415 F.3d at 1314; *ACTV,* 346 F.3d at 1088.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Indeed, Siemens and DR agree that "client application" refers to software; however,

2  the parties disagree as to whether the claims are limited to a particular type of software.  Consistent

3  with the claims, Siemens contends that the straightforward interpretation of the term "client

4  application" is that the software is executed on a client computer.  However, as can be seen in the

5  above chart, DR attempts to import numerous additional limitations and detail from the preferred

6  embodiment into the claim.  The court should reject this attempt.

7

8    In construing the term "client application," the "analytical focus must begin and

9  remain centered on the languages of the claims themselves." *Interactive Gift Express,* 256 F.3d at

10  1331.  The plain and ordinary meaning of "client application," within the context of the

11  surrounding words and phrases of Claim 1, requires nothing more than a "software program that is

12  executed on a client computer."

13

14    Siemens' proposed construction of "client application" is further supported by other

15  intrinsic evidence.  For example, the specification makes clear that "client application" refers

16  generally to software.  Ex. A ('120 Patent, Col. 2:45-67 ("It is preferred that these routines be

17  implemented with software and the client and server devices comprise the necessary hardware

18  components (such as CPU) to run the software")).

19

20    DR's proposed construction of "client application" – "an application process (i.e.

21  software) on a medical image reviewing computer that includes, at least, a request sending routine,

22  a digital image medical image display and a user interface driver" – should, however, be rejected

23  for several reasons.  In a thinly-veiled effort to escape infringement, DR's proffered construction of

24  "client application" represents the first of many instances where DR invites the Court to err by

25  importing limitations from the specification to the claim terms and/or limiting the construction to

26  the preferred embodiment. *JVW Enters.,* 424 F.3d at 1325 ("We do not import limitations into

27  claims from examples or embodiments appearing only in a patent's written description, even when

28  a specification describes very specific embodiments of the invention or even describes only a

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

single embodiment, unless the specification makes clear that 'the patentee … intends for the claims and the embodiments in the specification to be strictly coextensive"), *quoting Phillips,* 415 F.3d at 1323.

Although the description of the *preferred* embodiment includes references to a medical image reviewing computer, [5] a request sending routine, a digital medical image display and a user interface driver, nothing within the claim language or the Specification requires or justifies construing "client application" so narrowly.  *Eolas*, 399 F.3d at 1334 ("absent a clear disclaimer in the specification, the embodiments in a specification do not limit broader claim language"); *Nazomi Commc'ns., Inc. v. ARM Holdings, PLC,* 403 F.3d 1364, 1369 (Fed. Cir. 2005) (claims may embrace "different subject matter than is illustrated in the specific embodiments in the specification").

Finally, DR's proposed construction of "client application" is also not supported by the *extrinsic* evidence on which it purportedly relies.  More specifically, DR cites both to a general purpose and to three technical dictionaries in support of its definition of "client application."  But, *none* of these dictionaries supports DR's definition.  Nowhere do any of these definitions suggest that a "client application" must include software running "on a medical image reviewing computer that includes, at least, a request sending routine, a digital medical image display routine and a user interface driver."

Accordingly, the Court should reject DR's proposed construction and construe "client application" to mean "a software program that is executed on a client computer."

---

5      "It is also *preferred* that an AEGIS Medical Imaging Review Station…be used as the client … device[]."  Ex. A ('120 Patent, Col. 2:63-66 (emphasis added); *see also, id.* at  Col. 2:47-53).

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

**(3)** "Server Application" means "a software program that is executed on a server computer"

| Claim Term | SIEMENS' Proposed Construction | DR SYSTEMS' Proposed Construction |
|---|---|---|
| "server application" | a software program that is executed on a server computer | an application process (i.e., software) on a medical image study repository computer that includes, at least, a medical study location routine and a digital medical image send routine |

The parties also dispute the meaning of "server application." This claim construction dispute is the mirror image of the parties' dispute over "client application" above. And, for the same reasons, the Court should adopt Siemens' proposed construction.

Specifically, Siemens' proffered construction for "server application" – "a software program that is executed on a server computer" –comports with the canons of construction and should be adopted. Siemens' proposed construction of "server application" parallels its straightforward, plain meaning construction of "client application." And, when read in context with the other words of Claim 1 and the '120 Patent as a whole, Siemens' construction of "server application" comports with the plain and ordinary meaning of the term. *Phillips,* 415 F.3d at 1314; *ACTV,* 346 F.3d at 1088. Again, Siemens and DR agree that "server application" refers to software; once again, however, DR attempts to import additional limitations and detail from the preferred embodiment description to the broader claim meaning is appropriate. The Court should, again, reject DR's improper attempt to limit the claim scope.

The specification also supports Siemens' proposed construction of "server application." For example, the specification, once again, makes clear that "server application" refers generally to the software. Ex. A ('120 Patent, Col. 2:55-67 ("It is preferred that these routines be implemented with software and the client and server devices comprise the necessary hardware components (such as CPU) to run the software")).

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

DR's proposed construction of "server application" – "an application process (*i.e.,* software) on a medical image study repository computer[6] that includes, at least, a medical study location routine and a digital medical image send routine" – fails for the exact reasons as its proposed construction of "client application." Accordingly, the Court should reject DR's proposed construction and construe "server application" to mean "a software program that is executed on a server computer."

(4)    "Said information not being provided by the server application" means what it says

| Claim Term | SIEMENS' Proposed Construction | DR SYSTEMS' Proposed Construction |
|---|---|---|
| "said information not being provided by the server application" | plain meaning<br>the information is not provided by the server application | the server application *never* provides information about a study that is used by a user to identify digital medical image to be sent to the client application |

The proper construction for the phrase, "said information not being provided by the server application," is its plain meaning. Accordingly, Siemens' proposed construction of the phrase is simply a re-statement of it: "the information is not provided by the server application." *See Brown v. 3M,* 265 F.3d at 1352 (holding that the claims did "not require elaborate interpretation"). DR, on the other hand, attempts to import the limitation that "the server application *never* provides information about a study…." Because neither the ordinary and customary language of the claim nor the specification supports such a limitation, the Court should reject it.

---

[6] "It is also *preferred* that an AEGIS Study Repository Server from Acuson Corporation be used as the … server device[] …." Ex. A ('120 Patent, Col. 2:63-66 (emphasis added)).

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Where, as here, the claim language is clear on its face, the Court should use

2  remaining intrinsic evidence only to determine if a narrowing of the clear language of the claims is

3  required. *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d at 1331; *see also JVW*

4  *Enters.*, 424 F.3d at 1325.  To that end, claim terms cannot "be narrowed by reference to the

5  written description or prosecution history unless the language of the claims invites reference to

6  those sources." *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 989-90 (Fed. Cir.

7  1999).

8

9    Here, the specification, not surprisingly, supports Siemens' plain meaning

10  construction of the phrase.  *See* Ex. A ('120 Patent, Col. 1:49:57, Col. 2:18-20, Col. 2:45-53, Col.

11  3:1-10, Col. 3:41-44 and Figs 1-3).  Further, the inventors of '120 Patent did *not* clearly and

12  unambiguously disavow any claim scope in the specification or prosecution history. *JVW Enters.*,

13  424 F.3d at 1325;  *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004);  *cf.*

14  *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir.

15  2001) (proper to limit disputed claim term based in part on statements in the specification

16  indicating that "all embodiments" of the claimed invention used a particular structure).  Indeed, the

17  converse is true; the inventors of '120 Patent expressly stated:

18

19    It is intended that the foregoing ***detailed description*** be understood as
    ***an illustration*** of selected forms that the invention can take ***and not as a***

20    ***definition*** of the invention.  It is only the claims, including all equivalents,
    that are intended to define the scope of this invention. Ex. A ('120 Patent,

21    Col. 5:9-13 (emphasis added)).

22    Similarly, the inventors did not clearly disavow claim scope in the prosecution

23  history.  Rather, the prosecution history expressly confirms Siemens' plain meaning construction.

24  Ex. D ('120 Patent FH (12/16/97 Response to Office Action) at  SM031031 ("With the claimed

25  invention, the information in the request used to identify the medical study is ***not*** provided by the

26  server application") (emphasis in original)).

27

28

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    DR's proposed construction of the phrase – "the server application *never* provides

2    information about a study that is used by a user to identify digital medical image to be sent to the

3    client application" -- violates the canons of construction by improperly importing unnecessary

4    limitations into the Claim.  *JVW Enters.,* 424 F.3d at 1325; *Phillips,* 415 F.3d at 1323.

5

6    More specifically, DR attempts to narrow the claim scope by improperly adding the

7    limitation "*never*" -- not by importing it from the specification – but, worse yet, by importing it

8    apparently from thin air.  While it is true that the server application does not provide the claimed

9    information when practicing the invention of the '120 Patent, that is not to say that a system which

10   practices the invention can *never* provide such information, for example when operating in a

11   different mode.  DR's attempt to so limit the claims is a litigation-driven attempt to inject

12   argument, not evidence, into the '120 Patent.  Because the claim language does not employ or even

13   suggest such a limitation and because the inventors of '120 Patent did not clearly disavow any

14   claim scope in the specification or prosecution history, the Court should decline DR's invitation to

15   err.  *JVW Enters.,* 424 F.3d at 1325.

16

17   Accordingly, the Court should reject DR's proposed construction and adopt

18   Siemens' proffered construction:  "the information is not provided by the server application."

19

20   **(5)     "Using the client application to display" means what it says**

21

| Claim Term | SIEMENS' Proposed Construction | DR SYSTEMS' Proposed Construction |
|---|---|---|
| "using the client application to display" | plain meaning<br><br>using the client computer program to display | the digital medical image display routine outputs the image(s) to a monitor screen *automatically* |

26   The proper construction for the phrase, "using the client application to display" is its

27   plain meaning.  Accordingly, Siemens' proposed construction of the phrase is simply a re-

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    statement of it: "using the client computer program to display." *See Brown v. 3M,* 265 F.3d at

2    1352 (holding that the claims did "not require elaborate interpretation").

3

4            Where, as here, the claim language is clear on its face, the Court should use

5    remaining intrinsic evidence only to determine if a narrowing of the clear language of the claims is

6    required. *Interactive Gift Express,* 256 F.3d at 1331; *see also JVW Enters.,* 424 F.3d at 1325.  To

7    that end, claim terms cannot "be narrowed by reference to the written description or prosecution

8    history unless the language of the claims invites reference to those sources." *Johnson*

9    *Worldwide,* 175 F.3d at 989-90.

10

11           Here, the specification supports Siemens' plain meaning construction of the phrase.

12   *See* Ex. A ('120 Patent, Col. 1:49:57, Col. 2:18-20, Col. 2:45-53, Col. 3:1-10, Col. 3:41-44 and

13   Figs 1-3).  Further, the inventors of '120 Patent did *not* clearly and unambiguously disavow any

14   claim scope in specification or prosecution history. *JVW Enters.,* 424 F.3d at 1325; *Liebel-*

15   *Flarsheim,* 358 F.3d at 906.  Indeed, the inventors of the '120 Patent expressly stated the

16   embodiments in the written description were illustrative of, rather than defining, their invention.

17   Ex. A ('120 Patent, Col. 5:9-13).

18

19           DR's proposed construction  – "the digital medical image display routine outputs

20   the image(s) to a monitor screen ***automatically***" -- violates the canons of claim construction by

21   importing limitations from the specification, that is, the term "automatically" - to try to limit the

22   scope of claim language that is clear on its face. *JVW Enters.,* 424 F.3d at 1325.  *Interactive Gift*

23   *Express,* 256 F.3d at 1331. s*ee also Lemelson v. United States,* 752 F.2d 1538, 1552 (Fed. Cir.

24   1985) (holding that term "prepositioning" in a claim was ***not*** limited to ***automatic*** prepositioning,

25   even though the specification repeatedly referred to automatic prepositioning and never referred to

26   *manual* prepositioning).

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

1    Accordingly, the Court should reject DR's proposed construction and adopt

2    Siemens' proffered construction:  "using the client computer program to display."

3    **b.    Claim 2**

4    One phrase in Claim 2 requires construction:  "said user request being the only user

5    request sent from the client application during the accessing-and-displaying process to identify said

6    medical study."

7    Claim 2, in full, provides:

8

9    A method for accessing and displaying digital medical image said method
comprising steps of:

10   (a) sending a user request comprising information identifying a medical study
from a client application to a server application, *said user request being the only user*

11   *request sent from the client application during the accessing-and-displaying process to*
*identify said medical study*; then

12   (b) using the server application to automatically send the client application a
digital medical image associated with said medical study in response to said user request; and

13   then

14   (c) using the client application to display said digital medical image.

15   **(1)    "Said user request being the only user request sent from**

16   **the client application during the accessing-and-displaying**

17   **process to identify said medical study" means what it says**

18

| **Claim Term** | **SIEMENS' Proposed Construction** | **DR SYSTEMS' Proposed Construction** |
|---|---|---|
| "Said user request being the only user request sent from the client application during the accessing-and-displaying process to identify said medical study" | plain meaning<br><br>the user request is the only request sent from the client program to the server program during the accessing-and-displaying process | the server application *never* provides information about a medical study that is used by a user to identify a digital medical image to be sent to the client application. |

26   The proper construction for the phrase, "said user request being the only user

27   request sent from the client application during the accessing-and-displaying process to identify said

28   medical study," is its plain meaning.  Accordingly, Siemens' proposed construction of the phrase is

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    simply a re-statement of it: "the user request is the only request sent from the client program to the

2    server program during the accessing-and-displaying process." *See Brown v. 3M,* 265 F.3d at 1352

3    (holding that the claims did "not require elaborate interpretation"). Again, however, DR attempts

4    to dredge up the same ill-conceived effort to import the term "never" into the construction of this

5    phrase. Because the word that, as discussed below, finds no support in the intrinsic evidence, the

6    Court should reject DR's attempt.

7

8          Once again, because the claim language is clear on its face, the Court should use

9    remaining intrinsic evidence only to determine if a narrowing of the clear language of the claims is

10   required. *Interactive Gift Express,* 256 F.3d at 1331; *Johnson Worldwide,* 175 F.3d at 989-90.

11   Here, the specification supports Siemens' plain meaning construction of the phrase. Ex. A ('120

12   Patent, Col. 1:48-62 and Col. 3:45-Col.4:9). Further, the inventors of '120 Patent did not clearly

13   disavow any claim scope in the specification or prosecution history. *JVW Enters.,* 424 F.3d at

14   1325. As noted above, the inventors on the '120 Patent not only did not expressly disavow claim

15   scope in the written description, they emphasized that the embodiments described therein merely

16   illustrated, rather than defined, their invention. Ex. A ('120 Patent, Col. 5:9-13).

17

18         Similarly, the inventors did not clearly disavow claim scope in the prosecution

19   history. Indeed, the prosecution history supports Siemens' plain meaning construction. *See* Ex. D

20   ('120 Patent FH (9/24/99 Response to Office Action) at SM031032 ("The Examiner has

21   admitted...'Inga et al. ('520) does not specifically disclose: said request is the only request sent

22   from the client application during the accessing-and-displaying process to identify said medical

23   study.'"))

24

25         DR's proposed construction – "the server application ***never*** provides information

26   about a medical study that is used by a user to identify a digital medical image to be sent to the

27   client application." -- violates the law of construction by improperly adding a limitation that is

28   found neither in the claim nor the specification. DR's motivation for adding "*never*" to the

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   construction is not subtle.  For example, because DR's accused method and apparatus functions as

2   claimed by the '120 Patent, the fact that DR may *also* be capable of practicing the prior art method

3   of sending multiple requests from the client program to the server program, would not preclude a

4   finding of infringement under the proper construction of this phrase as proffered by Siemens; DR

5   attempts to escape infringement under its improper, attorney-argument driven construction.  Thus,

6   because the claim language does not employ or even suggest such a limitation and because the

7   inventors of '120 Patent did not clearly disavow any claim scope in the specification or prosecution

8   history, the Court should reject DR's proposed construction.  *JVW Enters.,* 424 F.3d at 1325.

9

10          Accordingly, the Court should reject DR's proffered construction and adopt

11   Siemens' proposed construction:  "the user request is the only request sent from the client program

12   to the server program during the accessing-and-displaying process."

13

14          **c.     Claim 15**

15          Two terms in Claim 15 require construction:  (1) "Client device" and (2) Server

16   device."

17

18          Claim 15, in full, provides:

19          A system for accessing a digital medical image comprising:
             a ***client device*** comprising a client application

20          a ***server device***, coupled with the ***client device***, comprising a server
     application

21          means, included in the client device, for sending a request comprising
     information identifying a medical study from the client application to the server application
     said information not being provided by the server application; and

22          means, included in the server application, for automatically sending the  client

23   application a digital medical image associated with said medical study in response to said request.

24

25

26

27

28

1

(1)    "Client device" means "a client computer"

2

| Claim Term | SIEMENS' Proposed Construction | DR SYSTEMS' Proposed Construction |
|---|---|---|
| "client device" | a client computer | a computer used to review medical images |

6

7       The parties dispute the construction of "client device."  This claim construction

8  dispute parallels the parties' dispute concerning the construction of "client application."  For the

9  same reasons discussed above regarding the construction of "client application," the Court should

10  adopt Siemens' proffered construction for "client device."

11

12       Siemens proposes construing "client device" to mean "a client computer."  This

13  definition comports with canons of construction and should be adopted.  Siemens' proposed

14  construction is straightforward and, when read in context with the other words of Claim 15 and the

15  '120 Patent as a whole, comports with the ordinary and customary meaning of the term. *Phillips,*

16  415 F.3d at 1314; *ACTV,* 346 F.3d at 1088.

17

18       Indeed, Siemens and DR agree that "client device" refers to a computer.  However,

19  the parties disagree as to whether the claims are limited to a particular type of hardware or

20  computer.  Consistent with the claims, Siemens contends that the straightforward interpretation of

21  the term "client device" is simply a client computer.  The client computer is capable of, but not

22  limited to, running the "client application" and resides on a network of computers that includes at

23  least a server computer DR, on the other hand, attempts to import the additional limitation and

24  detail from the preferred embodiment – that is, "a computer *used to review medical images"* -- into

25  the claim.  The court should reject this attempt.

26

27       When construing the term "client device," the "analytical focus must begin and

28  remain centered on the languages of the claims themselves." *Interactive Gift Express,* 256 F.3d

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

at 1331.  The plain and ordinary meaning of "client device," within the context of the surrounding words and phrases of Claim 15 and the '120 Patent as a whole, requires nothing more than a "client computer."

Siemens' proposed construction of "client device" is further supported by other intrinsic evidence.  For example, the specification makes clear that the medical image management systems typically include at least two "networked computer components:  a client device (*e.g.* a medical image review station) and a server device (*e.g.* a study repository server)."  Ex. A ('120 Patent, Col. 1:6-18 (emphasis added)).  Importantly, by using "e.g.," the inventors expressly state a "medical image review station" is simply one example – not the definition of – a client device.  Further, the Specification expressly states that the ***client*** and server ***devices*** comprise the necessary hardware components (such as CPU) to run the software. *Id.* at Col. 2:61-63.

DR wrongly construes "client device" to mean "a computer used to review medical images."  DR's proposed construction should be rejected because DR imports an illustrative, functional limitation from the specification in an attempt to limit "client device" to a computer that reviews medical images.  While a client device would certainly be capable of such function, it would be error to so limit it. *JVW Enters.*, 424 F.3d at 1325.

Accordingly, the Court should reject DR's construction and construe "client device" to mean "a client computer."

(2)    **"Server device" means "a server computer"**

| **Claim Term** | **SIEMENS' Proposed Construction** | **DR SYSTEMS' Proposed Construction** |
|---|---|---|
| "server device" | a server computer | a computer used as a repository for medical studies |

No.: 06 CV0417B (NLS)

– 22 –

DOCSSFO-12462735.1

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    The parties' dispute over the proper construction of "server device" mirrors their

2    dispute over "client device."  And, for the same reasons, the Court should reject DR's proposed

3    construction of "server device" and construe the term to mean "server computer."  Siemens'

4    proposed construction of "server device" parallels its straightforward, plain meaning construction

5    of "client device."  And, when read in context with the other terms of Claim 15 and the '120 Patent

6    as a whole, Siemens' proposed construction is straightforward and comports with the plain and

7    ordinary meaning of the term.

8

9    Further, the specification expressly states that the *client* and server *devices* comprise

10   the necessary hardware components (such as CPU) to run the software.  Ex. A ('120 Patent, Col.

11   2:61-63).

12

13   Indeed, Siemens and DR agree, at least implicitly, that "server device" refers to a

14   server computer.   But in keeping with its *modus operandi*, DR attempts to import the additional

15   limitation that server device should be limited to "a computer used as a repository for medical

16   studies."  For the reasons discussed above, DR's attempt invites error and should be rejected.  *JVW*

17   *Enters.,* 424 F.3d at 1325.

18

19   Accordingly, the Court should reject DR's proposed construction and construe

20   "server device" to mean simply "a server computer."

21

22   **B.    The '668 Patent**

23   The '668 Patent solves a serious problem in the prior art - how to identify medical

24   images so that a radiologist views the images of the patient in question, and not those of a different

25   patient.  While prior art systems typically identified medical images with a text header containing

26   the patient's name or ID number, the '668 Patent describes and claims the attachment of

27   unambiguous patient-related data (e.g., digital optical photos of the patient's face or other exterior

28   features), along with conventional patient identification data, to the digital *medical* (e.g. MRI, CT

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

and X-ray) images, to minimize the risk of viewing the wrong medical images.

The invention of the '668 Patent also allows for the image and data exchange through an image communication network according to, for example, the DICOM standard", an industry standard for the communication of images and other medical information between computers enabling digital communication between diagnostic and therapeutic devices of different manufacturers." Ex. B ('668 Patent, Col. 2:52-57). According to this novel medical systems architecture, the associated digital optical, data and medical images may be transferred between optical devices, diagnostic devices, workstations and servers over a local area network or over the Internet. The full text of the '668 Patent and its prosecution history are attached as Exhibits B and E, respectively, to the Bovich Declaration.



FIG 1

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

1.      **The Asserted Claims of the '668 Patent**

Siemens has asserted Claims 1, 2, 3, 4, 5 and 6 of the '668 Patent.  The claim terms and phrases requiring construction are set forth in bold italics below.  Because Claim 1 contains all of the terms and phrases that require construction, only that claim is addressed below.  The four terms and phrases within that claim that require construction are set forth below, in the order in which they appear, in bold italics.

2.      **Proper Construction of the Disputed Terms of The '668 Patent**

a.      **Claim 1**

Claim 1 provides:

medical system architecture comprising:

at least one modality for producing a medical image of an examination subject;

a work station for processing said medical image and for ***entering patient-related data for permanent association with said medical image***;

a communication system connected to said work station for communicating said medical image and said ***patient-related data*** to a location remote from said work station;

a central storage unit connected to said communication system for storing said medical image and said ***patient-related data***; and

an optical image generating unit for generating digital data comprising a photographic image showing an external appearance of said examination subject, and including ***means for entering said work station for permanent association in said patient-related data with said medical image for unambiguously identifying said examination subject***.

As discussed immediately below, the parties dispute the proper construction of the "patient-related data."  As a preliminary matter, however, the parties agree the Court's construction of "patient-related data" should be applied consistently in all subsequent references to the phrase in Claim 1 and throughout the '668 Patent.  *CVI/Beta Ventures,* 112 F.3d at 1159 (claim terms should be given a consistent meaning when used similarly and consistently within the same claim, or other claims, in the patent).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

(1)     **"Patient-related data" means "patient data related to a**
        **patient or otherwise associated with patient images, such as**
        **a patient name, identifier and other patient specific**
        **information, including patient specific information**
        **compatible with, for example, the DICOM standard"**

| Claim Term | SIEMENS' Proposed Construction | DR SYSTEMS' Proposed Construction |
|---|---|---|
| "patient-related data" | patient data related to a patient or otherwise associated with patient images, such as a patient name, identifier and other patient specific information, including patient specific information compatible with, for example, the DICOM standard.[7] | information specific to a patient |

Read in the context of Claim 1 and the '668 Patent as a whole, Siemens' proposed construction of the disputed phrase "patient related data" comports with a plain and ordinary meaning and is further supported by additional intrinsic evidence. *Phillips,* 415 F.3d at 1314;

---

[7]     It should be noted that Siemens' proposed construction of "patient-related data" here differs slightly from its construction set forth in the Joint Claim Construction Chart. More specifically, here, Siemens adds the words "for example," before reference to the DICOM standard. Siemens' proposed construction of the claim element is properly read in view of, without importing a limitation from, the specification. Siemens notified DR's counsel before the filing of the opening briefs of this modification. Because the Court is obliged to construe the claims as a matter of law irrespective of the parties' submissions, *see Markman II, 517 U.S. at 391,* and because DR is not prejudiced by Siemens' modified, proposed construction, the Court should analyze the disputed claim construction issue as framed herein. *See also Power Mosfet Techs., Inc. v. Siemens AG,* 378 F.3d 1396, 1410-12 (Fed. Cir. 2004) (district court did not err by modifying, during trial, Special Master's earlier, proposed claim construction). Finally, as noted below, since the filing of the Joint Claim Construction Chart, the parties have continued to meet and confer in an effort to narrow the issues before the Court. Because the parties propose a few modified constructions, including a revised stipulated construction, Siemens submits herewith an Amended Joint Claim Construction Chart on the '668 and '868 Patents, respectively, along with the Joint Claim Construction Chart, as originally filed, on all three Siemens' Patents. These charts are attached as Exhibits G and H, respectively, to the Bovich Declaration.

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   *ACTV,* 346 F.3d at 1088.  Initially, Siemens and DR both agree that the construction of "patient

2   related data" requires data that is specific to the patient.  But, read in the context of the surrounding

3   words of Claim 1 and the specification, the construction of "patient related data" should include, as

4   discussed more fully below, sufficient data for the identity of the patient to be permanently

5   associated with the medical image.

6

7          What's more, as a practical matter, the inventive construction of a medical system

8   architecture, as described and claimed in the '668 Patent, envisions a network of computers for

9   both "enabling digital communication between diagnostic and therapeutic devices of different

10  manufacturers,"  Ex. B ('668 Patent, Col. 2:52-57), and over the Internet.  *Id.* at Col. 4:6-22.

11  Consequently, the specification of the '668 Patent teaches the exchange of the image and data

12  exchange according to a conventional, industry standard, such as DICOM, that enables such

13  exchange to occur between diagnostic and therapeutic devices of different manufacturers.  *Id.* at

14  Col. 2:52-57.

15

16         The prosecution history of the '668 Patent also supports Siemens' construction of

17  the phrase "patient related data."  In particular, in response to an Office Action, Siemens noted:

18

19         In the subject matter disclosed and claimed in the present application,
       by contrast, an optical image generating unit is provided for generating digital
       data comprising a *photographic image* of the examination subject.  This
20     digital data representing a photographic image of the examination subject are
       then permanently associated with the patient-related data (i.e., **the**
21     **conventional text information**) as well as with the medical image, for
       unambiguously identifying the examination subject.  Ex. E ('668 FH
22     (7/10/2000 Response to Office Action) at SAG 000073 (italics in original;
       bold emphasis supplied)).
23

24         DR's proffered construction of patient-related data –" information specific to a

25  patient" -- ignores the context in which the phrase appears in Claim 1, in view of the specification.

26  *Phillips,* 415 F.3d at 1314 *citing ACTV, Inc.,* 346 F.3d at 1082 ("the context of the surrounding

27  words of the claim also must be considered in determining the ordinary and customary meaning of

28  those terms").  Indeed, "the specification acts as a dictionary when it expressly defines terms … or

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1  when it defines terms by implication." *Phillips*, 415 F.3d at 1321 (internal quotations and citations

2  omitted).

3

4  Here, as noted above, the '668 Patent describes and claims a novel medical system

5  architecture that enables communication of digital data and images between diagnostic and

6  therapeutic devices of different manufacturers over a local area network and the Internet. Ex. B

7  ('668 Patent, Col. 2:52-62). Accordingly, the Court should reject DR's proffered construction of

8  "patient-related data" and adopt Siemens' proposed construction of that disputed phrase.

9

10  (2)   **"Entering patient-related data for permanent association**

11  **with said medical image" means "entering patient-related**

12  **data that is inseparably joined with a medical image"**

13

| Claim Term | SIEMENS' Proposed Construction | DR SYSTEMS' Proposed Construction |
|---|---|---|
| "entering patient-related data for permanent association with said medical image" | entering patient-related data that is inseparably joined with *a* medical image | entering patient-related data that is inseparably joined with *each* medical image |

17  The parties' dispute over the proper construction of the phrase "entering patient-

18  related data for permanent association with said medical image" boils down to two issues: (1) the

19  proper construction of the phrase "entering patient-related data," which is addressed above, and

20  which the parties stipulate should mean the same thing here as the Court construes the phrase

21  above, and (2) whether the ordinary and customary meaning of the language of the claim requires

22  the "patient-related data" be "inseparably joined" with "*each*" medical image (for example, *every*

23  image in a series), as improperly proffered by DR, instead of "the patient-related data" being

24  "inseparably joined" with "*a* medical image" (for example, the first image in a series) as plainly

25  stated in the intrinsic evidence and proposed by Siemens.

26

27  Siemens' proffered construction of "entering patient-related data for permanent

28  association with *said* medical image" should be adopted because it is defined properly and in the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

1   context of the balance of the plain language of Claim 1 of the '668 Patent. Indeed, in construing

2   the phrase, "*said medical image,*" the Court must find the "antecedent basis"[8] for, *i.e.,* the first

3   reference to, "medical image" to define what "said medical image" means. Here, the antecedent

4   basis for "said medical image" is "*a medical image.*" Ex. B ('668 Patent, Col. 4:31).

5

6   Because the claim language is clear on its face and contextually defines "said

7   medical image," the Court should use remaining intrinsic evidence only to determine if a

8   narrowing of the clear language of the claims is required. *Interactive Gift Express,* 256 F.3d at

9   1331; *Johnson Worldwide,* 175 F.3d at 989-90. Here, the inventors of '668 Patent did not clearly

10  disavow any claim scope in the specification or prosecution history. *JVW Enters.,* 424 F.3d at

11  1325.

12

13  Conversely, DR's proposed construction of "said medical image" to mean "*each*

14  medical image," violates claim construction law by improperly adding a limitation that is found

15  neither in the claim nor the specification. Moreover, DR blatantly ignores the fact that "*a* medical

16  image" provides the antecedent basis for "*said medical images.*" Thus, because the claim language

17  does not employ or even suggest the limitation, "*each (i.e., "every") medical image,*" and because

18  the inventors of '668 Patent did not clearly disavow any claim scope in the Specification or

19  prosecution history, the Court should reject DR's proposed construction. *JVW Enters.,* 424 F.3d at

20  _____

21  8     *See generally,* U.S. Patent & Trademark Office, The Manual for Patent Examination
    Procedures (MPEP), Section 2173.05(e) (8th ed. 2001), regarding the antecedent basis

22  requirement for claim terms referencing "said"; *see also,* Robert C. Faber, Landis on
    Mechanics of Patent Claim Drafting, Ch. 3, § 3:11 (PLI 2005):

23       **Summary:** *Use 'a' or 'an' the first time you mention an element or part
         in a claim, where grammatical rules dictate. Use 'the' or 'said' after that*

24       *when referring again to the same element or part. Make sure that the claim
         is consistent within itself, that each 'the' or 'said' element has one and*

25       *only one clear antecedent in the claim, and that consistent, definite*

26       *phraseology is used throughout the claim....*

27  For the Court's convenience, relevant excerpts from the MPEP and the Landis
    treatise are attached collectively as Exhibit I to the Bovich Dec.

28

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1325.  Finally, DR's proposed constructions of "*said*" are not consistent even within the same claim.  Specifically, DR's construction of "*said* (medical image)" here conflicts with DR's proposed construction of "*said* (examination subject)" in the last clause of Claim 1, discussed below.  In the latter instance, DR asserts that "*said examination subject*" should be construed to mean "*the examination subject.*"  *See Phillips,* 415 F.3d at 1314; *CVI/Beta Ventures* at 1159 ("[W]e are obliged to construe the term 'elasticity' consistently throughout the claims").  Thus, the Court should reject DR's proposed construction of "said medical image."

Accordingly, the Court should construe the claim element, "entering patient-related data for permanent association with *said* medical image," to mean "entering patient-related data that is inseparably joined with *a* medical image."

      (3)    **The Associated Structure for "Means for entering said digital data into said work station" is the data and electrical connections shown in Figs. 1 and 2 and their descriptions**

| Claim Term | SIEMENS' Proposed Construction | DR SYSTEMS' Proposed Construction |
|---|---|---|
| "means for entering said digital data into said work station" | *structure*: Data and electrical connections shown in Figs. 1 and 2, and the description thereof in the specification | *structure:* none disclosed |

The parties agree that the phrase "means for entering *said* digital data into *said* work station" (emphasis added) is a "means-plus-function" element that invokes 35 U.S.C. Section

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

No.: 06 CV0417B (NLS)        – 30 –        DOCSSFO-12462735.1

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

paragraph 6.[9]  The parties also agree that the function of this claim element is "to provide the digital data from the optical image generating unit to the work station."[10]

Thus, after construing the claimed function of, "means for entering said digital data into said work station" as "to provide the digital data from the optical image generating unit to the work station," the Court must then determine the structure that corresponds to, or performs, that function.  Put simply, here, the structures disclosed in the '668 Patent related to this function are the data and electrical connections between the optical image generating unit (for example, a digital camera, video camera or scanner) and a computer work station.

Consistent with this plain meaning of Claim 1 and the '868 Patent as a whole, Siemens identifies the related structure serving the function of digital data transfer to the work station as:  the data and electrical connections shown in Figures 1 and 2 as described in the Specification.  *See e.g.,* Ex. B ('668 Patent, Col. 3:2-9 ("The digital photo camera **14** can be connected directly to the data input of the work station.  If an analog video camera **15** is utilized, for example, then an analog/digital converter must be intermediately connected.  Electronics can also be connected to the scanner **16** upstream"); *see also Id.* at Col. 3:12-18).

_____

9       For background purposes, the parties have stipulated to the meaning of the language that immediately precedes, and provides the antecedent basis for, "said digital data" and "said workstation."  Specifically, the parties have stipulated that the phrase "an optical image generating unit for generating digital data comprising a photographic image showing an external appearance of said examination subject, and including means for…" should be defined as "an apparatus for digital acquisition of optical images, such as a digital photo camera, a video camera and/or scanner."  The parties further stipulate that the phrase "said workstation" means "the workstation."

10      Since submitting the Joint Claim Construction Chart, the parties met and conferred and revised their stipulated construction of the claimed function.  The prior stipulated construction of the claimed function was erroneous because improperly included associated structure within the definition of the claimed function.  *See JVW Enters.,* 424 F.3d at 1328 (error to combine separate steps of first identifying claimed function and then identifying what structure corresponded to that function; lower court's construction "confused function with structure").

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

No.: 06 CV0417B (NLS)                               – 31 –                               DOCSSFO-12462735.1

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

1   Put differently, the data and electrical connections means for connecting, for example, a

2   digital or analog video camera to a computer are well known to those skilled in the art;

3   indeed, standard USB cables or an analog/digital converter box connection means between

4   cameras and computers are so well known that they need not be described in detail.  $S^3$, 259

5   F.3d at 1371 ("The law is clear that the patent documents need not include subject matter that

6   is known in the field of the invention and in the prior art, for patents are written for persons

7   experienced in the field of the invention"; reversed lower court's claim construction finding

8   that "selector" not adequately disclosed because it is a "well known electronic structure and

9   performs a common electronic function…").

10

11          Conversely, DR fails to propose any construction for "means of entering said digital

12   data into said workstation," relying instead on its thinly-veiled and unsupported invalidity

13   argument that no corresponding structure is disclosed.  DR's argument contradicts the intrinsic

14   evidence, blatantly ignores the presumption of validity and runs counter to controlling Federal

15   Circuit law.

16

17          Like other claim construction issues, whether sufficient structure is disclosed in the

18   specification of a patent is analyzed through the eyes of a hypothetical person of ordinary skill in

19   the art.  It is settled that a Patent Examiner is presumed to be one of ordinary skill in the art.

20   *Markman I,* 52 F.3d at 986.  Accordingly, because the consequence is invalidity, for DR to assert

21   that this means-plus-function limitation lacks structural support requires clear and convincing

22   evidence. *Budde,* 250 F.3d at 1376-80;  *Atmel Corp. v. Information Storage Devices, Inc.,* 198

23   F.3d 1374, 1382 (Fed. Cir. 1999).

24

25          Further, it is well-settled that a patent need only disclose sufficient structure such

26   that one skilled in the art can practice the invention.  *See S3,* 259 F.3d at 1370-71.  Moreover,

27   under certain circumstances, drawings may provide a sufficient disclosure.  *In re Dossel,* 115 F.3d

28   942 (Fed. Cir. 1997), *citing, Vas-Cath, Inc. v. Mahurkar,* 935 F.2d 1555, 1565 (1991).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    The Federal Circuit's decision in *In re Dossel* is on point.  There, the parties

2 disputed whether adequate structure (in that case, a computer) was disclosed to support the

3 "reconstructing means" limitation in the claims at issue.  In concluding that the claim limitation

4 was sufficiently definite, the Federal Circuit observed:

5

6         Neither the written description nor the claims uses the magic word
        'computer,' nor do they quote computer code that may be used in the

7        invention.  Nevertheless, when the written description is combined with
        claims 8 and 9, the disclosure satisfies the requirements of § 112, ¶ 2[11].

8        Clearly a unit which receives digital data, performs complex mathematical
        computations and outputs the results to a display must be implemented by

9        or on a general or special purpose computer (although it is not clear why
        the written description does not simply state 'computer' or some

10       equivalent phrase).  *To bolster this result, we note that, in the medical

11       imaging field, it is well within the realm of common experience that
        computers are used to generate images for display by mathematically*

12       *processing digital input.  In Re Dossel,* 115 F.3d at 947 (emphasis added).

13

14    DR cannot seriously dispute that the connection means disclosed and illustrated,

15 such as cables or analog to digital converter boxes, for connecting, for example, a digital camera or

16 analog video camera to a computer workstation, combined with the language within Claim 1, and

17 the asserted dependent claims thereon, were "within the realm of common experience" and well-

18 known to a hypothetical person of skill in the art of computer networks in the hospital, or any

19 other, local area network environment.  *Id.; see also Intel Corp.,* 319 F.3d at 1366-67 (holding that

20 that a "corresponding structure" does not require a disclosure of specific circuitry).  Accordingly,

21 the corresponding structure for the claimed function is adequately disclosed, and, thus, Claim 1 is

22 valid under 35 U.S.C. Section 112.

23

24    Finally, the Federal Circuit has cautioned that when choosing between a

25 construction that preserves the validity of a patent and another that renders the patent invalid, the

26 _____

11       Title 35 U.S.C. Section 112, paragraph 2 provides:  The specification shall conclude
27 with one or more claims particularly pointing out and distinctly claiming the subject matter
which the applicant regards as his invention.  35 U.S.C. § 112, ¶ 2.
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Court should, if possible, choose the construction that upholds the validity of the claims. *Turrill v. Mich. S. & N. Ind. R.R.*, 68 U.S. 491, 510 (1863) (patents "are to receive a liberal construction, and … are, if practicable, to be so interpreted as to uphold and not destroy the right of the inventor"). Accordingly, the Court should reject DR's argument that no related structure is disclosed and adopt Siemens' proposed construction.

(4)    **"For permanent association in said patient-related data with said medical image for unambiguously identifying said examination subject" means "fixed association in the patient-related data including a medical image for unambiguously identifying a patient"**

| Claim Term | SIEMENS' Proposed Construction | DR SYSTEMS' Proposed Construction |
|---|---|---|
| "for permanent association in said patient-related data with said medical image for unambiguously identifying said examination subject" | for inseparably joining in the patient-related data including a medical image for unambiguously identifying *a patient*. | for inseparably joining the **digital data representing the external photographic image of the examination subject** to the patient related data with **each** medical image for unambiguously identifying *the* examination subject |

The construction of the claim element, "for permanent association in said patient-related data with said medical image for unambiguously identifying the examination subject," should not be controversial. The parties agree that (1) the first phrase, "for permanent association in," means "for inseparably joining in," and (2) the next phrase, "patient-related data," should be construed in the same manner here as the Court construes it above, and (3) "an examination subject," at least earlier in the claim, means "a patient." Thus, the two remaining claim construction issues for this element are (1) whether the Court should reject DR's attempt to add the verbiage "the digital data representing the external photographic image of the examination," and (2) whether the Court should define "*said examination subject*" by referring to its antecedent basis

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    and the parties' agreed construction of "examination subject" earlier in the claim.  For the reasons

2    discussed below, both questions should be answered affirmatively.

3

4            Siemens' construction of the phrase, "for permanent association in said patient-

5    related data with said medical image for unambiguously identifying said examination subject,"

6    should be adopted because it comports with the plain language of Claim, does not import

7    unnecessary verbiage and is consistent contextually.  For the reasons discussed above, in

8    construing "*said examination subject,*" the Court starts by finding the first reference to

9    "examination subject."  Here, the antecedent basis for "said examination subject" is *"an*

10   *examination subject."*  Ex. B ('668 Patent, Col. 4:31-32).  Moreover, because the parties stipulated

11   that "examination subject," as used earlier in the claim means "patient," Siemens' proffered

12   construction should be adopted.  *See CVI/Beta Ventures* at 1159.

13

14           Conversely, DR's proposed construction of the phrase should be rejected for two

15   reasons.  First, DR's proposed construction improperly imports language from an earlier portion of

16   the claim -- "**digital data representing the external photographic image of the examination**

17   **subject.**"  Because this extra verbiage is cumbersome, potentially confusing and unnecessary, the

18   Court should reject DR's proposed construction.  Second, DR's proposed construction of "*said*

19   *examination subject"* ignores its antecedent basis.  *See* Ex. B ('668 Patent, Col. 4:31-32).

20

21           Accordingly, the Court should construe the claim element "for permanent

22   association in said patient-related data with said medical image for unambiguously identifying the

23   examination subject," to mean "for inseparably joining in the patient-related data including the

24   medical image for unambiguously identifying a patient."

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

## C.     The '868 Patent

The '868 Patent describes and claims a novel method and apparatus of concurrently presenting on a computer monitor multiple digital medical images, with image planes that are arbitrarily oriented to one another, representing cross-sections of 3D image data such as a CT scan. Within each image, a "marker" containing information about the position of the image plane of the other image relative to the image in which the marker is displayed. This aspect of the invention of the '868 Patent provides the radiologist with visual information to understand the spatial relationship of the two images. The '868 Patent also teaches and claims a novel method and apparatus modifying the view of the displayed images. For example, practicing the invention of the '868 Patent, a physician can tilt or rotate an image with the corresponding markers also being automatically adapted or re-adjusted. The full text of the '868 Patent and its prosecution history are attached as Exhibits C and F, respectively, to the Bovich Declaration.



FIG. 2

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

1      **1.      The Asserted Claims of the '868 Patent**

2            Siemens asserts Claims 1, 2, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22,

3      23, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41 and 42.  Because Claim 1 contains the only

4      phrase that requires construction, only that claim is addressed below.  The one phrase within that

5      claim that requires construction – "arbitrarily oriented" -- is set forth below in bold italics below.

6

7      **2.      Proper Construction of the Disputed Claim Terms of the '868 Patent**

8            **a.      Claim 1**

9

10           Claim 1 provides:

11           A method for presenting images at a display monitor comprising the steps of:

12           obtaining digital image data of an examination volume of a subject with image
       pick-up system;

13
       simultaneously displaying at least two images, reproduced from said
14     examination volume at a display monitor, each of said images being presented in an image
       plane with the respective image planes of said at least two images being ***arbitrarily oriented***
15     relative to each other, and in each of said at least two images, including a marker which
       indicates a position of the image plane in another of said at least two images with respect to
16     the image plane of the image containing the marker.

17

18

19

20

21

22

23

24

25

26

27

28

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    (1)    "Arbitrarily oriented" means "no fixed or predefined

2    angular relationship"

3

| Claim Term | SIEMENS' Proposed Construction | DR SYSTEMS' Proposed Construction |
|---|---|---|
| "arbitrarily oriented" | no fixed or pre-defined angular relationship[12] | the respective image planes of that at least two displayed images need not have any fixed or predefined angular relationship to each other such that the respective image planes of the at least two images are freely selectable relative to each other (i.e., the spatial relationship between the image planes is freely changeable). |

13    Siemens' proffered construction for "arbitrarily oriented" – "no fixed or pre-defined

14  angular relationship" –comports with the canons of construction and should be adopted.  Siemens'

15  proposed construction is straightforward and, when read in context with the other words of Claim 1

16  comports with the plain and ordinary meaning of the term.  *Phillips,* 415 F.3d at 1314; *ACTV,* 346

17  F.3d at 1088.  Indeed, Siemens and DR agree that "arbitrarily oriented" refers to no fixed or

18  angular relationship; however, the parties disagree as to whether the definition requires additional

19  verbiage.  For the reasons discussed below, it does not.

20

21

22

23  12    In an attempt to reduce the number of claim construction issues before the Court,
24  Siemens also re-analyzed its initially proposed definition of "arbitrarily oriented" and has
     modified it to incorporate language which closely approximates, but is a subset of, DR's
     proposed construction of the claim element.  Before the opening briefs were filed, Siemens
25  offered to stipulate to this modified proposed construction, but DR refused.  Siemens' prior
     proposed construction of "arbitrarily oriented" was "no specific angular relationship."  For
26  the same reasons noted above relative to other modified proposed constructions, the Court
     should, however, analyze the claim construction issue concerning "arbitrarily oriented" as
27  presently framed.

28

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

The specification also supports Siemens' plain meaning construction of "arbitrarily oriented" as "no fixed or predetermined angular relationship." *See e.g.* Ex. C ('868 Patent, Col. 1:40-45 ("a method wherein at least two images of the examination volume with arbitrary orientation of the image planes relative to one another are simultaneously displayed at the display monitor…")). Additional intrinsic evidence – the prosecution history of the '868 Patent – also supports Siemens' proffered construction. Specifically, in a response to an Initial Office Action, Siemens explained to the Examiner:

> As expressly stated in Claim 1, the respective image planes of these at least two images are arbitrarily oriented relative to each other. This means that the respective image planes of the at least two displayed images need not have *any fixed or predefined angular relationship* to each other. Ex. F ('868 FH (11/22/99 Response to Office Action) at SAG00200-01).

The first portion of DR's proposed construction of "arbitrarily oriented" parrots a portion of Siemens' proposed construction, but, once again, DR proposes including additional, unnecessary words. Specifically, citing to the same portion of the prosecution history relied upon by Siemens, DR's proposed construction of "arbitrarily oriented" is:

> [T]he respective image planes of the at least two displayed images need not have any *fixed or predefined angular relationship* to each other such that the respective image planes of the at least two images are freely selectable relative to each other (i.e., the spatial relationship between the image planes is freely changeable). *Id.*

While DR's proposed construction – up to the parenthetical portion -- is lifted directly from the prosecution history, the proposed definition is cumbersome and potentially confusing. Accordingly, the Court should reject DR's proposed construction of "arbitrarily oriented" and construe the term to mean "no fixed or predefined angular relationship."

### IV     CONCLUSION

Siemens' proposed constructions of the disputed claim terms and phrases comport with the ordinary customary meaning of those terms and phrases, are supported by additional

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

No.: 06 CV0417B (NLS)                                    – 39 –                                    DOCSSFO-12462735.1

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

1  intrinsic evidence and comport with settled canons of claim construction.  Siemens respectfully

2  submits, therefore, that the Court should adopt Siemens' proffered constructions.  On the other

3  hand, DR, realizing that it infringes multiple claims of the three patents asserted by Siemens in its

4  Counterclaim, resorts to proffering tortured constructions of the disputed claim terms and phrases

5  in hopes of somehow avoiding infringement.  Because DR's proposed, tortured constructions also,

6  not surprisingly, violate settled canons of claim construction, the Court should reject them.

7

   DATED:  January 17, 2007.

8

                                          REED SMITH LLP

9

10

   By____/s/_____

11      Scott D. Baker
        John P. Bovich
12      Jonah D. Mitchell
        Attorneys for Defendants
13      SIEMENS MEDICAL SOLUTIONS USA,
        INC., SIEMENS CORPORATION,
14      SIEMENS AG

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPENING CLAIM CONSTRUCTION BRIEF ON BEHALF OF COUNTERCLAIMANTS SIEMENS MEDICAL
SOLUTIONS USA, INC. AND SIEMENS AG PURSUANT TO LOCAL RULE 4.4

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**DR Systems v. Fujifilm Medical Systems, USA, Inc.**
**USDC Case No. 06cv0417 B (NLS)**

**Certificate of Service**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 17th day of January, 2007, with a copy of this document via the Court's CM/ECF system. I certify that all parties in this case are represented by counsel who are CM/ECF participants. Any other counsel of record will be served by electronic mail, facsimile transmission, and/or first class mail on or before the following business day.

_____/s/_____
John P. Bovich