# Exhibit A

| SERIAL NUMBER | | PATENT DATE | | PATENT NUMBER | |
|---|---|---|---|---|---|
| 07/998550 | | SEP 1 9 1995 | | | 5452416 |

| SERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | GROUP ART UNIT | |
|---|---|---|---|---|---|
| 07/998,550 | 12/30/92 | | 161 | | |

**APPLICANTS**

GARY M. HILTON, DEL MAR; MURRAY A. REICHER, M.D., SANTA FE; PAUL J. BERGSTEDT, SOLANA BEACH, CA

**CONTINUING DATA************************** NONE
VERIFIED
PB

**FOREIGN APPLICATION**************** NONE
VERIFIED
PB

CERTIFICATE

OF CORRECTION

FOREIGN FILING LICENSE GRANTED 06/22/93        ***** SMALL ENTITY *****

| Foreign priority claimed ☐ yes ☐ no | AS FILED | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|
| 35 USC 119 conditions met ☐ yes ☐ no | | CA | 18 | 9 | | $457.00 | 901 |
| Verified and Acknowledged   Examiner's Initials | | | | | | | |

**ADDRESS**

TERRANCE A. MEADOR, Esq.
BAKER, MAXHAM, JESTER & MEADOR
750 "B" STREET
SYMPHONY TOWERS, SUITE 2750
SAN DIEGO, CA 92101

**TITLE**

AUTOMATED SYSTEM AND A METHOD FOR ORGANIZING, PRESENTING, AND MANIPULATING MEDICAL IMAGES

U.S. DEPT. of COMM.-Pat. & TM Office— PTO-436L (rev. 10-78)

**PARTS OF APPLICATION FILED SEPARATELY**

| NOTICE OF ALLOWANCE MAILED | PREPARED FOR ISSUE 4-12-95 | | CLAIMS ALLOWED | |
|---|---|---|---|---|
| 4-13-95 | Assistant Examiner        Docket Clerk | | Total Claims 16 | Print Claim |
| **ISSUE FEE** | | | **DRAWING** | |
| Amount Due | Date Paid | RAYMOND J. BAYERL PRIMARY EXAMINER ART UNIT 2415 | Sheets Drwg. 18 | Figs. Drwg. 19 | Print Fig. 6 |
| 605.00 | 6-16-95 | Primary Examiner | | |
| | **ISSUE CLASSIFICATION** | | ISSUE BATCH NUMBER | |
| Label Area | Class 395 | Subclass 161 | K154 | |
| | WARNING: The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only. | | | |

Form PTO-436
Rev. 8/90

DR000032



DR000033

Staple Issue Slip Here

APPROVED FOR LICENSE

| POSITION | INIT. | DATE |
|---|---|---|
| CLASSIFIER | 21 | 1/26/83 |
| EXAMINER | 348 | 1-29-93 |
| TYPIST | 323 | 6/22 |
| VERIFIER | 277 | 6-28 |
| CORPS CORR. | | |
| SPEC. HAND | 437 | KO | 4-15-93 |
| FILE MAINT. | | KO/7 | 2-5-93 |

## INDEX OF CLAIMS



DR000034

Exhibit A

394



| SEARCHED | | | |
|---|---|---|---|
| Class | Sub. | Date | Exmr. |
| 395 | 161 | 6 Sept 94 | RB |
| | 157 | | |
| | 155 | | |
| | 124 | | |
| | 160 | | |
| | 164 | | |
| | 153 | | |
| 364 | 413.13 | | |
| | 413.14 | | |
| | 413.22 | | |
| Update All | Search Above Subcl | 11 Apr 95 | RB |

| SEARCH NOTES | |
|---|---|
| Date | Exmr. |
| | |

| INTERFERENCE SEARCHED | | | |
|---|---|---|---|
| Class | Sub. | Date | Exmr. |
| 395 | 157 | 11 Apr 95 | RB |
| | 160 | | |
| | 161 | | |
| | 124 | | |
| 364 | 413.13 | | |
| | 413.14 | | |
| | 413.22 | | |

DR000035

US005452416A

## United States Patent [19]

### Hilton et al.

[11] Patent Number: 5,452,416

[45] Date of Patent: Sep. 19, 1995

[54] AUTOMATED SYSTEM AND A METHOD FOR ORGANIZING, PRESENTING, AND MANIPULATING MEDICAL IMAGES

[75] Inventors: Wesley W. Hilton, Del Mar; Murray A. Reicher, Rancho Santa Fe; Dale Seegmiller, Solana Beach, all of Calif.

[73] Assignee: Dominator Radiology, Inc., San Diego, Calif.

[21] Appl. No.: 998,580

[22] Filed: Dec. 30, 1992

[51] Int. Cl.⁶ ....................... G06F 3/14; G06F 15/00
[52] U.S. Cl. ........................... 395/161; 395/157; 395/160; 395/124; 364/413.13; 364/413.22
[58] Field of Search ............... 395/161, 157, 155, 124, 395/160, 164, 153; 364/413.13, 413.14, 413.22

[56] References Cited

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,642,621 | 2/1987 | Nemoto et al. | 364/413.22 X |
| 5,019,976 | 5/1991 | Chiu et al. | 364/413.13 |
| 5,099,846 | 3/1992 | Hardy | 364/413.13 X |
| 5,235,510 | 8/1993 | Yamada et al. | 364/413.22 X |
| 5,272,760 | 12/1993 | Echerer et al. | 382/6 |
| 5,274,759 | 12/1993 | Yoshioka | 395/161 X |
| 5,293,313 | 3/1994 | Cecil et al. | 364/413.22 |
| 5,313,567 | 5/1994 | Civanlar et al. | 395/124 |

OTHER PUBLICATIONS

Sanders et al., "Design and Implementation of a Clinical MSI Workstation", Proceedings of Computer–Based Medical Systems, IEEE Computer Society Press, Jun. 1992, pp. 138–146.
International Search Report, Issued by European Patent Office, Jun. 17, 1994, 3 sheets.
Proceedings of the 12th Annual International Conference of the IEEE Engineering in Medicine and Biology Society, IEEE Press New York, US, vol. 1/5, 1 Nov. 1990, Philadelphia, Pa., US, pp. 219–220.
Visual Computer, Springer Verlag, vol. 4, No. 2, 1988, Germany, pp. 98–108.
Sigbio Newsletter, vol. 12, No. 1, Feb. 1992, New York, US, pp. 10–22.

*Primary Examiner*—Raymond J. Bayerl
*Attorney, Agent, or Firm*—Baker, Maxham, Jester & Meador

[57] ABSTRACT

An automated system for organizing, presenting, and manipulating medical images includes a database in which the medical images are structured into groups, each group including one or more image series, each image series including an ordered sequence of images which illustrate incrementally registered aspects of an anatomical target. Image series are presented in their sequential order either in a monitor presentation format which displays each sequence in its entirety in a single monitor display container or which presents two or more image series, image-by-image, in adjacent presentation areas of a series display container. The system includes a plurality of monitors in which all monitors, save one, produce display containers for image series presentation. One monitor is reserved for displaying a working palette to which images of the image series displayed on the other monitors may be moved. The system activates a monitor in a plurality of monitors in response to movement of a cursor between monitors. An active monitor is indicated by presentation of a control panel. The system also provides heads-up presentation of control panel icons at a cursor location outside of the control panel by sequentially changing the shape of the cursor to the icon shapes for user selection.

16 Claims, 18 Drawing Sheets





FIG. 1

FIG. 2

**U.S. Patent**     Sep. 19, 1995     Sheet 2 of 18     **5,452,416**



FIG. 3

**U.S. Patent**      Sep. 19, 1995      Sheet 3 of 18      **5,452,416**



FIG. 4

DR000039

**U.S. Patent**     Sep. 19, 1995     Sheet 4 of 18     **5,452,416**



FIG. 5



FIG. 6

DR000041

U.S. Patent          Sep. 19, 1995          Sheet 6 of 18          5,452,416



FIG. 7



FIG. 8

DR000043



FIG. 9



FIG. 10



FIG. 11

DR000046

Case 3:06-cv-00417-JLS -NLS   Document 241-1   Filed 10/12/07   Page 17 of 235



FIG. 12



FIG. 13



FIG. 14a

U.S. Patent          Sep. 19, 1995          Sheet 14 of 18          5,452,416



FIG. 14b

U.S. Patent          Sep. 19, 1995          Sheet 15 of 18          5,452,416



FIG. 14c

**U.S. Patent**          Sep. 19, 1995          Sheet 16 of 18          **5,452,416**



FIG. 14d

Case 3:06-cv-00417-JLS -NLS    Document 241-1    Filed 10/12/07    Page 23 of 235



FIG. 15



**FIG. 16**

5,452,416

1

## AUTOMATED SYSTEM AND A METHOD FOR ORGANIZING, PRESENTING, AND MANIPULATING MEDICAL IMAGES

### BACKGROUND OF THE INVENTION

The invention relates to the organization, presentation, and manipulation of images. More particularly, the invention provides efficient, user-friendly means and procedures for presenting images of anatomical structure and the like for examination.

The invention is also concerned with the activation of a display container for medical images in a context of a plurality of display containers, and with the presentation of icons without distracting the attention of a user from medical images which are being examined.

Magnetic resonance imaging (MRI) is an important, non-invasive imaging modality that is widely used by radiologists to examine internal anatomy to aid in the analysis of trauma and the diagnosis of disease. An MRI study provides a multi-planar representation of an anatomical target in the form of one or more image series. The images of a series may be parallel planar "slices" of the anatomical target which are incrementally registered along an imaging axis. Another imaging technology may produce image sequences which include non-parallel views that are incrementally registered about an axis of rotation or over a non-planar surface.

MRI technology is well understood. See, for example, MRI OF THE KNEE by Jerrol H. Mink, et al, Raven Press Ltd. (New York, N.Y. 1987) and the work by F.W. Wehrli, et al, entitled PARAMETERS DETERMINING THE OCCURRENCE OF NMR IMAGES published by the General Electric Company, Medical Systems Operations, in 1983.

In the prior art, the transparencies produced by an MRI system would be manually mounted in their series sequence on long light boxes where they would be read and annotated by radiologists. Following examination, the images would be physically stored in a patient's medical history folder. Recently, automated systems for archiving, retrieving, and presenting MRI images have been developed. In these systems, the images are conventionally converted to multi-bit, pixelated data representations which are formatted, stored, and retrieved using file management techniques. However, most conventional file management techniques are adapted for storage, retrieval, and presentation of documents, rather than images. Of course, these systems give even less consideration to the specialized requirements for storage and presentation of images showing internal anatomy.

Even the addition of a directly-manipulated user interface in conventional image storage and presentation systems does little to adapt these systems to the special needs of radiologists who must consider and manipulate many images in particular ways for special purposes. Furthermore, each radiologist has a highly personal mode of examination. For example, one radiologist may wish to examine a first sequence of transparencies in its entirety and then a second, related sequence before trying to correlate between individual images of the sequences. Another radiologist may wish to examine sequences in parallel by simultaneously considering images taken of the same anatomical plane under different conditions of exposure. Even currently-available database systems which have been adapted for storage and presentation of radiological images have not automated the presentation modalities of image series. Instead, a radiologist must provide for the individual retrieval and presentation of each and every stored image. In these systems, the images are individually identified and processed for storage and presentation without correlation to other images in their respective sequences. Furthermore, the existing systems do not provide for concurrent presentation of related image series.

Moreover, the currently available automated image storage systems are awkward and difficult to use, providing little in the way of means for direct manipulation of image presentation formats and images which are displayed for analysis.

### SUMMARY OF THE INVENTION

Therefore, it is a primary objective of this invention to provide an automated system for storage, retrieval, and presentation of medical images which is especially adapted for the presentation of medical image sequences and which affords the user with a flexible and responsive set of functions that permit direct manipulation of the modes of image presentation and of the presented images themselves.

The invention is embodied in a computer display system which presents images of anatomical structure and the like for examination. The system includes the following combination:

a first display container including a first preselected number of substantially rectangular presentation areas in a substantially rectangular array;

a second display container including a second preselected number of substantially rectangular presentation areas in a substantially rectangular array;

an image database including a plurality of images of anatomical structure, the images being separated into image groups in which:

each image group is indexed by a unique group identification; and

each image group is partitioned into one or more ordered image series, each ordered image series including a succession of images which illustrate incrementally registered aspects of an anatomical target, each image series being ordered by assignment to each image in the image series of a position in a respective monotonically changing sequence;

a mechanism connected to the image database and to the first and second display container and responsive to a group identification for displaying at least two image series of an image group indexed by the patient identification, wherein:

each image series is displayed in the order of its respective sequence in a respective display container such that each presentation area of the respective display container includes no more than one image; or,

all of the image series are displayed in one display container and each image series is displayed one image at a time in the order of its respective sequence in a respective presentation area of the display container.

For direct manipulation of an interactive computer system with an output means for presenting visual displays wherein a user is presented with a visual display that includes a control display container (control panel), the invention further includes the following combination:

5,452,416

| 3 | 4 |

a first bounded display area presented by the output means, the first display area including:
a control panel; and
a plurality of icons displayed in the control panel;
a second bounded display area presented separately from the first display area by the output means;
a cursor mechanism connected to the output means for displaying and moving a cursor in a display area; and
a functional mechanism coupled to the first and second display areas and the to the cursor mechanism for presenting the control panel in the second display area in response to movement of the cursor from the first to the second display area.

Also, in an interactive computer system with an output means for presenting visual displays wherein a user is presented with a display that includes a directly-manipulated display container for presenting program output, the invention is embodied in a combination, in which:
a cursor mechanism is connected to the output means for displaying and moving a cursor;
a control display area is provided in the display in which a plurality of icons are displayed in a predetermined order;
a pointing mechanism is provided, with connection to the cursor mechanism, for positioning the cursor and selecting icons in response to direct manual manipulation by a user; and
an icon rotation mechanism is provided, with connection to the pointing mechanism and to the cursor mechanism, which responds to a position of the cursor inside the display container by changing the shape of the cursor at the position to the shape of an icon of the plurality of icons and by changing the shape of the cursor to the shapes of the other icons in the plurality of icons, such that the shape of the cursor is changed one shape at a time and in the predetermined order, in response to direct manual manipulation of the pointing mechanism.

## BRIEF DESCRIPTION OF THE DRAWINGS

The invention, and its achievement of the above-stated objective, will be understood when the following detailed description is read in connection with the below-described drawings, in which:

FIG. 1 is a block diagram illustrating basic components of an automated system for storing, retrieving, and displaying medical images;

FIG. 2 is a block diagram illustrating in greater detail certain components of the system of FIG. 1;

FIG. 3 is an illustration of a display container output on a monitor of the system of FIG. 1 for a presentation of medical images according to one mode of the invention;

FIG. 4 is an illustration showing a display container for presentation of medical images according to a second mode of the invention;

FIG. 5 is an illustration showing a working palette display container presented on a monitor of the system of FIG. 1;

FIG. 6 illustrates the organization of a medical image database according to the invention;

FIG. 7 is a flow diagram illustrating how the database of FIG. 6 is accessed;

FIG. 8 is a flow diagram illustrating how the system of FIGS. 1 and 2 presents images according to the first mode of the invention;

FIG. 9 is a block diagram illustrating presentation of images according to the first mode of the invention;

FIG. 10 is a flow diagram illustrating how the system of FIGS. 1 and 2 presents images according to the second mode of the invention;

FIG. 11 is a block diagram illustrating presentation of images in a database of FIG. 6 according to the second mode of the invention;

FIG. 12 is a flow diagram illustrating a procedure for indicating an active monitor according to the invention;

FIG. 13 is a flow diagram illustrating a procedure for rotating image manipulation icons according to the invention;

FIGS. 14a through 14d are illustrations of display containers showing icon rotation according to the procedure of FIG. 13;

FIG. 15 is a flow diagram illustrating annotation rotation according to the invention;

FIG. 16 is an illustration showing a display container with annotation rotation according to the procedure of FIG. 15.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

The invention is intended to operate in connection with an image database which stores medical images for retrieval and presentation. Although the following description assumes that the images are data representations of pixelated images conventionally produced from the output of medical imaging technology such as MRI, X-ray, and CAT, this is not intended to limit such images to such sources. The inventors contemplate that the means and processes presented in this description would apply as well to a database of synthetically-created medical images.

In the preferred embodiment and best mode of this invention, the medical images are, in fact, those produced from an MRI apparatus. As is known, such an apparatus produces series, or sequences of images, which represent successively deeper planar slices of an anatomical target. In the examples given below, the anatomical target is the head of a human patient and it is assumed that three distinct series of images have been taken of the target. Two of these series are termed "axial". The images of an axial series represent parallel, planar images of cross-sectional anatomy taken along an imaginary vertical axis of the head. Each axial series is generated to emphasize particular anatomical features by varying parametric values of the MRI process. In this regard, see Chapter 1 of the Mink et al reference. The two axial series described in this embodiment are the well-known axial T1 and axial T2 sequences. The third series is a sagittal sequence in which the images are anatomical cross-sections lying in planes parallel to the median plane of the head.

It is assumed, without further explanation, that axial and sagittal images obtained from an MRI apparatus will have been digitized and rendered into conventional scanned, pixelated data representations that can be processed by the computer system illustrated in FIG. 1. In FIG. 1, the system includes a DOS-based personal computer or work station 10 which has the capability to concurrently execute an application process 12 and a plurality of interface processes 14. The application process which, preferably, is written in the well-known C language, embodies processes and functions of the invention as described later in further detail. The interface processes 14 include commercially available programs

5,452,416

5

as well as processes which can be constructed by the reasonably skilled computer programmer with the following description in hand. The interface processes 14 are connected to standard I/O devices such as a conventional trackball mechanism 16, a conventional QWERTY keyboard 22, and output devices 23 such as a full grey scale printer, a facsimile machine, and a modem (none of which is illustrated). The trackball mechanism 16 is a conventional picking device that includes a left button 18, a right button 19, and a rotation ball 20. The trackball mechanism 16 provides a user with the means for directly manipulating the position and functions of a cursor. The keyboard 22 is manually operated to input alphanumeric characters. The output devices 23 operate conventionally to provide tangible, visual results produced by the invention as described in further detail below. An image database 24 includes one or more conventional on-line storage devices for storage of medical image data representations which have been generated as described above. Therefore, the image database 24 includes not only the storage hardware, but also the stored images and all necessary indices. An output device 25 in the form of a multi-screen apparatus provides the means by which the images stored in the image database 24 are arranged and presented to a practitioner for examination, manipulation, and disposition. In the preferred embodiment, the device includes three separate output monitors 26, 27, and 28 which are connected by a coupling mechanism 29 to the interface processes 14 for control by the application process 12.

FIG. 2 shows certain architectural aspects of the best mode for practicing the invention in a system such as that illustrated in FIG. 1. In FIG. 2, the interface processes 14 include a conventional directly-manipulated user interface 14a which is directly connected to a screen driver 14b. The screen driver 14b is connected to the trackball mechanism 16 and the keyboard 22, passing inputs from these devices by conventional means directly to the user interface 14a. The screen driver 14b also operates in conjunction with the user interface 14a to provide the pixel information necessary to draw and manipulate graphics on the monitors 26, 27, and 28.

The graphics include a cursor, display containers which give a visible structure for image presentation, and a control panel in which icons and function buttons are displayed. It is assumed that the user interface includes the ability not only to generate a cursor, but also to move the cursor among the monitors in response to trackball motion. It is further presumed that the user interface includes the ability to highlight icons and control buttons which have been "pointed to" by the cursor and "clicked" by a trackball mechanism button. The interface processes 14 further include an image subsystem 14c and a low level video controller 14d. The image subsystem 14c accesses the image database 23 for retrieval of stored images. Image selection is made by the application process 12 and indicated by control signals coupled to the image subsystem 14c. In response to control signals which designate images to be retrieved, the image subsystem 14c obtains the data representations of the specified images and enters them into a high-capacity working memory 33 as directed by the application process 12. The application process 12 further specifies how and which images in the working memory 33 are to be output on the monitors 26, 27, and 28. Thus, the pixel information representing database images flows from the working memory 33, through the

6

image subsystem 14c to the monitors 26, 27, and 28. Control over the display apparatus 25 is provided by the coupling mechanism 29 in the form of a video card which has separately accessed and separately controlled memories for Red, Green, and Blue pixels. These memories are indicated by reference numerals 29a, 29b, and 29c, respectively. The memories of the video card are controlled by a low-level video controller 14d, which receives control signals from the image subsystem 14c. The image subsystem 14c generates control input for the low-level controller 14d in response to control signals generated by the application process 12.

In the architecture illustrated in FIG. 2, each of the memories 29a, 29b, and 29c is connected to a respective gun of a tri-color output to a particular video monitor. In particular, the Red memory 29a is connected by way of a Red (R) video output connector to the monitor 26, the Green memory 29b by a Green (G) video output connector to the monitor 27, and the Blue memory 29c by a Blue (B) video output connector to the monitor 28. The monitors 26, 27, and 28 are operated in the monochromatic mode and the memories 29a, 29b, and 29c are operated effectively as frame buffers for the monitors to which they are connected. This architecture merely reflects the design choices of the inventors in implementing the invention, and is not intended to limit the use of equivalent architectures. For example, instead of separate video monitors 26, 27, and 28, a designer might select an architecture which provides separate display containers (windows) on a single, large video monitor so that each window operates as a separate, independently-controlled monitor.

The application program 12 employs object-oriented programming techniques to provide programming controls and cues to the user interface 14a and the imaging subsystem 14c. Controls and cues are in an object list 34 which is initiated and updated as needed by the application process 12. The object list has a conventional structure in that it includes a plurality of objects, each of which represents some feature or attribute of a display which is presented on one of the monitors 26, 27, or 28. Objects in the object list 34 are conventionally indexed. Each object includes one or more application process functions and any data necessary to establish machine state when the object is encountered or otherwise identified during system operation.

The application process 12 maintains and increments an icon index 35 whose output is provided to the user interface 14a for accessing the object list 34 in a procedure described later in greater detail.

### IMAGE PRESENTATION

The invention is practiced on a system architecture corresponding to that illustrated and discussed above. The invention is concerned with the presentation of one or more medical image series for consideration, analysis, and disposal by a user such as a radiologist. The invention includes at least two modes for presenting medical image series. The first mode is illustrated in FIG. 3.

FIG. 3 illustrates what is termed the "monitor" mode of image presentation. FIG. 3 illustrates a rectangular display container which is produced on one or more monitors for presentation of image series. The series shown in FIG. 3 is an axial T2 series including 18 images. The display container is subdivided into a rectangular array of 20 presentation areas. In the monitor mode of image presentation, an image series is shown in

5,452,416

| 7 | 8 |

a single display container in its sequence order such that each presentation area of the display container includes one image of the sequence. Only one image series at a time is shown in any display container. Separate series are shown in separate display containers. The axial T2 sequence illustrated in FIG. 3 is ordered by assignment to each image in the series of a monotonically increasing number. The number assigned to an image represents the image's position in the sequence of which it is a member. In FIG. 3, therefore, the image in the upper left-hand presentation area is the first image of the axial T2 sequence, with the next image in the sequence being assigned the number 2 and being displayed in the next presentation area of the display container to the right of the presentation area where image number 1 is shown.

In the monitor mode of the presentation, a display container such as that illustrated in FIG. 3 is output on all but one of the monitors or monitor equivalents supported by the system. Thus, in FIGS. 1 and 2, a display container such as shown in FIG. 3 would be presented on, for example, monitors 26 and 27, with monitor 28 being reserved for presentation of a work product palette as described below. This permits more than one image series to be presented, with each image series being presented in its sequence order in a presentation area of a respective display container on a particular monitor. Since co-relative series such as axial T1 and axial T2 typically consist of an identical number of images taken at identical planes, identical side-by-side presentations of axial T1 and T2 series on adjacent monitors in the manner illustrated in FIG. 3 contributes significantly to a radiologist's ability to differentially analyze the images.

FIG. 4 illustrates a second presentation mode of the invention which is termed the "series" mode. In the series mode, a display container comprising a rectangular array of rectangular presentation areas is displayed on one or more monitors. For example, the display container in FIG. 4 includes four substantially rectangular presentation areas numbered 1, 2, 3, and 4 in the drawing. In the series mode, each presentation area of a series mode display container is employed to display an image series, one image at a time, in the order of its respective sequence. In this regard, consider presentation area 2 in which an axial T2 series is illustrated. Assume that the axial T2 series is identical to that illustrated in FIG. 3. Thus, the images of the axial T2 series would be shown in presentation area 2 beginning with image 1 and continuing sequentially until image 18 is shown. Assume next that a co-relative axial T1 series comprising 18 images is presented in presentation area 1 in the display container of FIG. 4. An important feature of the invention termed "coupling" is employed to synchronize the presentation of the axial T1 and T2 series so that whenever an image of one series is changed to the next image in the series, the other series is changed identically to display the image of the other series occupying the same sequence position. Thus, if presentation area 1 in the display container of FIG. 4 displays image 1 of the axial T1 series and then riffles through the 60 images of the series, the display in presentation area 2 would identically riffle through the images of the axial T2 series, beginning with image 1. The invention contemplates that the coupling feature of the series mode of presentation will synchronize image presentation only between co-relative image series. Thus, for example, an axial T2 series would be coupled for a presentation with an axial T2 series, but not with a sagittal T1 series such

as that shown in presentation area 4 of the display container in FIG. 4.

The series mode of presentation is practiced by presenting the display container of FIG. 4 on all available monitors or monitor equivalents except one, which is also reserved for the working palette display container.

Refer now to FIG. 5 for an illustration of the working palette display container. This display container is presented on one monitor of a multi-monitor system, such as monitor 28 in FIGS. 1 and 2. The working palette display container has a substantially rectangular aspect and is subdivided into a rectangular array of individual presentation areas. The working palette is provided to receive individual images which are picked and copied from presentation areas in monitor mode or series mode display containers. The working palette allows a radiologist to assemble the images which are deemed to be the most important in illustrating trauma or disease for provision to a referring physician. For example, the axial image displayed in presentation area 3 of the working palette display container may have been copied there from presentation area 12 in the monitor mode display container of FIG. 3.

FIG. 6 illustrates the structure of the image database which enables the efficient storage and retrieval of image series. When an MRI apparatus is used to generate images, examination protocols normally provide for identification of the patient, and set out the number and types of sequences which are to be taken and the anatomical target of interest. From this information, a unique composite patient identifier (ROOTNAME) is algorithmically derived. A patient, thus, has a unique ROOTNAME for each MRI examination. A patient identification, the corresponding ROOTNAME, and an identification of a referring physician are entered for each patient examination into a database file 50 entitled "PATIENT.dB". For any patient identification entered in the file 50, its corresponding ROOTNAME points to an examination file such as the file 53, which is entitled "ROOTNAME.PAT". Each examination file 53 identifies an image group including one or more image series obtained during an examination. Each image series in an image group is indexed to a set of sequentially named or numbered files in which the images of the series are contained. For example, in the ROOTNAME.PAT file 53 illustrated in FIG. 6, the image group includes axial T1, axial T2, and sagittal T1 series. The axial T2 series consists of n consecutively-numbered files, each containing a respective image of the series such that the sequence position of the named file corresponds to the sequence position of the image it contains. The image files are named ROOTNAME. XXX. Thus, image 1 in the axial T1 series has a file name ROOTNAME.1, the second image in this series is in a file named ROOTNAME.2, and so on. Similarly, the n images of the axial T2 series are stored in files consecutively numbered as ROOTNAME. m through ROOTNAME. (m+n). When a patient is identified to the application process 12, the application process determines a ROOTNAME value for that patient, obtains a ROOTNAME.PAT file, and commands the image subsystem to extract the image series contained in the ROOTNAME file sequence defined by the ROOTNAME.PAT file and place them in linked list form in the working memory 33. The application process 12 then presents the image series to a radiologist and provides the radiologist's work product assembled in a working palette, to the referring physician.

5,452,416

9

The file-naming rule for image series is important to the invention because it preserves the unique identity, and the order, of each image series. For any given ROOTNAME, an image series can be identified by reference to the ROOTNAME file 53 and manipulated, as a unit and independently of any other image series, by the system of FIGS. 1 and 2. This provides a very significant advantage over the existing systems which treat each image as an independent unit, unconnected with any other image in its sequence or with any other image in any other series or group.

As FIG. 6 illustrates, the PATIENT.dB file includes a REFERRING PHYSICIAN column containing values which index to entries in a REF.DOCS file 52. The REF.DOCS file 52 lists referring physicians. Each re-ferring physician entry includes a set of functions speci-fied by the identified referring physician which are to be executed when a radiologist indicates that examination of an image group is completed by pressing a DONE button, which is explained later in more detail. A RAD-STAFF.dB file 63 includes at least seven columns. In the first column (RAD NAME) are listed the names of radiologists having access to the system. The second through sixth columns comprise a format specification for the monitors in which the image series are to be displayed. The seventh column includes a working palette specification. The format specification, columns two through six of the Table 63, include a MODE col-umn, identifying the monitor or series mode of presenta-tion, a MATRIX column setting forth the number of rows and columns in the display containers, and a COU-PLE column specifying whether the coupling function is invoked for synchronization of two or more image series in a series mode of presentation. The format speci-fication further includes SHRINK and EXPAND col-umns which specify whether the rows and columns of the matrix are to be adapted to predefined dimensional parameters for display containers. The seventh column specifies the matrix size of the working palette. The application process also has access to a set of annotation lists 60 and to the set of image functions that are linked to objects which are to be added to, the object list 34 of FIG. 2.

FIG. 7 illustrates the procedure executed by the ap-plication process 12 to initialize the system of FIGS. 1 and 2 for presentation of images. The procedure starts at step 70 by receipt of an indication that the PA-TIENT.dB file is to be read. In step 71, a list illustrating the PATIENT.dB file is constructed and presented on one of the monitors. It is assumed that the user can select the name of a patient simply by moving a cursor to the patient's name in the displayed list and clicking on the name by depressing and releasing a trackball button. The decision 73 awaits selection of a patient. In decision 73, the negative exit can be manually selected. If the negative exit is taken from decision 73, the procedure is exited. If a patient is selected, the positive exit is taken from decision 73 and a search is conducted of the data-base for a ROOTNAME.PAT file for this patient in step 74. If the file does not exist, a warning message to the operator is displayed on the monitor 26. Otherwise, the ROOTNAME.PAT file is provided to the application process which extracts the image group organization from the file in step 77, and passes the appropriate control signals to the imaging system in step 78 to enable the imaging subsystem to copy the images named in the ROOTNAME.PAT file from the image database to the main memory. In step 79, a list illustrat-

10

ing the RADSTAFF.dB file is presented in a manner permitting a radiologist to log on by pointing to and clicking his name in the list. When the radiologist's name is identified in this manner, the format specifica-tion and working palette matrix size in the same RAD-STAFF.dB row are provided to the application process 12 which enables it to initialize control blocks for each monitor, as well as the object list, in step 80. The object list includes a full specification of the graphics objects required in the first monitor for the mode and the matrix size, and palette size specified in the RADSTAFF.dB entry selected by the user. The first monitor is then initialized with graphics and images in steps 81 and 82. Once the first monitor has been initialized, the object list is updated for specifying tile graphics of the second monitor, and then is updated once again to specify the working palette graphics for the third monitor. The third monitor is initialized with graphics in step 83. The application process then executes the appropriate pre-sentation mode procedure. In the preferred embodi-ment, the monitors 26 and 27 in FIGS. 1 and 2 are for-matted with display containers of the specified mode and matrix size and populated with images and then the monitor 28 is formatted with the specified working palette.

Referring once again to FIGS. 1 and 2, when the object list 34 is initialized or updated, the application process provides a "SELECT MONITOR" control signal to the image subsystem 14c. This signal is appro-priately conditioned to indicate the monitor to which control is to be transferred. In response, the image sub-system configures the low level controller 14d to enable the appropriate one of the memories 29a, 29b, or 29c. For example, when the object list is initialized, the SE-LECT MONITOR control signal forces the low level controller 14d to enable the Red memory 29a to receive the appropriate display container graphics established in the object list 34. The user interface 14a inspects the object list 34 to determine the graphics objects for which graphics pixels must be generated and provided by the screen driver 14b. The screen driver 14b outputs the specified graphics pixels in parallel to all of the memories 29a, 29b, and 29c. The pixels, however, are read into only the currently-enabled memory.

Once the series of an image group have been entered in sequence order into the working memory 33 and the display containers have been initialized, the application process produces the appropriate image system control signals to present an initial image display in the specified presentation mode. If, for example, the monitor mode has been specified, graphics pixels for presenting a dis-play container such as that illustrated in FIG. 3 in the specified matrix size are entered into the Red memory 29a of the video card together with image pixels for the first series of the image group. When the memory 29a is appropriately loaded with graphics and image pixels, the application process issues a SELECT MONITOR con-trol signal to the low level controller 14d through the image subsystem 14c, which disables data entry to the Red and Blue memories 29a and 29c and enables data entry into the Green memory 29b. Graphics pixels and image pixels for the second series of the image group are entered into the memory 29b and the SELECT MONI-TOR signal is once again issued so that graphics pixels for the working palette can be entered into the Blue memory 29c. Next, the object list is updated to describe the Red memory 29a, the Red memory 29a is enabled, and the cursor is generated. The cursor pixels are fed to

5,452,416

| 11 | 12 |

the enabled memory and updated therein when the cursor is moved.

At this point, display containers with images would be presented on the monitor 26 and on the monitor 27, while an empty working palette would be displayed on the monitor 28.

Returning to FIG. 3, assume that the monitor display container and image series in this figure are displayed on monitor 26 as shown in the figure. Thus, the presented display includes a rectangular area adjacent the right edge of the display container. This area is referred to as the "control panel" and contains a plurality of function buttons (DONE, CHANGE SERIES, and PRINT), a set of image manipulation icons immediately below the function buttons, and a set of annotation icons below the image manipulation icons. Any of the function buttons and any of the image manipulation or annotation icons can be activated by "point and click" using the trackball to point with the cursor, and the left cursor button to click on a button or icon.

The function buttons represent application process functions that can be activated by pointing and clicking. The DONE button, when activated, invokes the "DONE" functions of the referring physician. The CHANGE SERIES button, when activated, deletes the series presently displayed in the display container and enters the images of the next series listed in the ROOT-NAME.PAT file. The PRINT button invokes an application process function which prints a copy of the screen. As also illustrated in dashed outline in FIG. 3, another button may be presented in a control panel between the DONE and CHANGE SERIES buttons. When the image series includes more images than there are presentation areas in the display container, the NEXT button replaces the currently-displayed subset of consecutively numbered images of the series with the following subset. So long there are images remaining to be presented, the NEXT button will be presented. When the last subset of the image series is displayed in the display container, the PREVIOUS button is displayed. When activated, the PREVIOUS button returns the previous subset of series images in the display container. It should be evident that the NEXT and PREVIOUS buttons are displayed only in monitor mode control panels.

The set of image manipulation function icons is positioned immediately beneath the PRINT button. These icons control various image manipulation functions. The upper left-most icon is a magnifying glass and controls a conventional zoom function which magnifies or minifies an image in response to trackball motion. Immediately beneath the zoom icon is a riffle icon in the form of a spaced set of pages. In response to trackball motion, the riffle function shuffles through an image series in forward or reverse sequence. Beneath the riffle icon is an icon representing illumination which adjusts the contrast or brightness of an image in response to trackball motion. Immediately to the right of the zoom icon is a roam icon consisting of four outwardly-directed arrows. The roam function is used in conjunction with the zoom function and moves a magnified image under a viewing aperture in response to trackball motion. The icon in the shape of a movie camera immediately beneath the roam icon denotes the cine function, which is an automated riffle that, once selected, automatically steps through an image series in sequence

order. The speed of the cine function is controlled by the trackball.

A set of annotation icons consisting of four arrows and A and X and a rectangular box is presented immediately beneath the image manipulation icons. These icons are discussed later in more detail.

As FIGS. 3 and 4 illustrate, the cursor has a default shape in the form of a hollow arrow.

Refer now to FIGS. 3, 8, and 9 for an understanding of a monitor presentation format procedure according to the invention. Once the displays in the monitors 26, 27, and 28 have been initialized for monitor presentation as described above, the monitor format procedure begins. This procedure executes in response to cursor location and trackball button activation. Thus, in step 90, beginning with monitor 26, for example, and using the cursor location and sensing button activation, the procedure determines whether one of the image manipulation icons has been selected in decision 91. If so, the image function is performed at the cursor location. Otherwise, the negative exit is taken from decision 91 and the status of the CHANGE SERIES button is inspected in decision 92. If the button function has been activated, the next series listed in the ROOTNAME.-PAT file is moved into the display container grid of the monitor where the cursor is located when the left button of the trackball mechanism is clicked. Now, a series counter (not shown) for the monitor is updated to identify the series currently displayed on the monitor. If the function has not been activated, the negative exit is taken from decision 92. In decision 93, the application process determines whether a working palette grid location has been selected for placement of an image. In this regard, the application process maintains a working palette grid pointer which is updated to the next working palette grid location when an image is moved to the current one. The grid pointer can also be forced to a grid location by moving the cursor from the monitor where it is currently located to the monitor where the working palette is displayed and pointing and clicking a grid location in the working palette display container. Preferably, a working palette grid location is selected by clicking the left button of the trackball mechanism. (Once an image has been moved to a preselected working palette grid location, the grid pointer is reset to indicate the next empty grid location which was available before user selection.) The cursor is then returned to a monitor which shows an image series. Decision 94 assumes that the cursor is in a presentation area of the monitor mode display container. If the right button of the trackball mechanism is clicked, the application process infers that the user wants the image in the presentation area moved to the working palette grid location indicated by the palette grid pointer. In this case, the image at the cursor location and any annotation graphics which it contains are copied in step 94a into the working palette grid at the location indicated by the working palette grid pointer. Refer to FIG. 9 for an understanding of how the application process accomplishes this step.

In FIG. 9, three monitor control blocks 100, 102, and 103 are illustrated. The application process maintains the control blocks, each of which completely describes in object form the current display on a particular monitor. For example, the monitor control block 100 lists the identification and location of each graphical object displayed on the monitor 26. This would include a complete object description of a monitor mode display con-

DR000060

5,452,416

13

tainer, a control panel, if a monitor is active, and the images of the series presented in the display container. For example, consider the first image of an axial T1 series which is listed in grid location 1, corresponding to the upper left-hand presentation area in the display container of FIG. 3. The monitor control block 100 also lists the graphics displayed at the grid location. When an image is to be moved to the working palette it is copied from the object indexed by the current cursor location in the control block of the monitor where the cursor is located to the palette monitor control block at the grid location indicated by the working palette grid pointer 104. In order to effect the update on the working palette display container presented on the palette monitor 28, the application process, using the palette monitor control block, updates the object list to describe the updated working palette display container and issues a SELECT MONITOR control signal. In response to the SELECT MONITOR control signal, the image subsystem accesses the working memory to obtain the pixels for the image to be moved and enters them into the Blue memory 29c which has been enabled by the SELECT MONITOR signal. At the same time, the screen driver 14b provides any annotation pixels for the image which may be described in the object list. This causes the selected image and accompanying graphics to be added to the working palette presented on the monitor 28. When entry of the image and graphics pixels in the Blue memory 29c is complete, the application process updates the object list to describe the display presented in the monitor where the cursor is located and issues a SELECT MONITOR signal to enable the corresponding color memory.

In decision 95, the application process inspects the cursor location to determine whether the cursor has been moved to another monitor. If so, the object list is updated to the configuration of the monitor where the cursor is located and the SELECT MONITOR control signal is conditioned to enable the corresponding color memory for the new monitor.

In decision 96, if a DONE button is selected, the application program executes the DONE functions for the referring physician. These may include, for example, simply printing out a hard copy of the working palette display container and entering the printout into the patient's file, faxing a data or an image copy of the working palette monitor through a modem to a predetermined location, or transmitting a data representation of the working palette monitor through a modem to a predetermined location.

Refer now to FIGS. 4, 10, and 11 for an understanding of a series presentation format procedure according to the invention. Once the displays in the monitors 26, 27, and 28 have been initialized for series presentation as described above, the format procedure begins. This procedure executes in response to cursor location and trackball activation. Thus, in step 110, beginning with monitor 26, for example, using cursor location and sensing button activation, the procedure determines whether one of the image manipulation icons has been selected in decision 111. If so, the image manipulation function is filtered at decision 112 to determine whether the riffling function has been invoked with the coupling feature selected. If not, the negative exit is taken from decision 112 and the image manipulation function is performed in the presentation area where the cursor is located. On the other hand, if the riffling function has been invoked with coupling activated, the positive exit

14

is taken from decision 112. Here, the images of the series being output through the presentation are where the cursor is located are riffled (in response to trackball motion) in the presentation area where the cursor is located. In addition, the images of any coupled series are riffled at the presentation area where the coupled series is displayed. The riffling is in synchronism with riffling the series at the cursor location. Decision 113 tests the CHANGE SERIES button of the control panel. If the button has been activated, the procedure waits until the cursor is moved to a display container presentation area and the left button is clicked. Then, the series is changed to the next ROOTNAME.PAT file image series. When the series is changed, the first image of the next series is displayed at the presentation area where the cursor is located. Step 116 moves images to the working palette display container in the manner described above for the monitor presentation format. Next, monitor processing and DONE button processing are performed in decisions 117 and 118 as discussed above in connection with FIG. 8.

FIGS. 4 and 11 illustrate how the working palette is populated with images during the series presentation mode. In the series presentation mode, the application process maintains a monitor control block for each of the monitors 26, 27, and 28. The monitor control blocks are, respectively, 120, 121, and 122. Assume that the series presentation display containers such as the display container illustrated in FIG. 4 are presented on the monitors 26 and 27. For each monitor, the control block must list the principal objects which, for the display container of FIG. 4, are the four presentation areas of the control panel and the icon control panel. The control block links a respective series with each of the presentation areas in the IMAGES column of the block. In the COUPLING column, a related image series is listed if the coupling function has been invoked. The GRAPHICS column lists the graphics for, and in, each presentation area. The monitor control block 121 fully describes the display container and control panel displayed on the monitor 27, while the control block 122 fully describes the working palette presented on the monitor 28. A grid pointer 122c is used to denote the current working palette grid location in the manner described above in connection with FIG. 9.

ACTIVE MONITOR INDICATION

The invention also includes the ability to indicate, by the control panel, which monitor is currently active. In this regard, the "active" monitor is most likely the one wherein the cursor is currently located. The configuration of the active monitor is fully described in the object list; user inputs are received through it; and application response is provided through it. Manifestly, it would be inefficient and distracting to the user to have to remember which monitor is active by devoting full attention to the cursor's location. Positioning the cursor in a particular monitor might, in some instances, not indicate the active monitor. In addition, as described later, the shape of the cursor may change, causing the user to lose track of it and the active monitor.

In the invention, the active monitor is indicated by the presence of a control panel. Preferably, when a user moves a cursor to a monitor boundary which is shared with another monitor, the cursor is moved from the one monitor (which is called the "last" monitor) to the monitor which is adjacent the boundary of the last monitor (which is called the "next" monitor). The last monitor is

5,452,416

| 15 | 16 |

then deactivated and the next monitor is activated. In response to movement of the cursor from the last monitor to the next, the control panel in the last monitor is turned off and the control panel is presented in the next monitor.

The procedure for performing the active monitor indication function is illustrated in the flow diagram of FIG. 12. Initially, the cursor position is read in step 123. When the cursor location is the same as the location of a boundary object defined in the object list of the current monitor, the application process prepares to deactivate the present monitor. In this regard, the positive exit is taken from the decision 124 and the application process issues control signals which turn off the control panel of the last monitor in step 125, reconfigures the object list to define all of the objects, including the boundaries, in the next monitor in step 126, and then executes a series of next monitor routines in step 127. One next monitor routine is conditioning of the SWITCH MONITOR signal to enable the color memory for the next monitor. Additional next monitor routines are shown in step 128. In step 128, cursor graphics pixels are configured to place the cursor adjacent the boundary in the next monitor which is closest to the last monitor. Next, the control panel is turned on in the next monitor and the procedure returns to step 123.

The control panel deactivation/activation sequence to indicate monitor activation is not necessarily limited to turning off the control panel in the last monitor and turning on the control panel in the next monitor. Other visual cues may be used. For example, the control panel colors may be inverted or changed in intensity.

## ICON ROTATION

The invention also provides a "heads up" feature which permits a user to select an image manipulation icon without shifting attention from a presentation area to the control panel. This is accomplished by moving the cursor one time to an image manipulation icon in the control panel, changing the shape of the cursor to that icon, moving the cursor back to a presentation area, and rotating the shape of the cursor at that location through the succession of image manipulation icon shapes in response to motion of the trackball, and selecting an icon function at the location where the cursor shape has been changed.

Refer to FIGS. 13 and 14a–14d for an understanding of the icon rotation function of the invention. Initially, in decision 131, the cursor position read at step 130 is evaluated to determine whether it is over one of the image manipulation icons in the control panel. Positioning the cursor over one of these icons and clicking the left button causes the cursor to change its shape from a default shape (preferably, a hollow arrow) to the shape of the selected icon and results in illumination of the icon at the control panel as provided in step 133. The result of performing step 133 is illustrated in FIG. 14a where the shape of the cursor has been changed to the riffle icon shape comprising a set of pages. Selection of the icon at its control panel location will not immediately invoke the corresponding function because the image manipulation functions are intended to execute with respect to a selected image. Thus, to invoke the selected function, the cursor, now in the shape of the selected icon, must be moved to one of the presentation areas. Therefore, in step 134, the position of the cursor (now in the shape of an icon) is read and when decision 135 determines that the cursor is in an image display

container, the positive exit is taken and decision 136 checks the status of the left button on the trackball mechanism. If the left button is not down, the procedure loops through 134, 135, and 136 until it detects depression of the left button. When the left button is held down and the trackball is moved, the shape of the cursor is successively changed to the shapes of the image manipulation icons in their order of presentation in the control panel. This is illustrated in FIG. 14b where the cursor, in the shape of the riffle icon, is moved to the lower left corner of the top right presentation area of the illustrated series display container. Assuming that the user continues to hold the left button down while moving the trackball (136, 137, 138), the icon counter (indicated by reference numeral 35 in FIG. 2) is incremented or decremented in response to the trackball motion. The threshold check in step 139 indicates when the trackball has moved far enough to increment to the next value of the icon counter. The icon counter indexes to the portion of the object list which contains the image manipulation icons. These objects are numbered consecutively in the object list so that, by constraining the icon counter to cycle through a count sequence which corresponds to the index numbers of the icon objects, the user interface and video driver are enabled to correspondingly cycle through the icon shapes at the cursor location. In step 140, the shape of the cursor is changed at its location to the next image manipulation icon shape in sequence.

For example, consider FIGS. 14b–14d where the cursor initially has the shape of the riffle icon. Assume that the trackball is moved in a certain direction, resulting in change of the icon counter to a value which corresponds to the magnifying glass icon shape. The result is illustrated in FIG. 14c, where the cursor shape is changed to the magnifying glass. Further movement of the trackball in the same direction results in change at the icon counter to a value corresponding to the image motion icon consisting of four outwardly directed arrows shown in FIG. 14d. As illustrated in step 140, and in FIGS. 14b–14d, each time the cursor shape is changed to that of the next icon in the icon rotation procedure, the corresponding icon is illuminated on the control panel at the cursor location. The decision in step 141 continues the icon rotation loop until the left button is released. In this regard, for so long as the left button is held down and the negative exit is taken from decision 141, the decision at 142 either loops back to the decision 141 if there is no trackball motion or back up to step 138 if there is further trackball motion. If, after icon rotation, the left button is released, the positive exit is taken from decision 141 and a click of the left button is searched for by entering decision 136 through C.

The sequence 136, 137, 145 signifies a left button click to select an icon function, with the function being performed in step 146. This sequence can be entered by selecting an icon shape at the control panel, moving the cursor in the form of the shape to a display container, and then clicking the left button, as at 136, 137, 145. Alternatively, the clicking sequence is detected out of the positive exit from decision 141 after icon rotation when the left button is released. Note that the clicking sequence is exited if trackball motion is detected in step 137 following depression of the left button in step 136 before the left button is released (step 145). Any appropriate reset sequence will restore the cursor to its default shape.

5,452,416

| 17 | 18 |

## IMAGE ANNOTATION

Image annotation is provided by the set of annotation icons which is beneath the image manipulation icon set in the control panel. Arrows may be dragged from this icon set and selectively dropped on images by moving the cursor to the arrow, clicking the left button to change the shape of the cursor to the arrow, and moving the cursor in the arrow shape to the desired location. At the desired location, clicking the left button will "drop" the arrow at the location. Any appropriate RESET routine will return the cursor to its default shape.

An image can be annotated by selecting the A icon in the control panel, dragging the icon to a location where annotation is desired, clicking the left button of the trackball mechanism and then using the keyboard to annotate the image at the cursor location.

FIGS. 15 and 16 illustrate a procedure executed by the application process for automatically annotating a figure using the annotation lists indicated by reference numeral 60 in FIG. 6. Initially, it is asserted that the application process includes logic capable of selecting an annotation list which is appropriate to the anatomical target. Thus, for example, a sagittal image sequence of a portion of the spine would identify an annotation list which included shorthand annotations commonly employed to identify individual vertebra. The procedure of FIG. 15 provides for the rotation of an annotation list through the annotation box which is illuminated in the annotation icon group in FIG. 16. When this icon is selected, the cursor assumes its shape and is moved in response to the trackball to the desired location. At the desired location, the left button of the trackball is depressed in order to couple the annotation list to the cursor at the cursor location and in the control panel. For so long as the left button is depressed, motion of the trackball will rotate the listed annotations through the annotation box outlined in the image and in the control panel. When the appropriate annotation is rotated into the box, the left button is released. When the left button is clicked again, the annotation will be dropped in the shape of the annotation box at the cursor location and the cursor's shape will be changed back to the default shape with the tip of the cursor pointing to the lower left-hand corner of the annotation box in the image. This is illustrated in FIG. 16 and the procedure laid out in FIG. 15.

In FIG. 15, when the cursor is clicked at the annotation box, positive exits are taken from decisions 150 and 151, the box icon is illuminated at the control panel and the cursor in the shape of the box is moved to a desired location. When the left button is depressed while the cursor is in an image display container, the positive exits list is rotated through the box shape in steps 154. When the left button is released and clicked again, the annotation is dropped at the last cursor position and the cursor shape is restored.

The X icon in the annotation set (FIG. 16) is used to delete annotations from an image. Initially, the X icon is clicked using the cursor. This illuminates the X icon and changes the cursor to the icon shape. The cursor is moved over the annotation to be deleted and the left trackball button is clicked. This removes the annotation from the object list and from the image, restores the cursor to its default shape, and turns off the X icon in the control panel.

Clearly, other embodiments and modifications of this invention will occur readily to those of ordinary skill in the art in view of these teachings. For example, cursor movement and clicking can be controlled from a keyboard. Furthermore, the images which are stored in the database may be actual images taken from the human patient, may be images taken from a veterinary subject, or may be synthesized images. Therefore, this invention is to be limited only by the following claims, which include all such embodiments and modifications when viewed in conjunction with the above specification and accompanying drawings.

We claim:

1. A system for presenting images of anatomical structure for examination by a diagnosing physician, including:

means including one or more display monitors for displaying at least one display container including a display area subdivided into a plurality of presentation areas in a predetermined array;

means for storing an image database including a plurality of images of anatomical structures, the images being separated into a plurality of image groups, in which:

each image group is indexed by a unique group identification; and

each image group is partitioned into one or more ordered image series, each ordered image series including a succession of images which illustrate incrementally registered aspects of an anatomical target, each image series being ordered by assignment to each image in the image series of a numerical position in a respective monotonically changing sequence; and

physician data tables are stored with indexes to unique group identifications and to physician identifiers and including entries specifying output functions and displaying formats;

means for receiving a physician identifier;

means for receiving a group identification;

means connected to the means for receiving, to the means for storing an image database and to the means for displaying at least one display container and responsive to a physician identification and to a group identification for retrieving at least one image series of an image group indexed by the group identification and for displaying the at least one image series in one or more presentation areas of the plurality of presentation areas in a display format contained in the physician data tables; and

means for providing an output from the system according to an output function specified in the physician data tables.

2. The system of claim 1, wherein:

the physician data tables include at least one entry specifying a mode of image series presentation, in which a first mode is a monitor mode and a second mode is a series mode; and

the means for retrieving and displaying including means for ordering the display of the at least one image series in response to mode specification by: displaying each image series of the at least one image series in the order of its respective sequence in a single respective display container in the at least one display container such that each presentation area of the single respective display container includes no more than one image, in

5,452,416

19

response to designation of the monitor mode; and

displaying each image series of the at least one image series one image at a time in the order of its respective sequence in a single respective presentation area of the plurality of presentation areas, in response to designation of the series mode.

3. The system of claim 2, further including means for synchronizing the presentation of each image series of two or more image series such that whenever the display of one image series of the two or more image series is changed to display a next image in the order of its respective sequence, each other image series of the two or more image series is correspondingly changed by the means for retrieving and displaying.

4. The system of claim 2, wherein:

the at least one display container includes:

a first display container for presenting a first plurality of presentation areas in a predetermined array; and

a second display container for presenting a second plurality of presentation areas in the predetermined array;

the at least one image series includes two or more image series of the image group indexed by the group identification; and

the means for retrieving and displaying displays each image series in the order of its respective sequence in a respective display container such that each presentation area of the respective display container includes no more than one image, in response to designation of the monitor mode of presentation.

5. The system of claim 1, further including:

means for displaying a palette display container on the one or more display monitors, the palette display container for presenting a plurality of presentation areas in an array; and

means for selecting an image of an image series displayed in the at least one display container and reproducing the selected image in a presentation area of the palette display container.

6. A method for presenting images of anatomical structure for examination by a diagnosing physician, the method being executed on a computer display system having:

a display for displaying at least one display container subdivided into a plurality of presentation areas in a predetermined array;

a storage subsystem for storing an image database including a plurality of images of anatomical structures; and

means connected to the storage subsystem and to the at least one display container for retrieving images from the image database and displaying retrieved images in the at least one display container;

the method including the steps of:

storing a plurality of images in the image database;

separating the plurality of images into image groups, indexing each image group by a unique group identification;

partitioning each image group into one or more ordered image series, each ordered image series including a succession of images which illustrate incrementally registered aspects of an anatomical target, each image series being ordered by assignment to each image in the image series of a numerical position in a respective monotonically changing sequence;

20

storing a first data table in the storage subsystem, the first data table listing a plurality of referring physician identifiers, each referring physician identifier being indexed from at least one group identification, each referring physician identifier identifying a referring physician and including respective fields specifying output preferences of the identified referring physician for outputting to the identified referring physician images from the display;

storing a second data table in the storage subsystem, the second data table listing a plurality of diagnosing physician identifiers, each diagnosing physician identifier identifying a diagnosing physician and including respective fields specifying format preferences and mode preferences of the identified diagnosing physician for displaying images on the display; and

providing a group identification;

providing a diagnosing physician identifier;

in response to the group identification and the diagnosing physician identifier, retrieving at least one image series of an image group indexed by the group identification and displaying the at least one image series in one or more presentation areas of the plurality of presentation areas in accordance with a format preference specified in fields of the diagnosing physician identifier; and

outputting images from the at least one image series according to output preferences of a referring physician identified by a referring physician identifier indexed from the group identification.

7. The method of claim 6, further including:

providing mode fields in the diagnosing physician identifiers, each mode field specifying a mode of image series presentation, in which a first mode is a monitor mode and a second mode is a series mode;

displaying one image series in the order of its respective sequence in one display container such that each presentation area of the display container includes no more than one image of the at least one image series, in response to designation of the monitor mode; and

displaying one image series one image at a time in the order of its respective sequence in a single respective presentation area of one display container, in response to designation of the series mode.

8. The method of claim 7, further including the steps of:

displaying a first display container including a first plurality of presentation areas in a predetermined array;

displaying a second display container including a second plurality of presentation areas in the predetermined array;

the step of retrieving and displaying including retrieving two image series of the image group indexed by the group identification; and

the step of retrieving and displaying including displaying each image series in the order of its respective sequence in a respective display container means such that each presentation area of the respective display container means includes one image, in response to designation of the monitor mode of presentation.

9. The method of claim 7, further including the steps of:

in the step of retrieving and displaying, retrieving two image series of the image group indexed by the

DR000064

5,452,416

21

group identification and displaying each image series one image at a time in the order of its respective sequence in a single respective presentation area.

10. The method of claim 9, further including synchronizing the presentation of each image series of the two image series such that whenever the display of one image series of the two image series is changed to display the next image in the order of its respective sequence, each other image series of the two image series is correspondingly changed.

11. A computer display system for presenting images of anatomical structure for examination, including:

monitor means for presenting graphical images;

means for displaying a first display container and a second display container on the monitor means, the first display container including a first preselected number of substantially rectangular presentation areas in a first substantially rectangular array, and the second display container including a second preselected number of substantially rectangular presentation areas in a second substantially rectangular array;

at least one data storage device for storing:

an image database including a plurality of images of anatomical structure, the images being separated into image groups, in which:

each image group is indexed by a unique group identification, wherein each group identification names a respective image group and includes an identification of a patient whose anatomy is illustrated by the image group; and

each image group is partitioned into one or more ordered image series, each ordered image series including a succession of images which illustrate incrementally registered aspects of an anatomical target, each image series being ordered by assignment to each image in the image series of a position in a respective monotonically changing sequence;

a first table data structure listing a plurality of referring physician identifiers, each referring physician identifier being indexed from at least one group identification, each referring physician identifier identifying a referring physician and including all respective fields specifying output preferences of the identified referring physician for outputting to the identified referring physician images from the monitor means; and

a second table data structure listing a plurality of diagnosing physician identifiers, each diagnosing physician identifier identifying a diagnosing physician and including respective fields specifying format preferences and mode preferences of the identified diagnosing physician for displaying images on the monitor means;

application means connected to the monitor means, to the at least one data storage device and to the means for displaying the first and second display containers and responsive to a user-selected group identification and a diagnosing physician identifier for displaying at least two image series of an image group indexed by the user-selected group identification, said application means further for:

formatting each image series for display on the monitor means in accordance with format preferences specified in fields of the diagnosing physician identifier; displaying each image series on the monitor

22

means in the order of its respective sequence in a respective display container such that each presentation area of the respective display container includes no more than one image; and

outputting images from said at least two image series according to output preferences of a referring physician identified by a referring physician identifier indexed from the user-specified group identification.

12. The computer display system of claim 1, further including:

means for displaying a palette display container on the monitor means, the palette display container including a plurality of presentation areas in an array; and

means coupled to the means for displaying first and second display containers for picking an image of an image series displayed in the first or second display container and reproducing the selected image in a presentation area of the palette display container.

13. The computer display system of claim 1, wherein: the respective fields of each diagnosing physician identifier specify:

a mode of image series presentation;

a rectangular array format; and

rectangular array dimensions; and

the application means includes respective means for:

presenting an image series in a mode specified by a diagnosing physician identifier;

presenting rectangular arrays in the first and second display containers in a format specified by the diagnosing physician identifier; and

presenting the rectangular arrays in dimensions specified by the diagnosing physician identifier.

14. A computer display system for presenting images of anatomical structure for examination, including:

monitor means for presenting graphical images;

means for displaying at least one display container on the monitor means, the at least one display container including a preselected number of substantially rectangular presentation areas in a substantially rectangular array; and

at least one data storage device for storing:

an image database including a plurality of images of anatomical structure, the images being separated into image groups, in which:

each image group is indexed by a unique group identification, wherein each group identification names a respective image group and includes an identification of a patient whose anatomy is illustrated by the image group; and

each image group is partitioned into one or more ordered image series, each ordered image series including a succession of images which illustrate incrementally registered aspects of an anatomical target, each image series being ordered by assignment to each image in the image series of a position in a respective monotonically changing sequence;

a first table data structure listing a plurality of referring physician identifiers, each referring physician identifier being indexed from at least one group identification, each referring physician identifier identifying a referring physician and including respective fields specifying output preferences of the identified referring physician for outputting to

DR000065

5,452,416

**23**

the identified referring physician images from the monitor means; and

a second table data structure listing a plurality of diagnosing physician identifiers, each diagnosing physician identifier identifying a diagnosing physician and including respective fields specifying format preferences and mode preferences of the identified diagnosing physician for displaying images on the monitor means;

application means connected to the monitor means, to the at least one data storage device and to the means for displaying at least one display container and responsive to a user-selected group identification and a diagnosing physician identifier for displaying at least two image series of an image group indexed by the user-selected group identification, said application means further for:

formatting each image series for display on the monitor means in accordance with format preferences specified in fields of the diagnosing physician identifier;

displaying each image series on the monitor means one image at a time in the order of its respective sequence in a respective presentation area; and

outputting images from said image group according to output preferences of a referring physician iden-

**24**

tified by a referring physician identifier indexed from the user-specified group identification.

15. The computer display system of claim 2, further including:

means for displaying a palette display container on the monitor means, the palette display container including a plurality of presentation areas in an array; and

means coupled to the means for displaying at least one display container for picking an image of an image series displayed in the at least one display container and reproducing the selected image in a presentation area of the palette display container.

16. The computer display system of claim 2, wherein: the respective fields of each diagnosing physician identifier specify:

a mode of image series presentation;

a rectangular array format; and

rectangular array dimensions; and

the application means includes respective means for:

presenting an image series in a mode specified by a diagnosing physician identifier;

presenting rectangular arrays in the at least one display container in a format specified by the diagnosing physician identifier; and

presenting the rectangular arrays in dimensions specified by the diagnosing physician identifier.

* * * * *

## UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.   :   5,452,416                                    Page 1 of 2
DATED        :   September 19, 1995
INVENTOR(S) :   Hilton et al.

It is certified that error appears in the above-indentified patent and that said Letters Patent is hereby corrected as shown below:

Col. 18, lines 36-39, indent the subparagraph rightwardly to align with the subparagraphs beginning at column 18, lines 26 and 28; and

line 45, please change "identification" to --identifier--.

Col. 21, line 55, please change "physic " to --physician--;

line 65, indent the subparagraph rightwardly to align with the subparagraphs beginning at column 21, lines 28 and 33; and

Col. 21, line 68 through Col. 22, line 4, please make a subparagraph break between the semicolon and "displaying" and align the subparagraph:

displaying each image series on the monitor means in the order of its respective sequence in a respective display container such that each presentation area of the respective display container includes no more than one image; and

with the subparagraphs beginning at Col. 21, lines 28 and 33.

Col. 22, lines 10 and 23, change each occurrence of "l" to --ll--.

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO. : 5,452,416                    Page 2 of 2
DATED       : September 19, 1995
INVENTOR(S) : HIlton, et al.

It is certified that error appears in the above-indentified patent and that said Letters Patent is hereby corrected as shown below:

Col. 24, lines 3 and 15, change each occurrence of "2" to --14--.

Signed and Sealed this

Twenty-seventh Day of February, 1996

Attest:

BRUCE LEHMAN

Attesting Officer          Commissioner of Patents and Trademarks

BAR CODE LABEL

## U.S. PATENT APPLICATION

| SERIAL NUMBER | FILING DATE | CLASS | GROUP ART UNIT |
|---|---|---|---|
| 07/998,550 | 12/30/92 | 395 | 2301 |

**APPLICANT**

WESLEY W. HILTON, DEL MAR, CA; MURRAY A. REICHER, RANCHO SANTA FE, CA; DALE SEEGMILLER, SOLANA BEACH, CA.

\*\*CONTINUING DATA\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
VERIFIED

_____

\*\*FOREIGN/PCT APPLICATIONS\*\*\*\*\*\*\*\*\*\*\*\*
VERIFIED

_____

FOREIGN FILING LICENSE GRANTED 06/22/93     \*\*\*\*\* SMALL ENTITY \*\*\*\*\*

| STATE OR COUNTRY | SHEETS DRAWING | TOTAL CLAIMS | INDEPENDENT CLAIMS | FILING FEE RECEIVED | ATTORNEY DOCKET NO. |
|---|---|---|---|---|---|
| CA | 18 | 9 | 4 | $ 457.00 | 901 |

**ADDRESS**

TERRANCE A. MEADOR
BAKER, MAXHAM, JESTER & MEADOR
750 "B" STREET
SYMPHONY TOWERS, SUITE 2770
SAN DIEGO, CA 92101

**TITLE**

AUTOMATED SYSTEM AND A METHOD FOR ORGANIZING, PRESENTING, AND MANIPULATING MEDICAL IMAGES

This is to certify that annexed hereto is a true copy from the records of the United States Patent and Trademark Office of the application as filed which is identified above.

By authority of the
COMMISSIONER OF PATENTS AND TRADEMARKS

Date                    Certifying Officer

07/998550

PATENT APPLICATION SERIAL NO._____

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

100 TW 01/25/93 07998550                    1 201      392.00 CK 901

PTO-1556
(5/87)

FORM PTO 1082

Dock't No. ___901___
Date ___December 30, 1992___

THE COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

07/998550

Sir:

Transmitted herewith for filing is the patent application of
Inventor(s): _____ Hilton, et al

For: "AN AUTOMATED SYSTEM AND A METHOD FOR ORGANIZING, PRESENTING, AND MANIPULATING
MEDICAL IMAGES"

Enclosed are:

[X] One high quality copy of the drawing consisting of __18__ sheets.

[ ] An Assignment of the invention to _____

[ ] A certified copy of a _____ application.

[X] A Declaration/Power of Attorney.

[X] A Verified Statement to establish Small Entity status under
37 CFR 1.27.

The filing fee has been calculated as shown below:

| FOR | (Co. 1) NO.FILED | (Col. 2) NO.EXTRA | SMALL ENTITY RATE | FEE | OTHER THAN A SMALL ENTITY RATE | FEE |
|---|---|---|---|---|---|---|
| BASIC FEE | | | | $ 355 | | $ 710 |
| TOTAL CLAIMS | 9 - 20 = * ___ | | x 11 = | $ ___ | x 22 = | $ ___ |
| INDEP. CLAIMS | 4 - 3 = * 1 | | x 37 = | $ 37 | x 74 = | $ ___ |
| [ ] MULTIPLE DEPENDENT CLAIM PRESENTED | | | + 115 = | $ ___ | + 230 = | $ ___ |
| | | | TOTAL | $ 392 | TOTAL | $ ___ |

*If the difference in Col. 1 is
less than zero, enter "0" in Col. 2

[ ] Please charge my Deposit Account No. 02-0460 in the amount of
$_____. A duplicate copy of this sheet is enclosed.

[X] A check in the amount of $ 392.00 to cover the filing fee is enclosed.

[X] The Commissioner is hereby authorized to charge payment of the
following fees associated with this communication or credit any
overpayment to Deposit Account No. 02-0460. A duplicate copy of this
sheet is enclosed.
  [X] Any additional filing fees required under 37 CFR 1.16.
  [X] Any patent application processing fees under 37 CFR 1.17.

[ ] The Commissioner is hereby authorized to charge payment of the
following fees during the pendency of this application or credit any
overpayment to Deposit Account No. 02-0460. A duplicate copy of this
sheet is enclosed.
  [ ] Any patent application processing fees under 37 CFR 1.17.
  [ ] The issue fee set in 37 CFR 1.18 at or before mailing of the
Notice of Allowance, pursuant to 37 CFR 1.311(b).
  [ ] Any filing fees under 37 CFR 1.16 for presentation of extra
claims.

TERRANCE A. MEADOR
Reg. No. 30,298

BAKER, MAXHAM, JESTER & MEADOR
SYMPHONY TOWERS
750 "B" STREET, SUITE 2770
SAN DIEGO, CA  92101

07/998550

FORM PTO-1595
(1-31-92)

RECORDATION FORM COVER SHEET

PATENTS ONLY

MAIL ROOM
DEC 30 1992

U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office

Tab settings ⇨ ⇨ ⇨ ▼ ▼ ▼ ▼ ▼ ▼

To the Honorable Commissioner of Patents and Trademarks: Please record the attached original documents or copy thereof.

| 1. Name of conveying party(ies): | 2. Name and address of receiving party(ies): |
|---|---|
| Wesley W. Hilton | Name: DOMINATOR RADIOLOGY, INC. |
| Dale Seegmiller | Internal Address: 15865 Via del Alba |
| Additional name(s) of conveying party(ies) attached? ☐ yes ☒ no | Rancho Santa Fe, |
| | California  92067 |
| **3. Nature of Conveyance:** | Street Address: |
| ☒ Assignment   ☐ Merger | |
| ☐ Security Agreement   ☐ Change of Name | |
| ☐ Other | City _____ State _____ ZIP _____ |
| Execution Date: December 30, 1992 | Additional name(s) & address(es) attached? ☐ Yes ☒ No |

4. Application number(s) or patent number(s):

If this document is being filed together with a new application, the execution date of the application is: 12/30/92

A. Patent Application No.(s) | B. Patent No.(s)

Additional numbers attached? ☐ Yes ☒ No

| 5. Name and address of party to whom correspondence concerning document should be mailed: | 6. Total number of applications and patents involved: 1 |
|---|---|
| Name: Terrance A. Meador | |
| Internal Address: BAKER, MAXHAM, | 7. Total fee (37 CFR 3.41):........ $ 40.00 |
| JESTER & MEADOR | ☒ Enclosed |
| Symphony Towers | ☒ Authorized to be charged to deposit account if amount incorrec[t] |
| Street Address: 750 "B" Street | |
| Suite 2770 | 8. Deposit account number: 02-0460 |
| City: San Diego   State: CA ZIP 92101 | (Attach duplicate copy of this page if paying by deposit account) |

DO NOT USE THIS SPACE

9. Statement and signature.

To the best of my knowledge and belief, the foregoing information is true and correct and any attached copy is a true copy of the original document.

TERRANCE A. MEADOR _____ Terrance A. Meador _____ 12/30/92
Name of Person Signing _____ Signature _____ Date

Total number of pages comprising cover sheet: 1

OMB No. 0651-0011 (exp. 4/94)

Do not detach this portion

Mail documents to be recorded with required cover sheet information to:

Commissioner of Patents and Trademarks
Box Assignments
Washington, D.C. 20231

Public burden reporting for this sample cover sheet is estimated to average about 30 minutes per document to be recorded, including time for reviewing the document and gathering the data needed, and completing and reviewing the sample cover sheet. Send comments regarding this burden estimate to the U.S. Patent and Trademark Office, Office of Information Systems, PK2-1000C, Washington, D.C. 20231, and to the Office of Management and Budget, Paperwork Reduction Project, (0651-0011), Washington, D.C. 20503

07/998550



RETAIN THIS NUMBER-CUSTOMER
RECEIPT WILL BE MAILED TO YOU.

"Express Mail" mailing label No.   TB152462288 US

Date of Deposit   December 30, 1992

I hereby certify that this paper or fee
is being deposited with the United States
Postal Service "Express Mail Post Office
to Addressee" service under 37 CFR 1.10
on the date indicated above and is
addressed to the Commissioner of Patents
and Trademarks, Washington, D.C. 20231.

CLARE M. ROBERTS
(Name)

[Signature]

998,550

## AN AUTOMATED SYSTEM AND A METHOD FOR
## ORGANIZING, PRESENTING AND MANIPULATING MEDICAL IMAGES

ABSTRACT

An automated system for organizing, presenting, and manipulating medical images includes a database in which the medical images are structured into groups, each group including one or more image series, each image series including an ordered sequence of images which illustrate incrementally registered aspects of an anatomical target. Image series are presented in their sequential order either in a monitor presentation format which displays each sequence in its entirety in a single monitor display container or which presents two or more image series, image-by-image, in adjacent presentation areas of a series display container. The system includes a plurality of monitors in which all monitors, save one, produce display containers for image series presentation. One monitor is reserved for displaying a working palette to which images of the image series displayed on the other monitors may be moved. The system activates a monitor in a plurality of monitors in response to movement of a cursor between monitors. An active monitor is indicated by presentation of a control panel. The system also provides heads-up presentation of control panel icons at a cursor location outside of the control panel by sequentially changing the shape of the cursor to the icon shapes for user selection.

1910-2                    - 32 -

AN AUTOMATED SYSTEM AND A METHOD
FOR
ORGANIZING, PRESENTING, AND MANIPULATING
MEDICAL IMAGES

BACKGROUND OF THE INVENTION

5        The invention relates to the organization, presentation, and manipulation of images.  More particularly, the invention provides efficient, user-friendly means and procedures for presenting images of anatomical structure and the like for examination.

        The invention is also concerned with the activation of a display
10   container for medical images in a context of a plurality of display containers, and with the presentation of icons without distracting the attention of a user from medical images which are being examined.

        Magnetic resonance imaging (MRI) is an important, non-invasive imaging modality that is widely used by radiologists to examine internal
15   anatomy to aid in the analysis of trauma and the diagnosis of disease. An MRI study provides a multi-planar representation of an anatomical target in the form of one or more image series.  The images of a series may be parallel planar "slices" of the anatomical target which are incrementally registered along an imaging axis.  Another imaging
20   technology may produce image sequences which include non-parallel views that are incrementally registered about an axis of rotation or over a non-planar surface.

        MRI technology is well understood.  See, for example, MRI OF THE KNEE by Jerrol H. Mink, et al, Raven Press Ltd. (New York, NY
25   1987) and the work by F.W. Wehrli, et al, entitled PARAMETERS DETERMINING THE OCCURRENCE OF NMR IMAGES published by the General Electric Company, Medical Systems Operations, in 1983.

        In the prior art, the transparencies produced by an MRI system would be manually mounted in their series sequence on long light boxes
30   where they would be read and annotated by radiologists.  Following examination, the images would be physically stored in a patient's medical history folder.  Recently, automated systems for archiving,

1910-2                        - 1 -

retrieving, and presenting MRI images have been developed.  In these systems, the images are conventionally converted to multi-bit, pixelated data representations which are formatted, stored, and retrieved using file management techniques.    However,  most  conventional  file management  techniques  are  adapted  for  storage,  retrieval,  and presentation of documents, rather than images.  Of course, these systems give even less consideration to the specialized requirements for storage and presentation of images showing internal anatomy.

Even  the  addition  of  a  directly-manipulated  user  interface  in conventional image storage and presentation systems does little to adapt these systems to the special needs of radiologists who must consider and manipulate  many  images  in  particular  ways  for  special  purposes. Furthermore,  each  radiologist  has  a  highly  personal  mode  of examination.  For example, one radiologist may wish to examine a first sequence of transparencies in its entirety and then a second, related sequence before trying to correlate between individual images of the sequences.    Another  radiologist  may  wish  to  examine  sequences  in parallel  by  simultaneously  considering  images  taken  of  the  same anatomical  plane  under  different  conditions  of  exposure.    Even currently-available database systems which have been adapted for storage and presentation of radiological images have not automated the presentation modalities of image series.  Instead, a radiologist must provide for the individual retrieval and presentation of each and every stored image.  In these systems, the images are individually identified and processed for storage and presentation without correlation to other images in their respective sequences.  Furthermore, the existing systems do not provide for concurrent presentation of related image series.

Moreover,  the  currently  available  automated  image  storage systems are awkward and difficult to use, providing little in the way of means for direct manipulation of image presentation formats and images which are displayed for analysis.

SUMMARY OF THE INVENTION

Therefore, it is a primary objective of this invention to provide

1910-2                                  - 2 -

an automated system for storage, retrieval, and presentation of medical images which is especially adapted for the presentation of medical image sequences and which affords the user with a flexible and responsive set of functions that permit direct manipulation of the modes of image presentation and of the presented images themselves.

The invention is embodied in a computer display system which presents images of anatomical structure and the like for examination. The system includes the following combination:

a first display container including a first preselected number of substantially rectangular presentation areas in a substantially rectangular array;

a second display container including a second preselected number of substantially rectangular presentation areas in a substantially rectangular array;

an image database including a plurality of images of anatomical structure, the images being separated into image groups in which:

each image group is indexed by a unique group identification; and

each image group is partitioned into one or more ordered image series, each ordered image series including a succession of images which illustrate incrementally registered aspects of an anatomical target, each image series being ordered by assignment to each image in the image series of a position in a respective monotonically changing sequence;

a mechanism connected to the image database and to the first and second display container and responsive to a group identification for displaying at least two image series of an image group indexed by the patient identification, wherein:

each image series is displayed in the order of its respective sequence in a respective display container such that each presentation area of the respective display container includes no more than one image; or,

all of the image series are displayed in one display

1910-2                              - 3 -

DR000077

container and each image series is displayed one image at a time in the order of its respective sequence in a respective presentation area of the display container.

5        For direct manipulation of an interactive computer system with an output means for presenting visual displays wherein a user is presented with a visual display that includes a control display container (control panel), the invention further includes the following combination:

a first bounded display area presented by the output means, the first display area including:

10              a control panel; and

a plurality of icons displayed in the control panel;

a second bounded display area presented separately from the first display area by the output means;

a cursor mechanism connected to the output means for

15 displaying and moving a cursor in a display area; and

a functional mechanism coupled to the first and second display areas and the to the cursor mechanism for presenting the control panel in the second display area in response to movement of the cursor from the first to the second display area.

20        Also, in an interactive computer system with an output means for presenting visual displays wherein a user is presented with a display that includes a directly-manipulated display container for presenting program output, the invention is embodied in a combination, in which:

a cursor mechanism is connected to the output means for

25 displaying and moving a cursor;

a control display area is provided in the display in which a plurality of icons are displayed in a predetermined order;

a pointing mechanism is provided, with connection to the cursor mechanism, for positioning the cursor and selecting icons

30 in response to direct manual manipulation by a user; and

an icon rotation mechanism is provided, with connection to the pointing mechanism and to the cursor mechanism, which responds to a position of the cursor inside the display container by changing the shape of the cursor at the position to the shape

35 of an icon of the plurality of icons and by changing the shape of

1910-2                   - 4 -

the cursor to the shapes of the other icons in the plurality of icons, such that the shape of the cursor is changed one shape at a time and in the predetermined order, in response to direct manual manipulation of the pointing mechanism.

BRIEF DESCRIPTION OF THE DRAWINGS

The invention, and its achievement of the above-stated objective, will be understood when the following detailed description is read in connection with the below-described drawings, in which:

Figure 1 is a block diagram illustrating basic components of an automated system for storing, retrieving, and displaying medical images;

Figure 2 is a block diagram illustrating in greater detail certain components of the system of Figure 1;

Figure 3 is an illustration of a display container output on a monitor of the system of Figure 1 for a presentation of medical images according to one mode of the invention;

Figure 4 is an illustration showing a display container for presentation of medical images according to a second mode of the invention;

Figure 5 is an illustration showing a working palette display container presented on a monitor of the system of Figure 1;

Figure 6 illustrates the organization of a medical image database according to the invention;

Figure 7 is a flow diagram illustrating how the database of Figure 6 is accessed;

Figure 8 is a flow diagram illustrating how the system of Figures 1 and 2 presents images according to the first mode of the invention;

Figure 9 is a block diagram illustrating presentation of images according to the first mode of the invention;

Figure 10 is a flow diagram illustrating how the system of Figures 1 and 2 presents images according to the second mode of the invention;

1910-2                                  - 5 -



Figure 11 is a block diagram illustrating presentation of images in a database of Figure 6 according to the second mode of the invention;

Figure 12 is a flow diagram illustrating a procedure for indicating an active monitor according to the invention;

Figure 13 is a flow diagram illustrating a procedure for rotating image manipulation icons according to the invention;

Figures 14a through 14d are illustrations of display containers showing icon rotation according to the procedure of Figure 13;

Figure 15 is a flow diagram illustrating annotation rotation according to the invention;

Figure 16 is an illustration showing a display container with annotation rotation according to the procedure of Figure 15.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

The invention is intended to operate in connection with an image database which stores medical images for retrieval and presentation. Although the following description assumes that the images are data representations of pixelated images conventionally produced from the output of medical imaging technology such as MRI, X-ray, and CAT, this is not intended to limit such images to such sources. The inventors contemplate that the means and processes presented in this description would apply as well to a database of synthetically-created medical images.

In the preferred embodiment and best mode of this invention, the medical images are, in fact, those produced from an MRI apparatus. As is known, such an apparatus produces series, or sequences of images, which represent successively deeper planar slices of an anatomical target. In the examples given below, the anatomical target is the head of a human patient and it is assumed that three distinct series of images have been taken of the target. Two of these series are termed "axial". The images of an axial series represent parallel, planar images of cross-sectional anatomy taken along an imaginary vertical axis of the head. Each axial series is generated to emphasize particular anatomical

1910-2                          - 6 -

features by varying parametric values of the MRI process.  In this regard, see Chapter 1 of the Mink et al reference.  The two axial series described in this embodiment are the well-known axial T1 and axial T2 sequences.  The third series is a sagittal sequence in which the images are anatomical cross-sections lying in planes parallel to the median plane of the head.

It is assumed, without further explanation, that axial and sagittal images obtained from an MRI apparatus will have been digitized and rendered into conventional scanned, pixelated data representations that can be processed by the computer system illustrated in Figure 1.  In Figure 1, the system includes a DOS-based personal computer or work station 10 which has the capability to concurrently execute an application process 12 and a plurality of interface processes 14.  The application process which, preferably, is written in the well-known C language, embodies processes and functions of the invention as described later in further detail.  The interface processes 14 include commercially available programs as well as processes which can be constructed by the reasonably skilled computer programmer with the following description in hand.  The interface processes 14 are connected to standard I/O devices such as a conventional trackball mechanism 16, a conventional QWERTY keyboard 22, and output devices 23 such as a full grey scale printer, a facsimile machine, and a modem (none of which is illustrated).  The trackball mechanism 16 is a conventional picking device that includes a left button 18, a right button 19, and a rotation ball 20.  The trackball mechanism 16 provides a user with the means for directly manipulating the position and functions of a cursor.  The keyboard 22 is manually operated to input alphanumeric characters.  The output devices 23 operate conventionally to provide tangible, visual results produced by the invention as described in further detail below.  An image database 24 includes one or more conventional on-line storage devices for storage of medical image data representations which have been generated as described above.  Therefore, the image database 24 includes not only the storage hardware, but also the stored images and all necessary indices.  An output device 25 in the form of a multi-screen apparatus provides the

1910-2                              - 7 -



DR000081

means by which the images stored in the image database 24 are arranged and presented to a practitioner for examination, manipulation, and disposition. In the preferred embodiment, the device includes three separate output monitors 26, 27, and 28 which are connected by a coupling mechanism 29 to the interface processes 14 for control by the application process 12.

Figure 2 shows certain architectural aspects of the best mode for practicing the invention in a system such as that illustrated in Figure 1. In Figure 2, the interface processes 14 include a conventional directly-manipulated user interface 14a which is directly connected to a screen driver 14b. The screen driver 14b is connected to the trackball mechanism 16 and the keyboard 22, passing inputs from these devices by conventional means directly to the user interface 14a. The screen driver 14b also operates in conjunction with the user interface 14a to provide the pixel information necessary to draw and manipulate graphics on the monitors 26, 27, and 28.

The graphics include a cursor, display containers which give a visible structure for image presentation, and a control panel in which icons and function buttons are displayed. It is assumed that the user interface includes the ability not only to generate a cursor, but also to move the cursor among the monitors in response to trackball motion. It is further presumed that the user interface includes the ability to highlight icons and control buttons which have been "pointed to" by the cursor and "clicked" by a trackball mechanism button. The interface processes 14 further include an image subsystem 14c and a low level video controller 14d. The image subsystem 14c accesses the image database 23 for retrieval of stored images. Image selection is made by the application process 12 and indicated by control signals coupled to the image subsystem 14c. In response to control signals which designate images to be retrieved, the image subsystem 14c obtains the data representations of the specified images and enters them into a high-capacity working memory 33 as directed by the application process 12. The application process 12 further specifies how and which images in the working memory 33 are to be output on the monitors 26, 27, and 28. Thus, the pixel information representing database images flows

1910-2                              - 8 -

from the working memory 33, through the image subsystem 14c to the monitors 26, 27, and 28.   Control over the display apparatus 25 is provided by the coupling mechanism 29 in the form of a video card which has separately accessed and separately controlled memories for

5   Red, Green, and Blue pixels.   These memories are indicated by reference numerals 29a, 29b, and 29c, respectively.  The memories of the video card are controlled by a low-level video controller 14d, which receives control signals from the image subsystem 14c.   The image subsystem 14c generates control input for the low-level controller 14d

10   in response to control signals generated by the application process 12.

In the architecture illustrated in Figure 2, each of the memories 29a, 29b, and 29c is connected by a respective gun of a tri-color output to a particular video monitor.   In particular, the Red memory 29a is connected by way of a Red (R) video output connector to the monitor

15   26, the Green memory 29b by a Green (G) video output connector to the monitor 27, and the Blue memory 29c by a Blue (B) video output connector to the monitor 28.  The monitors 26, 27, and 28 are operated in the monochromatic mode and the memories 29a, 29b, and 29c are operated effectively as frame buffers for the monitors to which they are

20   connected.  This architecture merely reflects the design choices of the inventors in implementing the invention, and is not intended to limit the use of equivalent architectures.  For example, instead of separate video monitors 26, 27, and 28, a designer might select an architecture which provides separate display containers (windows) on a single, large video

25   monitor so that each window operates as a separate, independently-controlled monitor.

The application program 12 employs object-oriented programming techniques to provide programming controls and cues to the user interface 14a and the imaging subsystem 14c.  Controls and cues are in

30   an object list 34 which is initiated and updated as needed by the application process 12.  The object list has a conventional structure in that it includes a plurality of objects, each of which represents some feature or attribute of a display which is presented on one of the monitors 26, 27, or 28.  Objects in the object list 34 are conventionally

35   indexed.   Each object includes one or more application process

1910-2                                        - 9 -



functions and any data necessary to establish machine state when the object is encountered or otherwise identified during system operation.

The application process 12 maintains and increments an icon index 35 whose output is provided to the user interface 14a for accessing the object list 34 in a procedure described later in greater detail.

IMAGE PRESENTATION

The invention is practiced on a system architecture corresponding to that illustrated and discussed above. The invention is concerned with the presentation of one or more medical image series for consideration, analysis, and disposal by a user such as a radiologist. The invention includes at least two modes for presenting medical image series. The first mode is illustrated in Figure 3.

Figure 3 illustrates what is termed the "monitor" mode of image presentation. Figure 3 illustrates a rectangular display container which is produced on one or more monitors for presentation of image series. The series shown in Figure 3 is an axial T2 series including 18 images. The display container is subdivided into a rectangular array of 20 presentation areas. In the monitor mode of image presentation, an image series is shown in a single display container in its sequence order such that each presentation area of the display container includes one image of the sequence. Only one image series at a time is shown in any display container. Separate series are shown in separate display containers. The axial T2 sequence illustrated in Figure 3 is ordered by assignment to each image in the series of a monotonically increasing number. The number assigned to an image represents the image's position in the sequence of which it is a member. In Figure 3, therefore, the image in the upper left-hand presentation area is the first image of the axial T2 sequence, with the next image in the sequence being assigned the number 2 and being displayed in the next presentation area of the display container to the right of the presentation area where image number 1 is shown.

In the monitor mode of the presentation, a display container such as that illustrated in Figure 3 is output on all but one of

1910-2                           - 10 -

DR000084

the monitors or monitor equivalents supported by the system. Thus, in Figures 1 and 2, a display container such as shown in Figure 3 would be presented on, for example, monitors 26 and 27, with monitor 28 being reserved for presentation of a work product palette as described below. This permits more than one image series to be presented, with each image series being presented in its sequence order in a presentation area of a respective display container on a particular monitor. Since co-relative series such as axial T1 and axial T2 typically consist of an identical number of images taken at identical planes, identical side-by-side presentations of axial T1 and T2 series on adjacent monitors in the manner illustrated in Figure 3 contributes significantly to a radiologist's ability to differentially analyze the images.

Figure 4 illustrates a second presentation mode of the invention which is termed the "series" mode. In the series mode, a display container comprising a rectangular array of rectangular presentation areas is displayed on one or more monitors. For example, the display container in Figure 4 includes four substantially rectangular presentation areas numbered 1, 2, 3, and 4 in the drawing. In the invention, each presentation area of a series mode display container is employed to display an image series, one image at a time, in the order of its respective sequence. In this regard, consider presentation area 2 in which an axial T2 series is illustrated. Assume that the axial T2 series is identical to that illustrated in Figure 3. Thus, the images of the axial T2 series would be shown in presentation area 2 beginning with image 1 and continuing sequentially until image 18 is shown. Assume next that a co-relative axial T1 series comprising 18 images is presented in presentation area 1 in the display container of Figure 4. An important feature of the invention termed "coupling" is employed to synchronize the presentation of the axial T1 and T2 series so that whenever an image of one series is changed to the next image in the series, the other series is changed identically to display the image of the other series occupying the same sequence position. Thus, if presentation area 1 in the display container of Figure 4 displays image 1 of the axial T1 series and then riffles through the images of the

1910-2                              - 11 -

ᴦ2

series, the display in presentation area 2 would identically riffle through the images of the axial T2 series, beginning with image 1. The invention contemplates that the coupling feature of the series mode of presentation will synchronize image presentation only between co-
5    relative image series. Thus, for example, an axial T1 series would be coupled for a presentation with an axial T2 series, but not with a sagittal T1 series such as that shown in presentation area 4 of the display container in Figure 4.

        The series mode of presentation is practiced by presenting the
10   display container of Figure 4 on all available monitors or monitor equivalents except one, which is also reserved for the working palette display container.

        Refer now to Figure 5 for an illustration of the working palette display container. This display container is presented on one monitor
15   of a multi-monitor system, such as monitor 28 in Figures 1 and 2. The working palette display container has a substantially rectangular aspect and is subdivided into a rectangular array of individual presentation areas. The working palette is provided to receive individual images which are picked and copied from presentation areas in monitor mode or
20   series mode display containers. The working palette allows a radiologist to assemble the images which are deemed to be the most important in illustrating trauma or disease for provision to a referring physician. For example, the axial image displayed in presentation area 3 of the working palette display container may have been copied there
25   from presentation area 12 in the monitor mode display container of Figure 3.

        Figure 6 illustrates the structure of the image database which enables the efficient storage and retrieval of image series. When an MRI apparatus is used to generate images, examination protocols
30   normally provide for identification of the patient, and set out the number and types of sequences which are to be taken and the anatomical target of interest. From this information, a unique composite patient identifier (ROOTNAME) is algorithmically derived. A patient, thus, has a unique ROOTNAME for each MRI examination. A patient
35   identification, the corresponding ROOTNAME, and an identification of

1910-2            - 12 -

a referring physician are entered for each patient examination into a database file 50 entitled "PATIENT.dB". For any patient identification entered in the file 50, its corresponding ROOTNAME points to an examination file such as the file 53, which is entitled "ROOTNAME.PAT". Each examination file 53 identifies an image group including one or more image series obtained during an examination. Each image series in an image group is indexed to a set of sequentially named or numbered files in which the images of the series are contained. For example, in the ROOTNAME.PAT file 53 illustrated in Figure 6, the image group includes axial T1, axial T2, and sagittal T1 series. The axial T1 series consists of n consecutively-numbered files, each containing a respective image of the series such that the sequence position of the named file corresponds to the sequence position of the image it contains. The image files are named ROOTNAME.XXX. Thus, image 1 in the axial T1 series has a file name ROOTNAME.1, the second image in this series is in a file named ROOTNAME.2, and so on. Similarly, the n images of the axial T2 series are stored in files consecutively numbered as ROOTNAME.m through ROOTNAME.(m+n). When a patient is identified to the application process 12, the application process determines a ROOTNAME value for that patient, obtains a ROOTNAME.PAT file, and commands the image subsystem to extract the image series contained in the ROOTNAME file sequence defined by the ROOTNAME.PAT file and place them in linked list form in the working memory 33. The application process 12 then presents the image series to a radiologist and provides the radiologist's work product assembled in a working palette, to the referring physician.

The file-naming rule for image series is important to the invention because it preserves the unique identity, and the order, of each image series. For any given ROOTNAME, an image series can be identified by reference to the ROOTNAME file 53 and manipulated, as a unit and independently of any other image series, by the system of Figures 1 and 2. This provides a very significant advantage over the existing systems which treat each image as an independent unit, unconnected with any other image in its sequence or with any other image in any other series or group.

1910-2                                    - 13 -

As Figure 6 illustrates, the PATIENT.dB file includes a REFERRING PHYSICIAN column containing values which index to entries in a REF.DOCS file 52. The REF.DOCS file 52 lists referring physicians. Each referring physician entry includes a set of functions specified by the identified referring physician which are to be executed when a radiologist indicates that examination of an image group is completed by pressing a DONE button, which is explained later in more detail. A RADSTAFF.dB file 63 includes at least seven columns. In the first column (RAD NAME) are listed the names of radiologists having access to the system. The second through sixth columns comprise a format specification for the monitors in which the image series are to be displayed. The seventh column includes a working palette specification. The format specification, columns two through six of the Table 63, include a MODE column, identifying the monitor or series mode of presentation, a MATRIX column setting forth the number of rows and columns in the display containers, and a COUPLE column specifying whether the coupling function is invoked for synchronization of two or more image series in a series mode of presentation. The format specification further includes SHRINK and EXPAND columns which specify whether the rows and columns of the matrix are to be adapted to predefined dimensional parameters for display containers. The seventh column specifies the matrix size of the working palette. The application process also has access to a set of annotation lists 60 and to the set of image functions that are linked to objects which are in or which may be added to, the object list 34 of Figure 2.

Figure 7 illustrates the procedure executed by the application process 12 to initialize the system of Figures 1 and 2 for presentation of images. The procedure starts at step 70 by receipt of an indication that the PATIENT.dB file is to be read. In step 71, a list illustrating the PATIENT.dB file is constructed and presented on one of the monitors. It is assumed that the user can select the name of a patient simply by moving a cursor to the patient's name in the displayed list and clicking on the name by depressing and releasing a trackball button. The decision 73 awaits selection of a patient. In decision 73, the negative exit can be manually selected. If the negative exit is taken

1910-2                           - 14 -

from decision 73, the procedure is exited. If a patient is selected, the positive exit is taken from decision 73 and a search is conducted of the database for a ROOTNAME.PAT file for this patient in step 74. If the file does not exist, a warning message to the operator is displayed on the monitor in step 75. Otherwise, the ROOTNAME.PAT file is provided to the application process which extracts the image group organization from the file in step 77, and passes the appropriate control signals to the imaging system in step 78 to enable the imaging subsystem to copy the images named in the ROOTNAME.PAT file from the image database to the main memory. In step 79, a list illustrating the RADSTAFF.dB file is presented in a manner permitting a radiologist to log on by pointing to and clicking his name in the list. When the radiologist's name is identified in this manner, the format specification and working palette matrix size in the same RADSTAFF.dB row are provided to the application process 12 which enables it to initialize control blocks for each monitor, as well as the object list, in step 80. The object list includes a full specification of the graphics objects required in the first monitor for the mode and the matrix size, and palette size specified in the RADSTAFF.dB entry selected by the user. The first monitor is then initialized with graphics and images in steps 81 and 82. Once the first monitor has been initialized, the object list is updated for specifying the graphics of the second monitor, and then is updated once again to specify the working palette graphics for the third monitor. The third monitor is initialized with graphics in step 83. The application process then executes the appropriate presentation mode procedure. In the preferred embodiment, the monitors 26 and 27 in Figures 1 and 2 are formatted with display containers of the specified mode and matrix size and populated with images and then the monitor 28 is formatted with the specified working palette.

Referring once again to Figures 1 and 2, when the object list 34 is initialized or updated, the application process provides a "SELECT MONITOR" control signal to the image subsystem 14c. This signal is appropriately conditioned to indicate the monitor to which control is to be transferred. In response, the image subsystem configures the low level controller 14d to enable the appropriate one of the memories 29a,

1910-2                    - 15 -

29b, or 29c.  For example, when the object list is initialized, the SELECT MONITOR control signal forces the low level controller 14d to enable the Red memory 29a to receive the appropriate display container graphics established in the object list 34.  The user interface 14a inspects the object list 34 to determine the graphics objects for which graphics pixels must be generated and provided by the screen driver 14b.  The screen driver 14b outputs the specified graphics pixels in parallel to all of the memories 29a, 29b, and 29c.  The pixels, however, are read into only the currently-enabled memory.

Once the series of an image group have been entered in sequence order into the working memory 33 and the display containers have been initialized, the application process produces the appropriate image system control signals to present an initial image display in the specified presentation mode.  If, for example, the monitor mode has been specified, graphics pixels for presenting a display container such as that illustrated in Figure 3 in the specified matrix size are entered into the Red memory 29a of the video card together with image pixels for the first series of the image group.  When the memory 29a is appropriated loaded with graphics and image pixels, the application process issues a SELECT MONITOR control signal to the low level controller 14d through the image subsystem 14c, which disables data entry to the Red and Blue memories 29a and 29c and enables data entry into the Green memory 29b.  Graphics pixels and image pixels for the second series of the image group are entered into the memory 29b and the SELECT MONITOR signal is once again issued so that graphics pixels for the working palette can be entered into the Blue memory 29c.  Next, the object list is updated to describe the Red memory 29a, the Red memory 29a is enabled, and the cursor is generated.  The cursor pixels are fed to the enabled memory and updated therein when the cursor is moved.

At this point, display containers with images would be presented on the monitor 26 and on the monitor 27, while an empty working palette would be displayed on the monitor 28.

Returning to Figure 3, assume that the monitor display container and image series in this figure are displayed on monitor 26 as shown in

1910-2                          - 16 -

17

DR000090

the figure. Thus, the presented display includes a rectangular area adjacent the right edge of the display container. This area is referred to as the "control panel" and contains a plurality of function buttons (DONE, CHANGE SERIES, and PRINT), a set of image manipulation
5   icons immediately below the function buttons, and a set of annotation icons below the image manipulation icons. Any of the function buttons and any of the image manipulation or annotation icons can be activated by "point and click" using the trackball to point with the cursor, and the left cursor button to click on a button or icon.

10        The function buttons represent application process functions that can be activated by pointing and clicking. The DONE button, when activated, invokes the "DONE" functions of the referring physician. The CHANGE SERIES button, when activated, deletes the series presently displayed in the display container and enters the images of
15   the next series listed in the ROOTNAME.PAT file. The PRINT button invokes an application process function which prints a copy of the screen. As also illustrated in dashed outline in Figure 3, another button may be presented in a control panel between the DONE and CHANGE SERIES buttons. The button may be a NEXT or a PREVIOUS
20   button. When the image series includes more images than there are presentation areas in the display container, the NEXT button replaces the currently-displayed subset of consecutively numbered images of the series with the following subset. So long there are images remaining to be presented, the NEXT button will be presented. When the last subset
25   of the image series is displayed in the display container, the PREVIOUS button is displayed. When activated, the PREVIOUS button returns the previous subset of series images in the display container. It should be evident that the NEXT and PREVIOUS buttons are displayed only in monitor mode control panels.

30        The set of image manipulation function icons is positioned immediately beneath the PRINT button. These icons control various image manipulation functions. The upper left-most icon is a magnifying glass and controls a conventional zoom function which magnifies or minifies an image in response to trackball motion. Immediately beneath
35   the zoom icon is a riffle icon in the form of a spaced set of pages. In

1910-2             - 17 -

response to trackball motion, the riffle function shuffles through an image series in forward or reverse sequence. Beneath the riffle icon is an icon representing illumination which adjusts the contrast or brightness of an image in response to trackball motion. Immediately to

5    the right of the zoom icon is a roam icon consisting of four outwardly-directed arrows. The roam function is used in conjunction with the zoom function and moves a magnified image under a viewing aperture in response to trackball motion. The icon in the shape of a movie camera immediately beneath the roam icon denotes the cine function, which is

10   an automated riffle that, once selected, automatically steps through an image series in sequence order. The speed of the cine function is controlled by the trackball.

      A set of annotation icons consisting of four arrows and A and X and a rectangular box is presented immediately beneath the image

15   manipulation icons. These icons are discussed later in more detail.

      As Figures 3 and 4 illustrate, the cursor has a default shape in the form of a hollow arrow.

      Refer now to Figures 3, 8, and 9 for an understanding of a monitor presentation format procedure according to the invention.

20   Once the displays in the monitors 26, 27, and 28 have been initialized for monitor presentation as described above, the monitor format procedure begins. This procedure executes in response to cursor location and trackball button activation. Thus, in step 90, beginning with monitor 26, for example, and using the cursor location and sensing

25   button activation, the procedure determines whether one of the image manipulation icons has been selected in decision 91. If so, the image function is performed at the cursor location. Otherwise, the negative exit is taken from decision 91 and the status of the CHANGE SERIES button is inspected in decision 92. If the button function has been

30   activated, the next series listed in the ROOTNAME.PAT file is moved into the display container grid of the monitor where the cursor is located when the left button of the trackball mechanism is clicked. Now, a series counter (not shown) for the monitor is updated to identify the series currently displayed on the monitor. If the function

35   has not been activated, the negative exit is taken from decision 92. In

1910-2               - 18 -

*19*

decision 93, the application process determines whether a working palette grid location has been selected for placement of an image. In this regard, the application process maintains a working palette grid pointer which is updated to the next working palette grid location when an image is moved to the current one. The grid pointer can also be forced to a grid location by moving the cursor from the monitor where it is currently located to the monitor where the working palette is displayed and pointing and clicking a grid location in the working palette display container. Preferably, a working palette grid location is selected by clicking the left button of the trackball mechanism. (Once an image has been moved to a preselected working palette grid location, the grid pointer is reset to indicate the next empty grid location which was available before user selection.) The cursor is then returned to a monitor which shows an image series. Decision 94 assumes that the cursor is in a presentation area of the monitor mode display container. If the right button of the trackball mechanism is clicked, the application process infers that the user wants the image in the presentation area moved to the working palette grid location indicated by the palette grid pointer. In this case, the image at the cursor location and any annotation graphics which it contains are copied in step 95 into the working palette grid at the location indicated by the working palette grid pointer. Refer to Figure 9 for an understanding of how the application process accomplishes this step.

In Figure 9, three monitor control blocks 100, 102, and 103 are illustrated. The application process maintains the control blocks, each of which completely describes in object form the current display on a particular monitor. For example, the monitor control block 100 lists the identification and location of each graphical object displayed on the monitor 26. This would include a complete object description of a monitor mode display container, a control panel, if a monitor is active, and the images of the series presented in the display container. For example, consider the first image of an axial T1 series which is listed in grid location 1, corresponding to the upper left-hand presentation area in the display container of Figure 3. The monitor control block 100 also lists the graphics displayed at the grid location. When an image is



to be moved to the working palette it is copied from the object indexed by the current cursor location in the control block of the monitor where the cursor is located to the palette monitor control block at the grid location indicated by the working palette grid pointer 104. In order to

5    effect the update on the working palette display container presented on the palette monitor 28, the application process, using the palette monitor control block, updates the object list to describe the updated working palette display container and issues a SELECT MONITOR control signal. In response to the SELECT MONITOR control signal,

10    the image subsystem accesses the working memory to obtain the pixels for the image to be moved and enters them into the Blue memory 29c which has been enabled by the SELECT MONITOR signal. At the same time, the screen driver 14b provides any annotation pixels for the image which may be described in the object list. This causes the selected

15    image and accompanying graphics to be added to the working palette presented on the monitor 28. When entry of the image and graphics pixels in the Blue memory 29c is complete, the application process updates the object list to describe the display presented in the monitor where the cursor is located and issues a SELECT MONITOR signal to

20    enable the corresponding color memory.

In decision 95, the application process inspects the cursor location to determine whether the cursor has been moved to another monitor. If so, the object list is updated to the configuration of the monitor where the cursor is located and the SELECT MONITOR control

25    signal is conditioned to enable the corresponding color memory for the new monitor.

In decision 96, if a DONE button is selected, the application program executes the DONE functions for the referring physician. These may include, for example, simply printing out a hard copy of the

30    working palette display container and entering the printout into the patient's file, faxing a data or an image copy of the working palette display container to a predetermined location, or transmitting a data representation of the working palette monitor through a modem to a predetermined location.

35    Refer now to Figures 4, 10, and 11 for an understanding of a

1910-2                                 - 20 -



series presentation format procedure according to the invention. Once the displays in the monitors 26, 27, and 28 have been initialized for series presentation as described above, the format procedure begins. This procedure executes in response to cursor location and trackball activation. Thus, in step 110, beginning with monitor 26, for example, using cursor location and sensing button activation, the procedure determines whether one of the image manipulation icons has been selected in decision 111. If so, the image manipulation function is filtered at decision 112 to determine whether the riffling function has been invoked with the coupling feature selected. If not, the negative exit is taken from decision 112 and the image manipulation function is performed in the presentation area where the cursor is located. On the other hand, if the riffling function has been invoked with coupling activated, the positive exit is taken from decision 112. Here, the images of the series being output through the presentation are where the cursor is located are riffled (in response to trackball motion) in the presentation area where the cursor is located. In addition, the images of any coupled series are riffled at the presentation area where the coupled series is displayed. The riffling is in synchronism with riffling the series at the cursor location. Decision 113 tests the CHANGE SERIES button of the control panel. If the button has been activated, the procedure waits until the cursor is moved to a display container presentation area and the left button is clicked. Then, the series is changed to the next ROOTNAME.PAT file image series. When the series is changed, the first image of the next series is displayed at the presentation area where the cursor is located. Step 116 moves images to the working palette display container in the manner described above for the monitor presentation format. Next, monitor processing and DONE button processing are performed in decisions 117 and 118 as discussed above in connection with Figure 8.

Figures 4 and 11 illustrate how the working palette is populated with images during the series presentation mode. In the series presentation mode, the application process maintains a monitor control block for each of the monitors 26, 27, and 28. The monitor control blocks are, respectively, 120, 121, and 122. Assume that the series

1910-2                          - 21 -

presentation display containers such as the display container illustrated in Figure 4 are presented on the monitors 26 and 27. For each monitor, the control block must list the principal objects which, for the display container of Figure 4, are the four presentation areas of the control panel and the icon control panel. The control block links a respective series with each of the presentation areas in the IMAGES column of the block. In the COUPLING column, a related image series is listed if the coupling function has been invoked. The GRAPHICS column lists the graphics for, and in, each presentation area. The monitor control block 121 fully describes the display container and control panel displayed on the monitor 27, while the control block 122 fully describes the working palette presented on the monitor 28. A grid pointer 122a is used to denote the current working palette grid location in the manner described above in connection with Figure 9.

ACTIVE MONITOR INDICATION

The invention also includes the ability to indicate, by the control panel, which monitor is currently active. In this regard, the "active" monitor is most likely the one wherein the cursor is currently located. The configuration of the active monitor is fully described in the object list; user inputs are received through it; and application response is provided through it. Manifestly, it would be inefficient and distracting to the user to have to remember which monitor is active by devoting full attention to the cursor's location. Positioning the cursor in a particular monitor might, in some instances, not indicate the active monitor. In addition, as described later, the shape of the cursor may change, causing the user to lose track of it and the active monitor.

In the invention, the active monitor is indicated by the presence of a control panel. Preferably, when a user moves a cursor to a monitor boundary which is shared with another monitor, the cursor is moved from the one monitor (which is called the "last" monitor) to the monitor which is adjacent the boundary of the last monitor (which is called the "next" monitor). The last monitor is then deactivated and the next monitor is activated. In response to movement of the cursor from the last monitor to the next, the control panel in the last monitor is turned

1910-2                          - 22 -

off and the control panel is presented in the next monitor.

The procedure for performing the active monitor indication function is illustrated in the flow diagram of Figure 12. Initially, the cursor position is read in step 123. When the cursor location is the same as the location of a boundary object defined in the object list of the current monitor, the application process prepares to deactivate the present monitor. In this regard, the positive exit is taken from the decision 124 and the application process issues control signals which turn off the control panel of the last monitor in step 125, reconfigures the object list to define all of the objects, including the boundaries, in the next monitor in step 126, and then executes a series of next monitor routines in step 127. One next monitor routine is conditioning of the SWITCH MONITOR signal to enable the color memory for the next monitor. Additional next monitor routines are shown in step 128. In step 128, cursor graphics pixels are configured to place the cursor adjacent the boundary in the next monitor which is closest to the last monitor. Next, the control panel is turned on in the next monitor and the procedure returns to step 123.

The control panel deactivation/activation sequence to indicate monitor activation is not necessarily limited to turning off the control panel in the last monitor and turning on the control panel in the next monitor. Other visual cues may be used. For example, the control panel colors may be inverted or changed in intensity.

ICON ROTATION

The invention also provides a "heads up" feature which permits a user to select an image manipulation icon without shifting attention from a presentation area to the control panel. This is accomplished by moving the cursor one time to an image manipulation icon in the control panel, changing the shape of the cursor to that icon, moving the cursor back to a presentation area, and rotating the shape of the cursor at that location through the succession of image manipulation icon shapes in response to motion of the trackball, and selecting an icon function at the location where the cursor shape has been changed.

Refer to Figures 13 and 14a-14d for an understanding of the icon

1910-2                             - 23 -

24

rotation function of the invention.  Initially, in decision 131, the cursor position read at step 130 is evaluated to determine whether it is over one of the image manipulation icons in the control panel.  Positioning the cursor over one of these icons and clicking the left button causes

5    the cursor to change its shape from a default shape (preferably, a hollow arrow) to the shape of the selected icon and results in illumination of the icon at the control panel as provided in step 133. The result of performing step 133 is illustrated in Figure 14a where the shape of the cursor has been changed to the riffle icon shape

10   comprising a set of pages.  Selection of the icon at its control panel location will not immediately invoke the corresponding function because the image manipulation functions are intended to execute with respect to a selected image.  Thus, to invoke the selected function, the cursor, now in the shape of the selected icon, must be moved to one of the

15   presentation areas.  Therefore, in step 134, the position of the cursor (now in the shape of an icon) is read and when decision 135 determines that the cursor is in an image display container, the positive exit is taken and decision 136 checks the status of the left button on the trackball mechanism.  If the left button is not down, the procedure

20   loops through 134, 135, and 136 until it detects depression of the left button.  When the left button is held down and the trackball is moved, the shape of the cursor is successively changed to the shapes of the image manipulation icons in their order of presentation in the control panel.  This is illustrated in Figure 14b where the cursor, in the shape

25   of the riffle icon, is moved to the lower left corner of the top right presentation area of the illustrated series display container.  Assuming that the user continues to hold the left button down while moving the trackball (136, 137, 138), the icon counter (indicated by reference numeral 35 in Figure 2) is incremented or decremented in response to

30   the trackball motion.  The threshold check in step 139 indicates when the trackball has moved far enough to increment to the next value of the icon counter.  The icon counter indexes to the portion of the object list which contains the image manipulation icons.  These objects are numbered consecutively in the object list so that, by constraining the

35   icon counter to cycle through a count sequence which corresponds to

1910-2                 - 24 -



the index numbers of the icon objects, the user interface and video driver are enabled to correspondingly cycle through the icon shapes at the cursor location. In step 140, the shape of the cursor is changed at its location to the next image manipulation icon shape in sequence.

5         For example, consider Figures 14b-14d where the cursor initially has the shape of the riffle icon. Assume that the trackball is moved in a certain direction, resulting in change of the icon counter to a value which corresponds to the magnifying glass icon shape. The result is illustrated in Figure 14c, where the cursor shape is changed to the 10   magnifying glass. Further movement of the trackball in the same direction results in change at the icon counter to a value corresponding to the image motion icon consisting of four outwardly directed arrows shown in Figure 14d. As illustrated in step 140, and in Figures 14b-14d, each time the cursor shape is changed to that of the next icon in 15   the icon rotation procedure, the corresponding icon is illuminated on the control panel at the cursor location. The decision in step 141 continues the icon rotation loop until the left button is released. In this regard, for so long as the left button is held down and the negative exit is taken from decision 141, the decision at 142 either loops back to the 20   decision 141 if there is no trackball motion or back up to step 138 if there is further trackball motion. If, after icon rotation, the left button is released, the positive exit is taken from decision 141 and a click of the left button is searched for by entering decision 136 through C.

25         The sequence 136, 137, 145 signifies a left button click to select an icon function, with the function being performed in step 146. This sequence can be entered by selecting an icon shape at the control panel, moving the cursor in the form of the shape to a display container, and then clicking the left button, as at 136, 137, 145. 30   Alternatively, the clicking sequence is detected out of the positive exit from decision 141 after icon rotation when the left button is released. Note that the clicking sequence is exited if trackball motion is detected in step 137 following depression of the left button in step 136 before the left button is released (step 145). Any appropriate reset sequence will 35   restore the cursor to its default shape.

1910-2               - 25 -



IMAGE ANNOTATION

Image annotation is provided by the set of annotation icons which is beneath the image manipulation icon set in the control panel. Arrows may be dragged from this icon set and selectively dropped on images by moving the cursor to the arrow, clicking the left button to change the shape of the cursor to the arrow, and moving the cursor in the arrow shape to the desired location. At the desired location, clicking the left button will "drop" the arrow at the location. Any appropriate RESET routine will return the cursor to its default shape.

An image can be annotated by selecting the A icon in the control panel, dragging the icon to a location where annotation is desired, clicking the left button of the trackball mechanism and then using the keyboard to annotate the image at the cursor location.

Figures 15 and 16 illustrate a procedure executed by the application process for automatically annotating a figure using the annotation lists indicated by reference numeral 60 in Figure 6. Initially, it is asserted that the application process includes logic capable of selecting an annotation list which is appropriate to the anatomical target. Thus, for example, a sagittal image sequence of a portion of the spine would identify an annotation list which included shorthand annotations commonly employed to identify individual vertebra. The procedure of Figure 15 provides for the rotation of an annotation list through the annotation box which is illuminated in the annotation icon group in Figure 16. When this icon is selected, the cursor assumes its shape and is moved in response to the trackball to the desired location. At the desired location, the left button of the trackball is depressed in order to couple the annotation list to the box at the cursor location and in the control panel. For so long as the left button is depressed, motion of the trackball will rotate the listed annotations through the annotation box outlined in the image and in the control panel. When the appropriate annotation is rotated into the box, the left button is released. When the left button is clicked again, the annotation will be dropped in the shape of the annotation box at the cursor location and the cursor's shape will be changed back to the default shape with the tip of the cursor pointing to the lower left-hand

1910-2                          - 26 -

corner of the annotation box in the image.  This is illustrated in Figure 16 and the procedure laid out in Figure 15.

In Figure 15, when the cursor is clicked at the annotation box, positive exits are taken from decisions 150 and 151, the box icon is
5   illuminated at the control panel and the cursor in the shape of the box is moved to a desired location.  When the left button is depressed while the cursor is in an image display container, the positive exits are taken from decisions 152 and 153 and the annotation list is rotated through the box shape in steps 154.  When the left button is released and clicked
10   again, the annotation is dropped at the last cursor position and the cursor shape is restored.

The X icon in the annotation set (Figure 16) is used to delete annotations from an image.  Initially, the X icon is clicked using the cursor.  This illuminates the X icon and changes the cursor to the icon
15   shape.  The cursor is moved over the annotation to be deleted and the left trackball button is clicked.  This removes the annotation from the object list and from the image, restores the cursor to its default shape, and turns off the X icon in the control panel.

Clearly, other embodiments and modifications of this invention
20   will occur readily to those of ordinary skill in the art in view of these teachings.   For example, cursor movement and clicking can be controlled from a keyboard.  Furthermore, the images which are stored in the database may be actual images taken from the human patient, may be images taken from a veterinary subject, or may be synthesized
25   images.  Therefore, this invention is to be limited only by the following claims, which include all such embodiments and modifications when viewed in conjunction with the above specification and accompanying drawings.

WE CLAIM:
30

1910-2                          - 27 -

2.8

DR000101

CLAIMS

1.   A computer display system for presenting images of
anatomical structure and the like for examination, including:

a first display container means for presenting a first
preselected number of substantially rectangular presentation
areas in a substantially rectangular array;

a second display container means for presenting a second
preselected number of substantially rectangular presentation
areas in a substantially rectangular array;

an image database including a plurality of images of
anatomical structure, the images being separated into image
groups, in which:

each image group is indexed by a unique group
identification; and

each image group is partitioned into one or more
ordered image series, each ordered image series including
a succession of images which illustrate incrementally
registered aspects of an anatomical target, each image
series being ordered by assignment to each image in the
image series of a position in a respective monotonically
changing sequence; and

means connected to the image database and to the first and
second display container means and responsive to a group
identification for displaying at least two image series of an image
group indexed by the patient identification;

each image series being displayed in the order of its
respective sequence in a respective display container such
that each presentation area of the respective display
container includes no more than one image.

2.   A computer display system for presenting images of
anatomical structure and the like for examination, including:

at least one display container means for presenting a
preselected number of substantially rectangular presentation
areas in a substantially rectangular array;

1910-2                    - 28 -

an image database including a plurality of images of
anatomical structure, the images being separated into image
groups, in which:

each image group is indexed by a group
identification; and

each image group is partitioned into one or more
ordered image series, each ordered image series including
a sequence of images which illustrate incrementally
registered aspects of an anatomical target, each image
series being ordered by assignment to each image in the
image series of a position in a respective monotonically
changing sequence; and

means connected to the image database and to the display
container means and responsive to a group identification for
displaying at least two image series of an image group indexed by
the patient identification;

each image series being displayed one image at a
time in the order of its respective sequence in a respective
presentation area.

3.    In an interactive computer system with an output means for
presenting visual displays wherein a user is presented with a visual
display that includes a control display container (control panel), a
combination, comprising:

a first bounded display area presented by the output
means, the first display area including:

a control panel; and

a plurality of icons displayed in the control panel

a second bounded display area presented separately from
the first display area by the output means;

a cursor means connected to the output means for
displaying and moving a cursor in a display area; and

means coupled to the first and second display areas and to
the cursor means for presenting the control panel in the second
display area in response to the cursor moving from the first
display area to the second display area.

1910-2                    - 29 -

4.    The combination of Claim 3, further including:

a first boundary in the first display area; and

a second boundary in the second display area;

wherein the means is further for moving the control panel in response to the cursor moving across the first boundary toward the second boundary.

5.    The combination of Claim 4, wherein the means is further for positioning the cursor just inside the second boundary in response to the cursor moving across the first boundary toward the second boundary.

6.    The combination of Claim 3, wherein the means is further for activating the control panel in the second display area and deactivating the control panel in the first display area in response to the cursor moving from the first display area to the second display area.

7.    The combination of Claim 3, wherein the means is for displaying the control panel in the second display area and for turning off display of the control panel in the first display area.

8.    In an interactive computer system with an output means for presenting visual displays wherein a user is presented with a display that includes a directly-manipulated display container for presenting program output, a combination, comprising:

a cursor means connected to the output means for displaying and moving a cursor;

a control panel in the display in which a plurality of icons are displayed in a predetermined order

a pointing means connected to the cursor means for positioning the cursor and selecting icons in response to direct manual manipulation by a user; and

icon rotation means connected to the pointing means and to the cursor means and responsive to a position of the cursor inside the display container for changing the shape of the cursor at the position to the shape of an icon of the plurality of icons and for changing the shape of the cursor to the shapes of other icons of the plurality of icons, such that the shape of the cursor

1910-2                              - 30 -

is changed, one shape at a time in the predetermined order, in

2      response to direct manual manipulation of the pointing means.

         9.    The combination of Claim 8, further including means for

4      illuminating icons displayed in the control panel in response to changing

       the shape of the cursor while the cursor is within the display container,

6      wherein the means for illuminating illuminates an icon whose shape is

       the shape of the cursor.

8

*add a'7*

DECLARATION/POWER OF ATTORNEY FOR ORIGINAL APPLICATION

Attorney's Docket No. ___901___

As a below named Inventor, I hereby declare that:

my residence, post office address and citizenship are as stated below next to my name; I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled: "AN AUTOMATED SYSTEM AND A METHOD FOR ORGANIZING, PRESENTING, AND MANIPULATING the specification of which        MEDICAL IMAGES"

____X__ is attached hereto

_____ was filed on _____, as Application Serial No. _____, and was amended on _____.
                        (if applicable)

I hereby state that I have reviewed and understand the contents of the above-identified Specification, including the Claims, as amended by any amendment referred to above. I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37 CFR 1.56(a).

I hereby claim foreign priority benefits under Title 35 USC 119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:        Priority Claimed

| (Number) | (Country) | (Day/Month/Year Filed) | (Yes) | (No) |
|---|---|---|---|---|
| (Number) | (Country) | (Day/Month/Year Filed) | (Yes) | (No) |

I hereby claim the benefit under Title 35 USC 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35 USC 112, I acknowledge the duty to disclose material information as defined in Title 37 CFR 1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application.

| (Appln. Serial No.) | (Filing Date) | (Status, i.e. patented, pending, abandoned) |
|---|---|---|
| (Appln. Serial No.) | (Filing Date) | (Status, i.e. patented, pending, abandoned) |

I hereby appoint the following attorney(s) and/or agent(s) to prosecute this application and to transact all business in the U. S. Patent and Trademark Office connected therewith    FRELING E. BAKER (24,078) - MICHAEL H. JESTER (28,022)
            LAWRENCE A. MAXHAM (24,483) - TERRANCE A. MEADOR (30,298)
Address all telephone calls to TERRANCE A. MEADOR at Telephone No. (619) 233-9004 and address all correspondence to TERRANCE A. MEADOR ; BAKER, MAXHAM, JESTER & MEADOR, Symphony Towers, 750 "B" Street, Suite 2770, San Diego, California, 92101

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

FULL NAME OF SOLE OR FIRST INVENTOR     INVENTOR'S SIGNATURE        DATE
WESLEY W. HILTON                                              Dec. 30, 1992

RESIDENCE                                                  CITIZENSHIP
13068 Via Latina, Del Mar, CA  92014                       USA

POST OFFICE ADDRESS
13068 Via Latina, Del Mar, CA  92014

DR000106

Attorney's Docket No. 901

Page 2/Declaration/Power of Attorney

FULL NAME OF SECOND JOINT INVENTOR IF ANY    INVENTOR'S SIGNATURE    DATE
MURRAY A. REICHER
RESIDENCE                                                         CITIZENSHIP
15865 Via del Alba, Rancho Santa Fe, CA  92067                    USA
POST OFFICE ADDRESS
15865 Via del Alba, Rancho Santa Fe, CA  92067

FULL NAME OF THIRD JOINT INVENTOR IF ANY    INVENTOR'S SIGNATURE    DATE
DALE SEEGMILLER                              Dale Seegmiller       Dec 23 1992
RESIDENCE                                                         CITIZENSHIP
618 Camino de Clara, Solana Beach, CA  92075    CA               USA
POST OFFICE ADDRESS
618 Camino de Clara, Solana Beach, CA  92075

FULL NAME OF FOURTH JOINT INVENTOR IF ANY    INVENTOR'S SIGNATURE    DATE

RESIDENCE                                                         CITIZENSHIP

POST OFFICE ADDRESS

FULL NAME OF FIFTH JOINT INVENTOR IF ANY    INVENTOR'S SIGNATURE    DATE

RESIDENCE                                                         CITIZENSHIP

POST OFFICE ADDRESS

over

Applicant or Patent: DOMINATOR RADIOLOGY SYSTEMS, IN   ttorney's
Serial or Patent No                                  ocket No.:   90  /998550
Filed or Issued:  herewith     For: "AN AUTOMATED SYSTEM AND A METHOD FOR
ORGANIZING, PRESENTING, AND MANIPULATING MEDICAL IMAGES"

VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY
STATUS (37 CFR 1.9(f) and 1.27(c)) - SMALL BUSINESS CONCERN

I hereby declare that I am
        [  ] the owner of the small business concern identified below:
        [ X] an official of the small business concern empowered to act on
            behalf of the concern identified below:

NAME OF CONCERN   DOMINATOR RADIOLOGY SYSTEMS, INC.

I hereby declare that the above identified small business concern qualifies
as a small business concern as defined in 13 CFR 121.3-18, and reproduced in
37 CFR 1.9(d), for purposes of paying reduced fees under section 41(a) and
(b) of Title 35, United States Code, in that the number of employees of the
concern, including those of its affiliates, does not exceed 500 persons.
For purposes of this statement, (1) the number of employees of the business
concern is the average over the previous fiscal year of the concern of the
periods of the fiscal year, and (2) concerns are affiliates of each other
when either, directly or indirectly, one concern controls or has the power
to control the other, or a third party or parties controls or has the power
to control both.

I hereby declare that rights under contract or law have been conveyed to and
remain with the small business concern identified above with regard to the
invention, entitled "AN AUTOMATED SYSTEM AND A METHOD FOR ORGANIZING, PRESENTING, AND
by inventor(s) WESLEY W. HILTON, et al                    MANIPULATING MEDICAL
described in                                                        IMAGES"

        [X ] the specification filed herewith
        [  ] Application Serial No. _____, filed _____
        [  ] Patent No. _____, issued _____

If the rights held by the above identified small business concern are not
exclusive, each individual, concern or organization having rights to the
invention is listed below* and no rights to the invention are held by any
person, other than the inventor, who could not qualify as an independent
inventor under 37 CFR 1.9(c) or by any concern which would not qualify as a
small business concern under 37 CFR 1.9(d) or a nonprofit organization under
37 CFR 1.9(e).

    *NOTE: Separate verified statements are required from each named
           person, concern, or organization having rights to the invention
           averring to their status as small entities.  (37 CFR 1.27).

FULL NAME    _____
ADDRESS      _____
             [ ] INDIVIDUAL   [ ] SMALL BUS. CONCERN   [ ] NONPROFIT ORGANIZATION

FULL NAME    _____
ADDRESS      _____
             [ ] INDIVIDUAL   [ ] SMALL BUS. CONCERN   [ ] NONPROFIT ORGANIZATION

I acknowledge the duty to file, in this application or patent, notification
of any change in status resulting in loss of entitlement to small entity
status prior to paying, or at the time of paying, the earliest of the issue
fee or any maintenance fee due after the date on which status as a small
entity is no longer appropriate.  (37 CFR 1.28(b)).

I hereby declare that all statements made herein of my own knowledge are
true and that all statements made on information and belief are believed to
be true; and further that these statements were made with knowledge that
willful false statements and the like so made are punishable by fine or
imprisonment, or both, under section 1001 of Title 18 of the United States
Code, and that such willful false statements may jeopardize the validity of
the application, any patent issuing thereon, or any patent to which this
verified statement is directed.

NAME OF PERSON SIGNING        MURRAY A. REICHER

TITLE OF PERSON OTHER THAN OWNER   President

ADDRESS OF PERSON SIGNING   15865 Via del Alba, Rancho Santa Fe, CA  92067

SIGNATURE _____         DATE _____

PRINT OF DRAWINGS
AS ORIGINALLY FILED

07/998550

SHEET 18/18
HILTON ET AL
1910-02



FIG.16

PRINT OF DRAWINGS
IS ORIGINALLY FILED

07/998550

SHEET 14/18
HILTON ET AL
1910-02



FIG.15

PRINT OF DRAWINGS
IS ORIGINALLY FILED

07/998550

SHEET 16/18
HILTON ET AL
1910-02



FIG.14d

DR000111

07/998550

SHEET 15/18
HILTON ET AL
1910-02



FIG.14c

DR000112

PRINT OF DRAWINGS
IS ORIGINALLY FILED

07/998550

SHEET 14/18
HILTON ET AL
1910-02



FIG. 14b

PRINT OF DRAWINGS
IS ORIGINALLY FILED

07/998550

SHEET 13/18
HILTON ET AL
1910-02



FIG. 14a

PRINT OF DRAWINGS
IS ORIGINALLY FILED

SHEET 12/18, HILTON ETAL, 1410-02



FIG. 13

THIS PAGE OF DRAWINGS
IS ORIGINALLY FILED

*HILTON ET AL*
*1910-02*

07/998550



FIG.12

MENT OF DRAWINGS
IS ORIGINALLY FILED

HILTON ET AC
1910-02

07/998550



120

| OBJECTS | IMAGES | COUPLING | GRAPHICS |
|---|---|---|---|
| PRESENTATION AREA1 | AXIALT1-3 | AXIALT2 | ANNOTATION(UH) |
| PRESENTATION AREA2 | AXIALT2-3 | AXIALT1 | : |
| PRESENTATION AREA3 | AXIALXX-Y | : | : |
| PRESENTATION AREA4 | SAGITALT1-5 | : | OUTLINE |
| CONTROL PANEL | | | SHAPES |
| ICONS | | | |

26

121

| OBJECTS | IMAGES | COUPLING | GRAPHICS |
|---|---|---|---|
| PRESENTATION AREA1 | SAGITALT2 | : | ANNOTATION(3) |

27

122

| OBJECTS | IMAGES | GRAPHICS |
|---|---|---|
| PRESENTATION AREA1 | AXIALT1-6 | ANNOTATION(63) |

28

122a

GRID
POINTER

FIG 11

PRINT OF DRAWINGS
IS ORIGINALLY FILED

1910-02

07/998550



SERIES FORMAT PROCESSING

FIG. 10

07/998550

1910-02

FIG. 9



DR000119

VIEW OF DRAWINGS
IS ORIGINALLY FILED

07/998550

SHEET 7/18, HILTON ET AL, 1910-02



MONITOR FORMAT PROCESSING

FIG. 8

EXHIBIT OF DRAWINGS
IS ORIGINALLY FILED

07/998550

SHEET 6/18, HILTON ET AL, 1910-02



FIG. 7

PRINT OF DRAWINGS
AS ORIGINALLY FILED

07/998550



FIG. 6



F/G. 5

07/998550

SHEET 3/18
HILTON ET AL
1910-02



FIG. 4

FIG.3

DR000125

IS ORIGINALLY FILED

SHEET 1/18

HILTON ET AL
1910 - 02



FIG. 1



FIG. 2



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTY DOCKET NO./TITLE |
|---|---|---|---|
| 07/998,550 | 12/30/92 | HILTON | H   981 |

TERRANCE A. MEADOR
BAKER, MAXHAM, JESTER & MEADOR
SYMPHONY TOWERS
750 "B" STREET, STE 2770             0200
SAN DIEGO, CA 92101

DATE MAILED:      02/16/93

## NOTICE TO FILE MISSING PARTS OF APPLICATION
## FILING DATE GRANTED

A filing date has been granted to this application. However, the following parts are missing.

If all missing parts are filed within the period set below, the total amount owed by applicant as a

☐ large entity, ☒ small entity (verified statement filed), is $ *65* .

1. ☐  The statutory basic filing fee is: ☐ missing  ☐ insufficient.  Applicant as a ☐ large entity
   ☐ small entity, must submit $_____ to complete the basic filing fee and MUST ALSO
   SUBMIT THE SURCHARGE AS INDICATED BELOW.

2. ☐  Additional claim fees of $_____ as a ☐ large entity ☐ small entity, including any required multiple
   dependent claim fees, are required. Applicant must submit the additional claim fees or cancel the additional
   claims for which fees are due. NO SURCHARGE IS REQUIRED FOR THIS ITEM.

3. ☐  The oath or declaration:
   ☐  is missing.
   ☐  does not cover items omitted at time of execution.
   An oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application
   Number and Filing Date is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED
   BELOW.

4. ☐  The oath or declaration does not identify the application to which it applies.  An oath or declaration in
   compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date
   is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW.

5. ☐  The signature to the oath or declaration is: ☐ missing; ☐ a reproduction; ☐ by a person other than the
   inventor or a person qualified under 37 CFR 1.42, 1.43, or 1.47. A properly signed oath or declaration in
   compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date
   is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW.

6. ☒  The signature of the following joint inventor(s) is missing from the oath or declaration:
   *#2, M. BELCHER* . An oath or declaration listing the names of all inventors and signed by
   the omitted inventor(s), identifying this application by the above Application Number and Receipt Date is
   required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW.

7. ☐  The application was filed in a language other than English. Applicant must file a verified English translation
   of the application and a fee of $_____ under 37 CFR 1.17(k), unless this fee has already been paid. NO
   SURCHARGE IS REQUIRED FOR THIS ITEM.

8. ☐  A $_____ processing fee is required for returned checks. (37 CFR 1.12 (m)).

9. ☐  Your filing receipt was mailed in error because check was returned without payment.

10. ☐  Other.

An Application Number and Filing Date have been assigned to this application. The missing parts and fees
identified above in items 1 and 3-6 must be timely provided. ALONG WITH THE PAYMENT OF A
SURCHARGE of $ *130* for large entities or $ *65* for small entities who have filed a verified
statement claiming such status. The surcharge is set forth in 37 CFR 1.16(e). Applicant is given ONE
MONTH FROM THE DATE OF THIS LETTER, OR TWO MONTHS FROM THE FILING DATE OF this
application, WHICHEVER IS LATER, within which to file all missing parts and pay any fees required above
to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension
fee under the provision of 37 CFR 1.136(a).

Direct the response to, and any questions about, this notice to ATTENTION:  Application Processing
Division, Special Processing and Correspondence Branch.

### *A copy of this notice MUST be returned with response.*

V. Butler

For:  Manager, Application Processing Division
(703) 308-1202

FORM PTO-1533 (REV. 3-92)

**OFFICE COPY**

J3RD 2/11       $6 ~ 205 A/N

#3

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:                    )
                                         )
W.W. Hilton et al                        )
                                         )
Serial No:  07/998,550                   )   Group Art Unit:
                                         )      Unknown
Filed:    December 30, 1992              )
                                         )
For:  AN AUTOMATED SYSTEM AND A          )   Examiner:
      METHOD FOR ORGANIZING,             )      Unknown
      PRESENTING, AND MANIPULATING       )
      MEDICAL IMAGES                     )

RECEIVED

MAR 2 6 1993

APPLICATION DIVISION

Hon. Commissioner of Patents and Trademarks
Washington, D. C.  20231

TRANSMITTAL OF DECLARATION/POWER OF ATTORNEY

Dear Sir:

    In response to the Notice to File Missing Parts of

Application mailed on February 12, 1993, we submit herewith

the following:

I hereby certify that this correspondence
Is being deposited with the United States
Postal Service as first class mail in an
envelope addressed to: Commissioner of
Patents and Trademarks, Washington, D.C.
20231 on      March 9, 1993

              TERRANCE A. MEADOR

              Terrance A. Meador
                    (Signature)

                    March 9, 1993
                   (Date of Signature)

060 MC 03/26/93 07998550         1 205     65.00 CH

-1-

Declaration/Power of Attorney (executed)

Notice to File Missing Parts (Form PTO 1533)

Our check in the amount of $65.00 is enclosed.  Please charge
any additional fees or credit any overpayment to Deposit
Account 02-0460.  A duplicate of this transmittal is enclosed.

Respectfully submitted,

TERRANCE A. MEADOR
Attorney for Applicant(s)
Registration No. 30,298

BAKER, MAXHAM, JESTER & MEADOR
Symphony Towers
750 "B" Street, Suite 2770
San Diego, California  92101

Telephone:  (619) 233-9004

-2-



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTY DOCKET NO./TITLE |
|---|---|---|---|
| 07/998,550 | 12/30/92 | HILTON | H   901 |

TERRANCE A. MEADOR
BAKER, MAXHAM, JESTER & MEADOR
SYMPHONY TOWERS
750 "B" STREET, STE 2730          0090
SAN DIEGO, CA 92101

DATE MAILED:

## NOTICE TO FILE MISSING PARTS OF APPLICATION
## FILING DATE GRANTED

A filing date has been granted to this application. However, the following parts are missing.

If all missing parts are filed within the period set below, the total amount owed by applicant as a

☐ large entity, ☒ small entity (verified statement filed), is $ _____

1. ☐   The statutory basic filing fee is: ☐ missing ☐ insufficient. Applicant as a ☐ large entity
☐ small entity, must submit $ _____ to complete the basic filing fee and MUST ALSO
SUBMIT THE SURCHARGE AS INDICATED BELOW.

2. ☐   Additional claim fees of $ _____ as a ☐ large entity ☐ small entity, including any required multiple
dependent claim fee, are required. Applicant must submit the additional claim fees or cancel the additional
claims for which fees are due. NO SURCHARGE IS REQUIRED FOR THIS ITEM.

3. ☐   The oath or declaration:
☐   is missing.
☐   does not cover items omitted at time of execution.
An oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application
Number and Filing Date is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED
BELOW.

4. ☐   The oath or declaration does not identify the application to which it applies. An oath or declaration in
compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date
is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW.

5. ☐   The signature to the oath or declaration is: ☐ missing; ☐ a reproduction; ☐ by a person other than the
inventor or a person qualified under 37 CFR 1.42, 1.43, or 1.47. A properly signed oath or declaration in
compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date
is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW..

6. ☒   The signature of the following joint inventor(s) is missing from the oath or declaration:
_____. An oath or declaration listing the names of all inventors and signed by
the omitted inventor(s), identifying this application by the above Application Number and Receipt Date is
required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW.

7. ☐   The application was filed in a language other than English. Applicant must file a verified English translation
of the application and a fee of $ _____ under 37 CFR 1.17(k), unless this fee has already been paid. NO
SURCHARGE IS REQUIRED FOR THIS ITEM.

8. ☐   A $ _____ processing fee is required for returned checks. (37 CFR 1.12 (m)).

9. ☐   Your filing receipt was mailed in error because check was returned without payment.

10. ☐   Other.

An Application Number and Filing Date have been assigned to this application. The missing parts and fees
identified above in items 1 and 3-6 must be timely provided ALONG WITH THE PAYMENT OF A
SURCHARGE of $ _____ for large entities or $ _____ for small entities who have filed a verified
statement claiming such status. The surcharge is set forth in 37 CFR 1.16(e). Applicant is given ONE
MONTH FROM THE DATE OF THIS LETTER, OR TWO MONTHS FROM THE FILING DATE of this
application, WHICHEVER IS LATER, within which to file all missing parts and pay any fees required above
to avoid abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension
fee under the provision of 37 CFR 1.136(a).

Direct the response to, and any questions about, this notice to ATTENTION: Application Processing
Division, Special Processing and Correspondence Branch.

### *A copy of this notice MUST be returned with response.*

For: Manager, Application Processing Division
(703) 308-1202

FORM PTO-1533 (REV. 3-92)

... OF ATTORNEY ... APPLICATION

torneys Docket No. _____ 901

#3

An a below named inventor, I hereby declare that:

my residence, post office address and citizenship are as stated below next to my name; I believe I am the original, first, and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled: "AN AUTOMATED SYSTEM AND A METHOD FOR ORGANIZING, PRESENTING, AND MANIPULATING the specification of which

MEDICAL IMAGES"

___ is attached hereto

_X_ was filed on __December 30, 1992__ , as Application Serial No. _07/998,550_ , and was amended on _____
(if applicable)

I hereby state that I have reviewed and understand the contents of the above-identified Specification, including the Claims, as amended by any amendment referred to above. I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37 CFR 1.56(a).

I hereby claim foreign priority benefits under Title 35 USC 119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

Priority Claimed

| (Number) | (Country) | (Day/Month/Year Filed) | (Yes) | (No) |
|---|---|---|---|---|
| (Number) | (Country) | (Day/Month/Year Filed) | (Yes) | (No) |

I hereby claim the benefit under Title 35 USC 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35 USC 112, I acknowledge the duty to disclose material information as defined in Title 37 CFR 1.56(a) which occurred between the filing date of the prior application and the national or PCT International filing date of this application.

| (Appln. Serial No.) | (Filing Date) | (Status, i.e. patented, pending, abandoned) |
|---|---|---|
| (Appln. Serial No.) | (Filing Date) | (Status, i.e. patented, pending, abandoned) |

I hereby appoint the following attorney(s) and/or agent(s) to prosecute this application and to transact all business in the U. S. Patent and Trademark Office connected therewith ___FRELING E. BAKER (24,078) - MICHAEL H. JESTER (28,022)___ ___LAWRENCE A. MAXHAM (24,483) - TERRANCE A. MEADOR (30,298)___ Address all telephone calls to _TERRANCE A. MEADOR_ at Telephone No. (619) 233-9004 and address all correspondence to __TERRANCE A. MEADOR__ ; BAKER, MAXHAM, JESTER & MEADOR, Symphony Towers, 750 "B" Street, Suite 2770, San Diego, California, 92101

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

FULL NAME OF SOLE OR FIRST INVENTOR    INVENTOR'S SIGNATURE    DATE

WESLEY W. HILTON _____    _____    _____

RESIDENCE                                              CITIZENSHIP
13068 Via Latina, Del Mar, CA  92014                   USA

POST OFFICE ADDRESS
13068 Via Latina, Del Mar, CA  92014

over

Attorney's Docket No. 901

Page 2/Declaration/Power of Attorney

FULL NAME OF SECOND JOINT INVENTOR IF ANY     INVENTOR'S SIGNATURE        DATE
  MURRAY A. REICHER                              2-00                       3-3-9
RESIDENCE  P.O. Box 3784              CA                             CITIZENSHIP
  15865 Via del Alba, Rancho Santa Fe, CA  92067                      USA
POST OFFICE ADDRESS P.O. Box 3784
  15865 Via del Alba, Rancho Santa Fe, CA  92067

FULL NAME OF THIRD JOINT INVENTOR IF ANY      INVENTOR'S SIGNATURE        DATE
  DALE SEEGMILLER
RESIDENCE                                                            CITIZENSHIP
  618 Camino de Clara, Solana Beach, CA  92075                         USA
POST OFFICE ADDRESS
  618 Camino de Clara, Solana Beach, CA  92075

FULL NAME OF FOURTH JOINT INVENTOR IF ANY     INVENTOR'S SIGNATURE        DATE

RESIDENCE                                                            CITIZENSHIP

POST OFFICE ADDRESS

FULL NAME OF FIFTH JOINT INVENTOR IF ANY      INVENTOR'S SIGNATURE        DATE

RESIDENCE                                                            CITIZENSHIP

POST OFFICE ADDRESS

**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | RECEIPT DATE | FIRST NAMED APPLICANT | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/998,550 | 12/30/92 | HILTON | W  901 | #4 |

TERRANCE A. MEADOR                03B0
BAKER, MAXHAM, JESTER & MEADOR
SYMPHONY TOWERS
750 "B" STREET, STE 2770            0000
SAN DIEGO, CA 92101
                                        DATE MAILED:
                                                    04/21/93

### NOTICE OF INCOMPLETE RESPONSE

Dear Applicant:

Thank you for your response received on _March 12, 1993_.

We regret that the response is incomplete because you did not submit ~~a Signed Verified Small entity statement at the time of filling - your Statement is unsigned~~ ~~as required by the Notice to File Missing Parts of the application dated~~

To prevent ABANDONMENT of this application, a complete response is required.

The period for response remains as stated in the Notice to File Missing Parts letters mailed on _Feb 12, 1993_. However, you can obtain EXTENSIONS OF TIME under the provisions of 37 CFR by filing a petition accompanied by the appropriate fee (37

a copy of this notice MUST be included with your response.

Please submit your response to the Special Processing Branch.

Sincerely,

Special Processing and Correspondence Branch
Office of National and International
Application Review
(703) 308-1202

_Enclosed is a small entity statement. Please complete the_
_Verified Statement. Please return to the office immediately._

PATENT OFFICE COPY

DR000133



Applicant or Patent~ ~~Hilton, et al~~ ~ttorney's
Serial or Patent No. ~07/998,550~ ~cket No.:~ 901
Filed or Issued: 12/30/92    For: "AN AUTOMATED SYSTEM AND A METHOD FOR ORGANIZING, PRESENTING, AND MANIPULATING MEDICAL IMAGES"

VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY
STATUS (37 CFR 1.9(f) and 1.27(c)) - SMALL BUSINESS CONCERN

I hereby declare that I am
( ) the owner of the small business concern identified below:
(X) an official of the small business concern empowered to act on
behalf of the concern identified below:

NAME OF CONCERN   DOMINATOR RADIOLOGY, INC.

I hereby declare that the above identified small business concern qualifies
as a small business concern as defined in 13 CFR 121.3-18, and reproduced in
37 CFR 1.9(d), for purposes of paying reduced fees under section 41(a) and
(b) of Title 35, United States Code, in that the number of employees of the
concern, including those of its affiliates, does not exceed 500 persons.
For purposes of this statement, (1) the number of employees of the business
concern is the average over the previous fiscal year of the concern of the
periods of the fiscal year, and (2) concerns are affiliates of each other
when either, directly or indirectly, one concern controls or has the power
to control the other, or a third party or parties controls or has the power
to control both.

I hereby declare that rights under contract or law have been conveyed to and
remain with the small business concern identified above with regard to the
invention, entitled "AN AUTOMATED SYSTEM AND A METHOD FOR ORGANIZING, PRESENTING, AND
by inventor(s)  Hilton, et al               MANIPULATING MEDICAL IMAGES"
described in

( ) the specification filed herewith
(X) Application Serial No. 07/998,550 , filed December 30, 1992
( ) Patent No. _____, issued _____

If the rights held by the above identified small business concern are not
exclusive, each individual, concern or organization having rights to the
invention is listed below* and no rights to the invention are held by any
person, other than the inventor, who could not qualify an independent
inventor under 37 CFR 1.9(c) or by any concern which would not qualify as a
small business concern under 37 CFR 1.9(d) or a nonprofit organization under
37 CFR 1.9(e).

*NOTE: Separate verified statements are required from each named
person, concern, or organization having rights to the invention
averring to their status as small entities. (37 CFR 1.27).

FULL NAME     _____
ADDRESS       _____
              ( ) INDIVIDUAL  ( ) SMALL BUS. CONCERN  ( ) NONPROFIT ORGANIZATION

FULL NAME     _____
ADDRESS       _____
              ( ) INDIVIDUAL  ( ) SMALL BUS. CONCERN  ( ) NONPROFIT ORGANIZATION

I acknowledge the duty to file, in this application or patent, notification
of any change in status resulting in loss of entitlement to small entity
status prior to paying, or at the time of paying, the earliest of the issue
fee or any maintenance fee due after the date on which status as a small
entity is no longer appropriate. (37 CFR 1.28(b)).

I hereby declare that all statements made herein of my own knowledge are
true and that all statements made on information and belief are believed to
be true; and further that these statements were made with knowledge that
willful false statements and the like so made are punishable by fine or
imprisonment, or both, under section 1001 of Title 18 of the United States
Code, and that such willful false statements may jeopardize the validity of
the application, any patent issuing thereon, or any patent to which this
verified statement is directed.

NAME OF PERSON SIGNING   MURRAY A. REICHER, M.D.

TITLE OF PERSON OTHER THAN OWNER   President

ADDRESS OF PERSON SIGNING  15865 Via del Alba, Rancho Santa Fe, CA 92067

SIGNATURE _____   DATE  4-30-93

180-216          a/N
                 # 6



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Application of:              )
                                   )
HILTON, ET AL                      )
                                   )
Serial No: 07/998,550              )   Group Art Unit:
                                   )       Unknown
Filed: December 30, 1992           )
                                   )
For: AN AUTOMATED SYSTEM AND A     )   Examiner: Unknown
     METHOD FOR ORGANIZING,        )
     PRESENTING, AND MANIPULATING  )
     MEDICAL IMAGES                )

Hon. Commissioner of Patents and Trademarks
Washington, D. C.  20231

                PETITION FOR EXTENSION OF TIME

Dear Sir:


     Applicants hereby petition for a two (2) month

extension of time to respond to the Notice to File Missing

Parts dated February 12, 1993, from March 12, 1993 to May

12, 1993

I hereby certify that this correspondence
is being deposited with the United States
Postal Service as first class mail in an
envelope addressed to: Commissioner of
Patents and Trademarks, Washington, D.C.
20231 on ...... May 4, 1993 ..............
                    TERRANCE A. MEADOR
                    (Applicant, Attorney or Agent)

                _Terrance A. Mead_
                       (Signature)
                   May 4, 1993
                 (Date of Signature)

090 BA 05/24/93 07998550          1 216    180.00 CK

                    -1-

A check in the amount of $180.00 is enclosed herewith to cover the applicable fee for a two month extension of time as set forth in 37 CFR 1.17(b).  Please charge any deficit or credit any excess to our Deposit Account No. 02-0460.

Respectfully submitted,

TERRANCE A. MEADOR
Attorney for Applicant(s)
Registration No. 30,298

BAKER, MAXHAM, JESTER & MEADOR
Symphony Towers
750 "B" Street, Suite 2770
San Diego, California  92101

Telephone:  (619) 233-9004

-2-

DR000137

APR 04 1994
GROUP 2300

"PATENT"

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re application of: | ) |
| | ) |
| W.W. HILTON ET AL | ) Group No.: 2301 |
| | ) |
| Serial No.: 07/998,550 | ) |
| | ) Examiner: Unknown |
| Filed:  December 30, 1992 | ) |
| | ) |
| For:   AUTOMATED SYSTEM AND A | ) |
| METHOD FOR ORGAINIZING, | ) |
| PRESENTING, AND MANIPULATING | ) |
| MEDICAL IMAGES | ) |

Commissioner of Patents and Trademarks
Washington, D.C.  20231

Dear Sir:

INFORMATION DISCLOSURE STATEMENT

In satisfaction of their duty of candor and fair dealing, the
applicants hereby cite the document listed on the accompanying Form
PTO-1449 with respect to the above-identified patent application

I hereby certify that this correspondence
Is being deposited with the United States
Postal Service as first class mail in an
envelope addressed to: Commissioner of
Patents and Trademarks, Washington, D.C.
20231 on   March 23, 1994

TERRANCE A. MEADOR
(Applicant or Registered)

_Terrance A. Mead_
(Signature)

March 23, 1994
(Date of Signature)

\clare\client\1910-2.IDS

under the provisions of 37 CFR, Sections 1.56, 1.97, and 1.98.  The filing of this Information Disclosure Statement should not be construed to mean that a search was conducted or that no other material information, as defined by 37 CFR 1.56, exists.  The Examiner is respectfully requested to make of record this documents if deemed relevant to the examination of this application.

Respectfully submitted,

TERRANCE A. MEADOR
Registration No. 30,298

BAKER, MAXHAM, JESTER & MEADOR
Symphony Towers
750 "B" Street, Suite 2770
San Diego, California  92101
Phone:  619/233-9004
Fax:    619/544-1246

\clare\client\1910-2.IDS

DR000139

Attached to paper # 11

SHEET _1_ OF _1_

| Form PTO-1449 | Docket No. 1910-2 | Application No. 07/998,550 |
|---|---|---|
| **INFORMATION DISCLOSURE CITATION IN AN APPLICATION** *(Use Several Sheets if Necessary)* | Applicant: W.W. HILTON | |
| | Filing Date: 12/30/92 | Group Art Unit: ~~2301~~ 2303 |

**U.S. PATENT DOCUMENTS**

| EXAMINER INITIAL | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| RB | 5,272,760 | 12/21/93 | Echerer et al | 382 | 8 | 6/29/92 |
| | | | | | RECD | |
| | | | | | APR 0 6 1994 | |
| | | | | | GROUP 2300 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION | |
|---|---|---|---|---|---|---|---|
| | | | | | | YES | NO |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**OTHER DOCUMENTS** *(Including Author, Title, Date, Pertinent Pages, Etc.)*

| | | |
|---|---|---|
| | | |
| | | |
| | | |

| EXAMINER   R Bayer | DATE CONSIDERED   6 Sept 1994 |
|---|---|

EXAMINER: Initial if citation is considered, whether or not citation is in conformance with MPEP § 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to the applicant.

(2/92 PTO)

\MASTER\OFF_FORMS\GENERAL\IDS.FRM



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|

EXAMINER

| | ART UNIT | PAPER NUMBER |
|---|---|---|
| | 2909 | 8 |

GORDANA A. MEADOR
BAKER, MAXHAM, JESTER & MEADOR
750 1st STREET
SYMPHONY TOWERS, SUITE 2770
SAN DIEGO, CA 92101

DATE MAILED:

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

## — WRITTEN RESTRICTION REQUIREMENT ONLY —

☒ This application has been examined      ☐ Responsive to communication filed on _____      ☐ This action is made final.

A shortened statutory period for response to this action is set to expire _____ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned.      35 U.S.C. 133

**Part I      THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.      2. ☒ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.      4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.      6. ☐ _____

**Part II      SUMMARY OF ACTION**

1. ☒ Claims _____ 1 - 9 _____ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☐ Claims _____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☒ Claims _____ 1 - 9 _____ are subject to restriction or election requirement.

7. ☒ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable, ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
    examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____ has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____ ; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 9-89)

DR000141

Serial Number: 07/998,550                                    -2-
Art Unit: 2303

1.      Restriction to one of the following inventions is
required under 35 U.S.C. 121:

        Group I.  Claims 1 - 2, drawn to a "display system for
presenting images of anatomical structure" which works from "an
image database including a plurality of images of anatomical
structure" "indexed by the patient identification" (exemplary
claim 1), classified in Class 395, subclass 161.

        Group II.  Claims 3 - 9, drawn to "a combination" in
"an interactive computer system" which uses "a first" and "second
bounded display area" with a "cursor" and "icons" (claim 3); or
"selecting" and manipulating "icons" (claim 8), classified in
Class 395, subclass 159.

2.      The inventions are distinct, each from the other
because of the following reasons:

        Inventions I and II are related as subcombinations
disclosed as usable together in a single combination.  The
subcombinations are distinct from each other if they are shown to
be separately usable.  In the instant case, invention I has
separate utility such as operation without the invention II
iconic interface.  Also, the iconic control of invention II can
operate in any environment, not just anatomical imaging as in
invention I.  See M.P.E.P. § 806.05(d).

3.      Because these inventions are distinct for the reasons
given above and have acquired a separate status in the art as
shown by their different classification, the search required for

Serial Number: 07/998,550                                    -3-
Art Unit: 2303

Group I is not required for Group II, and have acquired a
separate status in the art because of their recognized divergent
subject matter, restriction for examination purposes as indicated
is proper.

4.      A telephone call was made to Mr. Meador on 13 June 1994
to request an oral election to one of the two inventions
described above, but did not result in an election being made.

        Applicant is advised that the response to this
requirement to be complete must include an election of the
invention to be examined even though the requirement be
traversed.

5.      Applicant is reminded that upon the cancellation of
claims to a non-elected invention, the inventorship must be
amended in compliance with 37 C.F.R. § 1.48(b) if one or more of
the currently named inventors is no longer an inventor of at
least one claim remaining in the application.  Any amendment of
inventorship must be accompanied by a diligently-filed petition

Serial Number: 07/998,550                    -4-
Art Unit: 2303

under 37 C.F.R. § 1.48(b) and by the fee required under 37 C.F.R.

§ 1.17(h).

6.      Any inquiry concerning this communication or earlier

communications from the Examiner should be directed to Raymond J.

Bayerl, whose telephone number is (703) 305-9789.  Any inquiry of

a general nature or relating to the status of this application

should be directed to the Group receptionist, whose telephone

number is (703) 305-9600.


RAYMOND J. BAYERL
PRIMARY EXAMINER
ART UNIT 2303
29 June 1994

PTO FORM 948
(REV. 7-92)

GROUP  2301

U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office

ATTACHMENT TO PAPER NUMBER
8

APPLICATION NUMBER
08/85550

## NOTICE OF DRAFTSPERSON'S PATENT DRAWING REVIEW

THE PTO DRAFTSMEN REVIEW ALL ORIGINALLY FILED DRAWINGS REGARDLESS
OF WHETHER THEY WERE DESIGNATED AS INFORMAL OR FORMAL. ADDITIONALLY, THE PATENT
EXAMINER WILL ALSO REVIEW THE DRAWINGS FOR COMPLIANCE WITH THE REGULATIONS.

The drawings filed _____ 12/30/92 _____

A. ☐ are approved by the draftsperson.

B. ☑ are objected to by the draftsperson under 37 CFR 1.84 for the reason(s) checked below.  The examiner will require
submission of new, corrected drawings at the appropriate time.  Corrected drawings must be submitted according to the
instructions listed on the back of this Notice.

1. Paper and Ink. 37 CFR 1.84(a)

☐ Sheet(s)_____Poor.

2. Size of Sheet and Margins. 37 CFR 1.84(b)

Acceptable Paper Sizes and Margins

| Margin | 8 1/2 by 14 Inches | 8 1/2 by 13 Inches | DIN size A4 21 by 29.7 cm. |
|--------|--------------------|--------------------|----------------------------|
| Top    | 2 inches           | 1 inch             | 2.5 cm.                    |
| Left   | 1/4 inch           | 1/4 inch           | 2.5 cm.                    |
| Right  | 1/4 inch           | 1/4 inch           | 1.5 cm.                    |
| Bottom | 1/4 inch           | 1/4 inch           | 1.0 cm.                    |

☐ Proper Size Paper Required.
All Sheets Must be Same Size.
Sheet(s)_____

☑ Proper Margins Required.
Sheet(s) 1,2,4-9,12, 17
☑ TOP   ☐ RIGHT
☐ LEFT  ☑ BOTTOM

3. Character of Lines. 37 CFR 1.84(c)

☑ Lines Pale or Rough and Blurred.
Fig(s) 1-2,6-13, 15

☐ Solid Black Shading Not Allowed.
Fig(s)_____

4. ☐ Photographs Not Approved.

5. Hatching and Shading. 37 CFR 1.84(d)

☐ Shade Lines are Required.
Fig(s) _____

☐ Criss-Cross Hatching Not Allowed.
Fig(s) _____

☐ Double Line Hatching Not Allowed.
Fig(s) _____

☐ Parts in Section Must be Hatched.
Fig(s) _____

6. Reference Characters. 37 CFR 1.84(f)
and
☑ Reference Characters Poor or Incorrectly Sized.
Fig(s) 1-16

☐ Reference Characters Placed Incorrectly.
Fig(s) _____

7. Views. 37 CFR 1.84(i) & (j)

☐ Figures Must be Numbered Properly.

☐ Figures Must Not be Connected.
Fig(s) _____

8. ☐ Identification of Drawings. 37 CFR 1.84(1)
Extraneous Matter or Copy Machine
Marks Not Allowed. Fig(s) _____

9. ☐ Changes Not Completed from Prior
PTO-948 dated _____

☐ Comments;

— heave black lines dy (Figs 3-5, 14A-14D, 16)

— Full tone photographs on photographic sheets reg'd
for figs 3-5, 14A-14D, 16

— Descriptive matters dy (Figs 8, 10)

Telephone inquires concerning this review should be directed to the Chief Draftsperson at telephone number (703) 305-8404.

_____ W. Gale _____          _____ 6/29/93 _____
Reviewing Draftsperson                        Date

Note: Any objection to the drawings made by the examiner will be communicated separately in an office action.

PTO Copy

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re Application of:                    )
                                         )
W.W. HILTON ET AL.                       )      Group Art Unit:   2308
                                         )
SERIAL NO.:  07/998,550                  )
                                         )
FILED:  DECEMBER 30, 1992                )      Examiner: Unknown
                                         )
FOR:  AUTOMATED SYSTEM AND A METHOD      )
      FOR ORGANIZING, PRESENTING, AND    )
      MANIPULATING MEDICAL IMAGES        )

Hon. Commissioner of Patents and Trademarks
Washington, D.C. 20231

Sir:

RECEIVED

JUL 0 5 1994

GROUP 2300

<u>SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT</u>

        Form PTO-1449 and copies of the references listed are enclosed.  These documents are

based on the International Search Report issued by the European Patent Office in connection with

PCT filing of the subject application.  Please place these references in the file for the Examiner.

                        Respectfully submitted,


                By:     TERRANCE A. MEADOR
                        Attorney for Applicant(s)
                        Registration No. 30,298

BAKER, MAXHAM, JESTER & MEADOR
Symphony Towers                          I hereby certify that this correspondence is
750 "B" Street, Suite 2770               being deposited with the United States Postal
San Diego, California 92101              Service as first class mail in an envelope
                                         addressed to: Commisioner of Patents and
Telephone: (619) 233-9004                Trademarks on:

                                         _____JUNE 23, 1994_____

                                         ____TERRANCE A. MEADOR____
                                         (Applicant, Assignee, Registered
                                                   Representative)


                                         _____(Signature)_____

                                         _____JUNE 23, 1994_____
                                               (Date of Signature)

\ATTY\TAM\PTO\DOMINAT2.PO1

Attached to paper    # 11    SHEET _1_ OF _1_

| Form PTO-1449 | Docket No. 901 | Application No. 07/998,550 |
|---|---|---|
| **INFORMATION DISCLOSURE CITATION IN AN APPLICATION** *(Use Several Sheets If Necessary)* | Applicant: W.W. HILTON ET AL. | |
| | Filing Date: DEC. 30, 1992 | Group Art Unit 2301  2303 |

**U.S. PATENT DOCUMENTS**

| EXAMINER INITIAL | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | FILING DATE· IF APPROPRIATE |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | **RECEIVED** | |
| | | | | | JUL 0 5 1994 | |
| | | | | | **GROUP 2300** | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

**OTHER DOCUMENTS** *(Including Author, Title, Date, Pertinent Pages, Etc.)*

| | |
|---|---|
| RB | INTERNATIONAL SEARCH REPORT, Issued by European Patent Office, June 17, 1994, 3 sheets. (cited references below) |
| RB | PROCEEDINGS OF THE 12TH ANNUAL INTERNATIONAL CONFERENCE OF THE IEEE ENGINEERING IN MEDICINE AND |
| RB | BIOLOGY SOCIETY, IEEE PRESS NEW YORK, US, vol. 1/5, 1 November 1990, Philadelphia, Pennsylvania, US, pages 219-220, |
| RB | VISUAL COMPUTER, SPRINGER VERLAG, vol. 4, no. 2, 1988, Germany, pages 98-108. |
| RB | SIGBIO NEWSLETTER, vol. 12, no. 1, February 1992, New York, US, pages 10-22, XP000395120 |

| EXAMINER   R Bayer | DATE CONSIDERED   6 Sept 1994 |
|---|---|

EXAMINER: Initial if citation is considered, whether or not citation is in conformance with MPEP § 609; Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to the applicant.

(2/92 PTO)

\ATTY\TAM\PTO\DOMINAT2.1D2

# INTERNATIONAL SEARCH REPORT

| | International Application No |
|---|---|
| | PCT/US 93/12580 |

**A. CLASSIFICATION OF SUBJECT MATTER**
IPC 5  G06F15/42

According to International Patent Classification (IPC) or to both national classification and IPC

**B. FIELDS SEARCHED**

Minimum documentation searched (classification system followed by classification symbols)
IPC 5  G06F

Documentation searched other than minimum documentation to the extent that such documents are included in the fields searched

Electronic data base consulted during the international search (name of data base and, where practical, search terms used)

**C. DOCUMENTS CONSIDERED TO BE RELEVANT**

| Category° | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| X | PROCEEDINGS OF COMPUTER-BASED MEDICAL SYSTEMS, IEEE COMPUTER SOCIETY PRESS NEW YORK US 14 June 1992 , DURHAM NORTH CAROLINA US pages 138 - 146 XP000308270 J.A.SANDERS ET AL 'DESIGN AND IMPLEMENTATION OF A CLINICAL MSI WORKSTATION' see page 140, line 10 - page 141, line 5 | 1-5,8,9 |
| Y | see page 142, line 36 - page 144, line 8 ---  -/-- | 6,7 |

| X | Further documents are listed in the continuation of box C. | | Patent family members are listed in annex. |
|---|---|---|---|

° Special categories of cited documents :

'A' document defining the general state of the art which is not considered to be of particular relevance

'E' earlier document but published on or after the international filing date

'L' document which may throw doubts on priority claim(s) or which is cited to establish the publication date of another citation or other special reason (as specified)

'O' document referring to an oral disclosure, use, exhibition or other means

'P' document published prior to the international filing date but later than the priority date claimed

'T' later document published after the international filing date or priority date and not in conflict with the application but cited to understand the principle or theory underlying the invention

'X' document of particular relevance; the claimed invention cannot be considered novel or cannot be considered to involve an inventive step when the document is taken alone

'Y' document of particular relevance; the claimed invention cannot be considered to involve an inventive step when the document is combined with one or more other such documents, such combination being obvious to a person skilled in the art.

'&' document member of the same patent family

| Date of the actual completion of the international search | Date of mailing of the international search report |
|---|---|
| 6 June 1994 | 17. 06. 94 |

| Name and mailing address of the ISA | Authorized officer |
|---|---|
| European Patent Office, P.B. 5818 Patentlaan 2 NL - 2280 HV Rijswijk Tel. (+31-70) 340-2040, Tx. 31 651 epo nl, Fax: (+31-70) 340-3016 | Barba, M |

Form PCT/ISA/210 (second sheet) (July 1992)

page 1 of 2

1

PATENT COOPERATION TREATY

# PCT

INTERNATIONAL SEARCH REPORT

(PCT Article 18 and Rules 43 and 44)

| Applicant's or agent's file reference | **FOR FURTHER ACTION** | see Notification of Transmittal of International Search Report (Form PCT/ISA/220) as well as, where applicable, item 5 below. |
|---|---|---|
| 1910-02 | | |
| International application No. | International filing date(*day/month/year*) | (Earliest) Priority Date (*day/month/year*) |
| PCT/ US 93/ 12580 | 27/12/93 | 30/12/92 |

Applicant

DOMINATOR RADIOLOGY, INC. et al.

---

This international search report has been prepared by this International Searching Authority and is transmitted to the applicant according to Article 18. A copy is being transmitted to the International Bureau.

This international search report consists of a total of ____3____ sheets.

[X] It is also accompanied by a copy of each prior art document cited in this report.

---

1. [ ] Certain claims were found unsearchable (see Box I).

2. [ ] Unity of invention is lacking (see Box II).

3. [ ] The international application contains disclosure of a nucleotide and/or amino acid sequence listing and the international search was carried out on the basis of the sequence listing

     [ ] filed with the international application.

     [ ] furnished by the applicant separately from the international application,

         [ ] but not accompanied by a statement to the effect that it did not include matter going beyond the disclosure in the international application as filed.

     [ ] Transcribed by this Authority

4. With regard to the title, [X] the text is approved as submitted by the applicant.

     [ ] the text has been established by this Authority to read as follows:

5. With regard to the abstract,

     [X] the text is approved as submitted by the applicant

     [ ] the text has been established, according to Rule 38.2(b), by this Authority as it appears in Box III. The applicant may, within one month from the date of mailing of this international search report, submit comments to this Authority.

6. The figure of the drawings to be published with the abstract is:

     Figure No. ___2___    [ ] as suggested by the applicant.      [ ] None of the figures.

         [X] because the applicant failed to suggest a figure.

         [ ] because this figure better characterizes the invention.

---

Form PCT/ISA/210 (first sheet) (July 1992)

IN   NATIONAL SEARCH REPORT

International Application No
PCT/US 93/12580

C.(Continuation)  DOCUMENTS CONSIDERED TO BE RELEVANT

| Category * | Citation of document, with indication, where appropriate, of the relevant passages | Relevant to claim No. |
|---|---|---|
| Y | PROCEEDINGS OF THE 12TH ANNUAL INTERNATIONAL CONFERENCE OF THE IEEE ENGINEERING IN MEDICINE AND BIOLOGY SOCIETY, IEEE PRESS NEW YORK US vol. 1/5 , 1 November 1990 , PHILADELPHIA PENNSYLVANIA US pages 219 - 220 XP000239502 YONGMIN KIM ET AL 'A NEXT-BASED HIGH PERFORMANCE IMAGE COMPUTING WORKSTATION FOR BIOMEDICAL APPLICATIONS' see page 219, right column, line 37 - page 220, left column, line 29 | 6,7 |
| A | see page 220, left column, line 34 - line 47 --- | 1-5,8,9 |
| A | VISUAL COMPUTER, SPRINGER VERLAG vol. 4, no. 2 , 1988 , GERMANY pages 98 - 108 MOHAMMED ERRADI ET AL 'VISUAL INTERACTION USING AN ICONIC SYSTEM' see page 99, left column, line 42 - page 101, left column, line 18 --- | 1-9 |
| A | SIGBIO NEWSLETTER vol. 12, no. 1 , February 1992 , NEW YORK US pages 10 - 22 XP000355128 M.D.DOYLE 'PALETTE SEGMENTATION INDEXING: ZHE METAMAP PROCESS' see page 20, right column, line 35 - page 21, left column, line 27 ----- | 1-9 |

1

Form PCT/ISA/210 (continuation of second sheet) (July 1992)

page 2 of 2

DR000150

FORM PTO 1083

Docket No. 1910-2
Date    August 1, 1994

In re application of: W.W. Hilton et al
Serial No: 07/998,550
Filed: December 30, 1992
For: "AUTOMATED SYSTEM AND A METHOD FOR ORGANIZING, PRESENTING, AND
MANIPULATING MEDICAL IMAGES"
THE COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

Sir:

Transmitted herewith is an amendment in the above-identified application.

[ XX ] Small entity status of this application under 37 CFR 1.19 and 1.27 has
been established by a verified statement previously submitted.

[ ] A verified statement to establish small entity status under 37 CFR 1.9
and 1.27 is enclosed.

[ ] No additional fee is required.

The fee has been calculated as shown below:

|  | (Col. 1) CLAIMS REMAINING AFTER AMENDMENT |  | (Col. 2) HIGHEST NUMBER PREVIOUSLY PAID FOR |  | (Col. 3) PRESENT EXTRA | SMALL ENTITY | | OTHER THAN A SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  | RATE | ADDL. FEE | RATE | ADDL. FEE |
| TOTAL CLAIMS | * 22 | MINUS | ** 20 | = | 2 | x11= $ | | x 22 = | $ 22 |
| INDEP. CLAIMS | * 4 | MINUS | *** 4 | = |  | x 37= $ | | x 74 = | $ |
| [ ] FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM |  |  |  |  |  | +115 = $ | | + 230 = | $ |
|  |  |  |  | TOTAL ADDL FEE |  | $ | | TOTAL ADDL FEE | $ 22 |

* If the entry in Col. 1 is less than the entry in Col. 2, write "0" in Col. 3

** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, write "20" in this space.

*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, write "3" in this space.

The "Highest Number Previously Paid For" (Total or Independent) is the highest number found from the equivalent box in Col. 1 of a prior amendment or the number of claims originally filed.

[ ] Please charge my Deposit Account No. 02-0460 in the amount of
$_____. A duplicate copy of this sheet is enclosed.

[ X ] A check in the amount of $ 22.00 is attached.

[ x ] The Commissioner is hereby authorized to charge payment of the
following fees associates with this communication or credit any
overpayment to Deposit Account No. 02-0460. A duplicate copy of this
sheet is enclosed.
    [ X ] Any filing fees under 37 CFR 1.16 for the presentation of
    extra claims.

    [ x ] Any patent application processing fees under 37 CFR 1.17.

_Terrance A. Meador_
TERRANCE A. MEADOR
Reg. No. 30,298

BAKER, MAXHAM, JESTER & MEADOR
750 "B" Street, Suite 2770
San Diego, CA 92101

MAIL ROOM
AUG
5
1994
PAT & TRADE MARK



2300  107
-7-10/7
Wingards
8.24/94

"PATENT"

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re application of: | ) |
| W.W. HILTON ET AL | ) Group No.: 2301 |
| Serial No.: 07/998,550 | ) |
| | ) Examiner: ~~Unknown~~ |
| Filed:  December 30, 1992 | ) |
| | ) |
| For:   AUTOMATED SYSTEM AND A | ) |
| METHOD FOR ORGANIZING, | ) |
| PRESENTING, AND MANIPULATING | ) |
| MEDICAL IMAGES | ) |

Commissioner of Patents and Trademarks
Washington, D.C.  20231

Dear Sir:

AMENDMENT AND ELECTION

This paper is being submitted in response to the Written
Restriction Requirement, dated June 30, 1994.  The one-month period
for response expired on July 30, 1994, a Saturday.  This paper is
being submitted on August 1, 1994, the first working day following
July 30, 1994 and, therefore, is timely.

I hereby certify that this correspondence
is being deposited with the United States
Postal Service as first class mail in an
envelope addressed to Commissioner of
Patents and Trademarks, Washington, D.C.
20231 on ____ August 1, 1994 ____

TERRANCE A. MEADOR

(Signature)

August 1, 1994

(Date of Signature)

\clare\client\1910-2.amd

IN THE CLAIMS

     Claim 1, line 24, please delete "patient" and insert therefor --group--; and

          lines 26 and 28, please insert --means-- directly after "container".

     Claim 2, line 16, please delete "patient" and insert therefor --group--.

     Please cancel Claims 3-9.

     Please add the following claims.

2     10.   (ADDED) The computer display system of Claim 1, further including:

4          a palette display container means for presenting a plurality of presentation areas in an array; and

6          means coupled to the first and second display container means for selecting an image of an image series displayed in the first or second display container means and reproducing the

8     selected image in a presentation area of the palette display container means.

2     11.   (ADDED) The computer display system of Claim 1, wherein each group identification names a respective image group and includes an identification of a patient whose anatomy is illustrated by

4     the image group, the means for displaying being responsive to an identification of a patient in a group identification for displaying an

6     image series of the image group indexed by the group identification.

2     12.   (ADDED) The computer display system of Claim 11, wherein each group identification further includes identification of a referring physician.

     13.   (ADDED) The computer display system of Claim 12,

DR000153

2    further including:

a table data structure listing a plurality of identifications

4    of referring physicians, and indexing to each identification of a

referring physician one or more image output functions; and

6    means responsive to identification of a referring physician

in a group identification for producing an image output by

8    executing one or more image output functions indexed by the

table data structure to the identification of the referring

10    physician.

14.    (ADDED) The computer display system of Claim 1,

2    further including:

a table data structure listing a plurality of physician

4    identifiers, each physician identifier identifying an examining

physician, each physician identifier including respective fields

6    for specifying:

a mode of image series presentation;

8    a rectangular array format; and

rectangular array dimensions;

10    means for enabling a user to provide a physician

identifier; and

12    in the means for displaying, respective means for:

presenting an image series in a mode specified by

14    a physician identifier;

means for presenting rectangular arrays in the first

16    and second display containers in a format specified by

the physician identifier; and

18    means for presenting the rectangular arrays in

dimensions specified by the physician identifier.

\clare\client\1910-2.amd                3

15.   (ADDED) The computer display system of Claim 2,

2        further including:

a palette display container means for presenting a

4        plurality of presentation areas in an array; and

means coupled to the first and second display container

6        means for selecting an image of an image series displayed in the

first or second display container means and reproducing the

8        selected image in a presentation area of the palette display

container means.

16.   (ADDED) The computer display system of Claim 2,

2        wherein each group identification names a respective image group and

includes an identification of a patient whose anatomy is illustrated by

the image group, the means for displaying being responsive to an

identification of a patient in a group identification for displaying an

image series of the image group indexed by the group identification.

17.   (ADDED) The computer display system of Claim 16,

2        wherein each group identification further includes identification of a

referring physician.

18.   (ADDED) The computer display system of Claim 17,

2        further including:

a table data structure listing a plurality of identifications

4        of referring physicians, and indexing to each identification of a

referring physician one or more image output functions; and

6        means responsive to identification of a referring physician

in a group identification for producing an image output by

8        executing one or more image output functions indexed by the

table data structure to the identification of the referring

10        physician.

\clare\client\1910-2.amd                    4

19.   (ADDED) The computer display system of Claim 2,
further including:

a table data structure listing a plurality of physician
identifiers, each physician identifier identifying an examining
physician, each physician identifier including respective fields
for specifying:

a mode of image series presentation;

a rectangular array format; and

rectangular array dimensions;

means for enabling a user to provide a physician
identifier; and

in the means for displaying, respective means for:

presenting an image series in a mode specified by
a physician identifier;

means for presenting rectangular arrays in the first
and second display containers in a format specified by
the physician identifier; and

means for presenting the rectangular arrays in
dimensions specified by the physician identifier.

20.   (ADDED) A system for presenting images of anatomical
structure and the like for examination by an examining physician,
including:

at least one display container means for presenting a
display area subdivided into a plurality of presentation areas in a
predetermined array;

an image database including a plurality of images of
anatomical structures, the images being separated into image
groups, in which:

\clare\client\1910-2.amd                    5

10             each image group is indexed by a unique group

identification; and

12             each image group is partitioned into one or more

ordered image series, each ordered image series including

14   a succession of images which illustrate incrementally

registered aspects of an anatomical target, each image

16   series being ordered by assignment to each image in the

image series of a numerical position in a respective

18   monotomically changing sequence;

means for receiving a group identification; and

20             means connected to the means for receiving, to the

image database and to the at least one display container means

22   and responsive to a group identification for retrieving at least

one image series of an image group indexed by the group

24   identification and for displaying the at least one image series in

one or more presentation areas of the plurality of presentation

26   areas.

21.     (ADDED) The system of Claim 20, further including:

2             means for specifying a mode of image series

presentation, in which a first mode is a monitor mode and a

4   second mode is a series mode; and

the means for retrieving and displaying including means

6   for ordering the display of the at least one image series in

response to mode specification by:

8             displaying the at least one image series in the order

of its respective sequence in the at least one display

10   container means such that each presentation area of the

at least one display container means includes no more

\clare\client\1910-2.amd          6

12   than one image, in response to designation of the monitor
     mode; and

14           displaying the at least one image series one image
     at a time in the order of its respective sequence in a

16   respective presentation area of the plurality of
     presentation areas, in response to designation of the

18   series mode.

     22.   (ADDED) The system of Claim 21, wherein:

2      the at least one display container means includes:

               a first display container means for presenting a first

4      plurality of presentation areas in a predetermined array;
       and

               a second display container means for presenting a

6      second plurality of presentation areas in the

8      predetermined array;

       the at least one image series includes two or more image

10   series of the image group indexed by the group identification;
     and

12           the means for retrieving and displaying displays each
     image series in the order of its respective sequence in a

14   respective display container means such that each presentation
     area of the respective display container means includes no more

16   than one image, in response to designation of the monitor mode
     of presentation.

     23.   (ADDED) The system of Claim 21, wherein:

2      the at least one image series includes two or more image
     series of the image group indexed by the group identification;

4      and

the means for retrieving and displaying displays each
image series one image at a time in the order of its respective
sequence in a respective presentation area.

24.   (ADDED) The system of Claim 23, further including
means for synchronizing the presentation of each image series of the
two or more image series such that whenever the display of one
image series of the two or more image series is changed to display a
next image in the order of its respective sequence, each other image
series of the two or more image series is correspondingly changed by
the means for displaying.

25.   (ADDED) The system of Claim 20, further including:
a palette display container means for presenting a
plurality of presentation areas in an array; and
means coupled to the at least one display container
means for selecting an image of an image series displayed in the
at least one display container means and reproducing the
selected image in a presentation area of the palette display
container means.

26.   (ADDED) A method for presenting images of anatomical
structure and the like for examination by an examining physician, the
method being executed on a computer display system including:
a display for displaying at least one display container
means subdivided into a plurality of presentation areas in a
predetermined array;
an image database including a plurality of images of
anatomical structures; and
means connected to the image database and to the at
least one display container means for retrieving images from the

image database and displaying retrieved images in the at least

12          one display container means;

the method including the steps of:

14          providing a plurality of images in the image database;

separating the plurality of images into image groups;

16          indexing each image group by a unique group

identification;

18          partitioning each image group into one or more ordered

image series, each ordered image series including a succession

20          of images which illustrate incrementally registered aspects of an

anatomical target, each image series being ordered by

22          assignment to each image in the image series of a numerical

position in a respective monotonically changing sequence;

24          providing a group identification; and

in response to the group identification, retrieving at least

26          one image series of an image group indexed by the group

identification and displaying the at least one image series in one

28          or more presentation areas of the plurality of presentation areas.

27.   (ADDED) The method of Claim 26, further including:

2           specifying a mode of image series presentation, in which

a first mode is a monitor mode and a second mode is a series

4           mode;

displaying the at least one image series in the order of its

6           respective sequence in the at least one display container means

such that each presentation area of the at least one display

8           container means includes no more than one image, in response

to designation of the monitor mode; and

10          displaying the at least one image series one image at a

\clare\client\1910-2.amd          9

time in the order of its respective sequence in a respective
presentation area of a plurality of presentation areas, in
response to designation of the series mode.

28.   (ADDED) The method of Claim 27, further including the
steps of:

displaying a first display container including a first
plurality of presentation areas in a predetermined array;

displaying a second display container including a second
plurality of presentation areas in the predetermined array;

the step of retrieving and displaying including retrieving
two or more image series of the image group indexed by the
group identification; and

the step of retrieving and displaying including displaying
each image series in the order of its respective sequence in a
respective display container means such that each presentation
area of the respective display container means includes no more
than one image, in response to designation of the monitor mode
of presentation.

29.   (ADDED) The method of Claim 27, further including the
steps of:

in the step of retrieving and displaying, retrieving two or
more image series of the image group indexed by the group
identification and displaying each image series one image at a
time in the order of its respective sequence in a respective
presentation area.

30.   (ADDED) The method of Claim 29, further including
synchronizing the presentation of each image series of the two or
more image series such that whenever the display of one image series

\clare\client\1910-2.amd                10

of the two or more image series is changed to display the next image in the order of its respective sequence, each other image series of the two or more image series is correspondingly changed.

### REMARKS

With respect to the Written Restriction Requirement, the applicants hereby provisionally elect the claims of Group I, and provisionally cancel Claims 3-9, comprising Group II.

The applicants hereby traverse the requirement for restriction on the basis that the "means ... for displaying ..." in each of Claims 1 and 2 may include the subject matter of Claims 3-9. As described and illustrated in detail in the Specification of this patent application, the combinations of Claims 3-9 are preferably embodied in a computer display system for manipulating visual objects of the system. Further, as the Examiner points out, the inventions are so closely classified that they are in the same Class (Class 395), and are allocated to closely related subclasses of the Class. Therefore, the respective inventions embrace closely-related subjects that could be examined in a single examination without unduly burdening administration of this application in the U.S. Patent Office. Accordingly, the applicants respectfully request withdrawal of the Requirement.

Should the Examiner agree with the applicants' traversal of the restriction, the Examiner is authorized to ignore the cancellation of Claims 3-9.

\clare\client\1910-2.amd                    11

DR000162

Claims 11-30, all drawn to systems that present images of anatomical structure have been added to this application.

The applicants now await the first examination.

Respectfully submitted,

TERRANCE A. MEADOR
Registration No. 30,298

BAKER, MAXHAM, JESTER & MEADOR
Symphony Towers
750 "B" Street, Suite 2770
San Diego, California  92101
Phone:  619/233-9004
Fax:   619/544-1246

\clare\client\1910-2.amd                    12

DR000163



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO |
|---|---|---|---|---|
| 07/998,550 | 12/30/92 | HELTON | U | 901 |

E3H1/0913

TERRANCE A. MEADOR
BAKER, MAXHAM, JESTER & MEADOR
750 "B" STREET
SYMPHONY TOWERS, SUITE 2770
SAN DIEGO, CA 92101

| | EXAMINER |
|---|---|
| | BAYER |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2302 | 11 |

DATE MAILED: 09/12/94

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined   ☒ Responsive to communication filed on 5 Aug 1994   ☐ This action is made final.

A shortened statutory period for response to this action is set to expire ___3___ month(s), ___—___ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned.   35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892.   2. ☐ Notice re Patent Drawing, PTO-948.
3. ☒ Notice of Art Cited by Applicant, PTO-1449. 2 sheets   4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.   6. ☐ _____

**Part II   SUMMARY OF ACTION**

1. ☒ Claims ___1-2, 10 - 30___ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☒ Claims ___3-9 (non elected invention — traverse noted)___ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims ___1-2, 10 -30___ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☒ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____ . Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
   examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____ has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
   ☐ been filed in parent application, serial no. _____ ; filed on _____ .

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
   accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 9-89)

Serial Number: 07/998,550                                     -2-
Art Unit: 2303

1.        Item "R" of the attached form PTO-892 was supplied by
applicant in a stapled copy also containing the pages of the
second reference on the form PTO-1449 accompanying the 27 June
1994 information disclosure statement.  The Sanders et al.
article has been made of record by the Examiner because of its
particular relevance and its citation on the International Search
Report (EPO, 17 June 1994).  It appears that the EPO may have
attached both articles together and applicant may have
inadvertently assumed that the second in sequence was the one
cited in the Report, not the first.

2.        Claims 1 - 2, 10 - 30 are rejected under 35 U.S.C.
§ 112, second paragraph, as being indefinite for failing to
particularly point out and distinctly claim the subject matter
which applicant regards as the invention.

          It is not clear what manner of "system" elements claim
1's "first" and "second container means" (lines 3 - 6) are
intended to be.  This appears to be an attempt to place in
apparatus language form what amounts to a display region of a
possible single display screen.  Note an additional difficulty
along these lines with claim 10's "palette display container
means", as well as the further unclear use of such language in
claims 2, 15, 20, 22, 25, 26.

          Also, as in claim 1, what form of "system" element is
the collection of pure information recited as "an image database"
(line 10)?  Data alone is difficult to envision as part of a

Serial Number: 07/998,550                                    -3-
Art Unit: 2303

"machine".  Note a further problem of this sort with "a table
data structure" (claim 13), as well as the additional
uncertainties of claiming information as parts of machines in
claims 2, 14, 18, 19, 20, 26.

Finally in claim 1, what does applicant mean by
"anatomical structure and the like" in the preamble?  At lines
9 - 10, it becomes clear that "images of anatomical structure"
only are being archived and retrieved, leaving uncertain what
else "and the like" can mean.  This problem also exists in
remaining independent claims 2, 20, 26.

In claim 14, "the first and second display containers"
does not have clear antecedent basis in claim 1's "display
container means".  This is also a problem in claim 19, which has
a further antecedent basis uncertainty since parent claim 2 only
recites "at least one display container means".

As per claim 15, if parent claim 2 can have only one
"display container means", the phrase "first and second display
container means" becomes unclear.

In claim 20, note the typo "monotomically
[monotonically?]" at line 18, page 6 of the 5 Aug 1994 amendment.

As per the "monitor mode" and "series mode" of claim
21, applicant apparently intends each of these to be separate
"mode" types.  However, there appears to be no difference between
"each presentation area...includes no more than one image"
("monitor") and "one image at a time...in a respective

Serial Number: 07/998,550                                    -4-
Art Unit: 2303

presentation area" ("series"), since in each case, the display of
a "presentation area", at any given point in time, will contain
just "one image". Note this lack of distinction in claim 27 as
well.

      It is unclear where claim 26's preamble ends and the
"method" steps begin--recited is "[a] method for presenting
images...including:" a series of apparatus-language elements,
followed by "the method including the steps of:" a series of
method-language elements. It is not clear whether the "method"
or the "computer display system" includes the first series of
elements.

3.      The following is a quotation of 35 U.S.C. § 103 which
forms the basis for the obviousness rejection set forth in this
Office action:

> A patent may not be obtained though the invention is
> not identically disclosed or described as set forth in
> section 102 of this title, if the differences between
> the subject matter sought to be patented and the prior
> art are such that the subject matter as a whole would
> have been obvious at the time the invention was made to
> a person having ordinary skill in the art to which said
> subject matter pertains. Patentability shall not be
> negatived by the manner in which the invention was
> made.
>
> Subject matter developed by another person, which
> qualifies as prior art only under subsection (f) or (g)
> of section 102 of this title, shall not preclude
> patentability under this section where the subject
> matter and the claimed invention were, at the time the
> invention was made, owned by the same person or subject
> to an obligation of assignment to the same person.

4.      This application currently names joint inventors. In
considering patentability of the claims under 35 U.S.C. § 103,

Serial Number: 07/998,550                                    -5-
Art Unit: 2303

the Examiner presumes that the subject matter of the various

claims was commonly owned at the time any inventions covered

therein were made absent any evidence to the contrary.  Applicant

is advised of the obligation under 37 C.F.R. § 1.56 to point out

the inventor and invention dates of each claim that was not

commonly owned at the time a later invention was made in order

for the Examiner to consider the applicability of potential 35

U.S.C. § 102(f) or (g) prior art under 35 U.S.C. § 103.

5.        Claims 1 - 2, 10 - 30 are rejected under 35 U.S.C.

§ 103 as being unpatentable over Yamada et al. (US #5,235,510) in

view of Cecil et al. (US #5,293,313).

a.        The Independent Claims

          Claim 1's use of "an image database including a

plurality of images of anatomical structure" arranged in "groups"

"indexed by a unique group identification" (also claims 2, 20,

26) is an arrangement for medical image archiving found in Yamada

et al.'s data base 12, which can be queried by a doctor for image

reading who can create a set of examination IDs having the same

patient to make a list (col 7, lines 13 - 35).  The format of

this data base appears in fig 3, which shows a patient ID field.

The imagery in Yamada et al., which can comprise plural

examinations including those from a magnetic resonance image

(MRI) system (col 4, lines 64 - 66), typically consists of

"ordered image series" into which the database entries for a

patient ID are "partitioned" (claims 1, 2, 20, 26), thus showing

Serial Number: 07/998,550                                        -6-
Art Unit: 2303

"incrementally registered aspects of an anatomical target".
Yamada et al.'s particular example is of a 4-image conventional
radiograph modality, but with MRI, many more planar sections are
involved, the "image series being ordered by assignment" to
positions in "a respective monotonically changing sequence"
(claims 1, 2, 20, 26).

        While Yamada et al. thus allow for physician review of
"anatomical structure" "ordered image series" in "container means
for presenting a first preselected number of substantially
rectangular presentation areas" (see the plural-image display of
fig 13; also col 8, lines 13 - 31), as in claims 1, 2, 20, 26,
even to the point of using "a first" and "second" such "container
means" (claim 1) for both non-read and past images to perform
comparative image reading, Yamada et al. appear to limit their
disclosure to a fixed-format, single-image display on each one of
plural display devices, rather than applicant's "container means"
in which "presentation areas" are arranged "in a substantially
rectangular array" (claims 1, 2, 20, 26).

        However, the Cecil et al. medical diagnostic scanner
control system, which can obtain MR scanner images (col 3, lines
4 - 11), envisioned as operating from other medical diagnostic
modalities beyond real time (col 1, lines 6 - 13), such as
downloading stored "image database" contents, provides the
physician or other operator an ability to select various image
display patterns, such as a 4 x 3 array of images, a 2 x 2 array,

Serial Number: 07/998,550                               -7-
Art Unit: 2303

single image, etc. (col 3, lines 16 - 23). This array format has
an advantage that a plurality of images are displayed
concurrently to facilitate comparative anatomical image review
(col 2, lines 32 - 34).

It would thus have been obvious to a person having
ordinary skill in the art to expand the disclosed display format
of Yamada et al., in which plural images from plural series can
be viewed by a physician using single-image displays of
anatomical, patient-indexed data such as can come from a
tomographic procedure, to include the Cecil et al. flexibly-
formattable array, which is shown to have use in concurrently
viewing a set of such images from a "series" of obtained
tomographic slices, because this affords the user a greater
ability to assimilate information from a given patient, in the
mode of comparing image series for that given patient which both
inventive entities recognize.

b.        The Dependent Claims

Claim 10's additional "palette display container means"
with its own "plurality of presentation areas in an array", for
"reproducing the selected image" from the initial "container
means" (also claims 15, 25) finds analogy in Cecil et al., where
the physician who wants the displayed array of images or any one
of more image of the array transferred to photographic film (col
3, lines 31 - 37) may direct such retention to what by itself may
be seen as "a palette display container means" (reading the

DR000170

Serial Number: 07/998,550                                    -8-
Art Unit: 2303

claims on their own merits), since photographic film as disclosed
is a form of "container" for further "display", as when the
patient's records are reviewed.  Even if the "container means"
has placed upon it an interpretation as another video display,
however, it would have been further obvious to the person having
ordinary skill in the art that the picked images of interest in
Cecil et al. be maintained in digital storage, for retrieval on
their own for CRT display, because Cecil et al. begin with
digital information which must be transformed to film-imaging
signals, but which can also be archived as an additional patient-
identified file as per Yamada et al.

  Claim 11's "group identification" which "includes an
identification of a patient" is clearly shown by Yamada et al.'s
patient ID file in their database, as noted above.  This line of
reasoning also applies to claims 16.  The Yamada et al. database        RB
further includes an identification of an exam. requesting doctor
(fig 9), as in claim 12's "referring physician" (also claim 17).
As per the "table data structure" with "identifications of
referring physicians" being mapped to "one or more image output
functions" (claims 13, 18), such "output" occurring responsive to
designation of "the referring physician", the Yamada et al.
system, in permitting database queries according to patient ID,
also specifies the requesting doctor for any set of images that
doctor may order.  Such a doctor may be interested in only one
modality of the many possible; identifying the patient (and thus

DR000171

Serial Number: 07/998,550                                   -9-
Art Unit: 2303

the referring physician) will direct a particular form of "image

output".  The Yamada et al. database also contains an indication

of a separate <u>doctor</u> apart from the <u>requesting doctor</u> (fig 10),

as in claim 14's "identifier identifying an examining physician"            $RB$

(also claim 19).  In addition to a <u>modality</u> ("mode of image

series presentation") Yamada et al.'s information contains

<u>relevant data</u> in fig 6 such as <u>size of image</u> and <u>matrix size</u>,

which in combination with an array presentation such as Cecil et

al.'s, will yield stored, "physician"-identified information such

as "a rectangular array format" and "dimensions" to be used when

that "physician identifier" is provided to the system by patient

ID selection.

     This "mode of image series presentation" maintained for

a Yamada et al. patient image file will further include, given

the flexible array arrangement of Cecil et al., both of claim

21's "monitor" and "series mode" (also claim 27), in which a

plural-image Cecil et al. array "includes no more than one image"

at each location, while a single-image alternative displays the

"series one image at a time".

     Claim 22 (and also claim 28) adds the claim 1

limitation of "two or more image series" being displayed in

"first" and "second display container means", but such concurrent

display of series is noted above as being known in the art, as

with Yamada et al.'s comparison in plural displays.  In the event

of using one display for a "series", the "monitor mode" of claim

Serial Number: 07/998,550                                    -10-
Art Unit: 2303

21 comes into use.  Claim 23 (and also claim 29) adds a broader
recitation of this display of "two or more image series" "indexed
by the group identification" (as the plural Yamada et al. series
are jointly indexed by their patient ID), with "one image at a
time" display "in the order of its respective sequence in a
respective presentation area" (as Yamada et al. must do in
evaluating more than one series for comparison purposes).  When
Yamada et al. review common-patient series, the claim 24 "means
for synchronizing the presentation of each image series" will be
used to create a meaningful "side-by-side" display; "each other
image series" will be "correspondingly changed" so that the
reviewing physician is observing comparable anatomy in both
images.  This line of reasoning extends to claim 30.

6.       The prior art made of record and not relied upon is
considered pertinent to applicant's disclosure.

         The remaining US patent disclosures cited by the
Examiner relate to accessing collections of acquired anatomical
data so as to create a particular display suited to a user's
needs.

7.       Any inquiry concerning this communication or earlier
communications from the Examiner should be directed to Raymond J.
Bayerl, whose telephone number is (703) 305-9789, and whose
normal working hours are M - F, 6:30 - 3:00 ET.  Any inquiry of a
general nature or relating to the status of this application

Serial Number: 07/998,550                                          -11-
Art Unit: 2303

should be directed to the Group receptionist, whose telephone

number is (703) 305-9600.

RAYMOND J. BAYERL
PRIMARY EXAMINER
ART UNIT 2303

7 Sept 1994

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP--APART AND DISCARD CARBON

| FORM PTO-892 (REV. 2-92) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 07/998,550 | GROUP ART UNIT 2303 | ATTACHMENT TO PAPER NUMBER | 8 |
|---|---|---|---|---|---|

**NOTICE OF REFERENCES CITED**

APPLICANT(S)

Hilton et al.

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 4 6 4 2 6 2 1 | 2/1987 | Nemoto et al. | 364 | 413.22X | |
| | B | 5 0 1 9 9 7 6 | 5/1991 | Chiu et al. | 364 | 413.13 | |
| | C | 5 0 9 9 8 4 6 | 3/1992 | Hardy | 364 | 413.13X | |
| | D | 5 2 3 5 5 1 0 | 8/1993 | Yamada et al. | 364 | 413.22X | 11/1991 |
| | E | 5 2 9 3 3 1 3 | 3/1994 | Cecil et al. | 364 | 413.22 | 11/1990 |
| | F | 5 3 1 3 5 6 7 | 5/1994 | Civanlar et al. | 395 | 124 | 6/1991 |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| * | R | Sanders et al., "Design and Implementation of a Clinical MSI Workstation", Proceedings of Computer-Based Medical |
|---|---|---|
| * | S | Systems, IEEE Computer Society Press, June 1992, pp 138-146. |
| | T | |
| | U | |

| EXAMINER R Bayerl | DATE 6 Sept 1994 |
|---|---|

*A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

B4

435- 217          6ª 2 303
                  #12
          RECEIVED       4-5 95
                        34
       95 APR -3 PM 3: 26

           "PATENT"

MAIL ROOM
MAR
16
1995
PAT. & TRADEMARK OF

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of:            )
                                 )
W.W. Hilton et al                )   Group No.: 2303
                                 )
Serial No.: 07/998,550           )
                                 )   Examiner: R. Bayerl
Filed:  December 30, 1992        )
                                 )
For:   AUTOMATED SYSTEM AND A    )
       METHOD FOR ORGANIZING,    )
       PRESENTING AND            )
       MANIPULATING MEDICAL      )
       IMAGES                    )

                          ┌─────────────────────────────────────┐
                          │        CERTIFICATE OF MAILING        │
                          │            37 C.F.R. 1.8             │
                          │ I hereby certify that this correspondence is being deposited with │
Honorable Commissioner of │ the U.S. Postal Service as First Class Mail in an envelope │
     Patents and Trademarks │ addressed to: Commissioner of Patents and Trademarks, │
Washington, D.C. 20231    │ Washington, D.C. 20231, on the date below: │
                          │  3/13/95   Teronny A. Mead          │
                          │  Date      Signature                │
                          └─────────────────────────────────────┘

Dear Sir:


## PETITION FOR EXTENSION OF TIME

Applicants petition the Commissioner of Patents and
Trademarks to extend for THREE (3) months the time to respond to
the Office Action dated September 13, 1994, from December 13,
1994 to March 13, 1995.


tam\ugo\HP-02-30/95 07998550         1 217     435.00 CK

Our check in the amount of $435 is enclosed. Please charge or credit Deposit Account No. 02-0460 any discrepancy in the amount of the fee. A duplicate copy of this Petition is enclosed.

Respectfully submitted,

*Terrance A. Mead*

TERRANCE. A. MEADOR
Registration No. 30,298

BAKER, MAXHAM, JESTER & MEADOR
Symphony Towers
750 "B" Street, Suite 2770
San Diego, California 92101

Phone: 619/233-9004  Fax: 619/544-1246

tam\pto\1910-2.amd                    2



RECEIVED

95 APR -3 PM 3: 26
"PATENT"

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of:                    )
                                         )
W.W. Hilton et al                        )   Group No.: 2303
                                         )
Serial No.: 07/998,550                   )
                                         )   Examiner: R. Bayerl
Filed:  December 30, 1992                )
                                         )
For:   AUTOMATED SYSTEM AND A            )
       METHOD FOR ORGANIZING,            )
       PRESENTING AND                    )
       MANIPULATING MEDICAL              )
       IMAGES                            )

┌─────────────────────────────────────────┐
│         CERTIFICATE OF MAILING           │
│             37 C.F.R. 1.8                │
│ I hereby certify that this correspondence is being deposited with │
│ the U.S. Postal Service as First Class Mail in an envelope │
│ addressed to: Commissioner of Patents and Trademarks, │
│ Washington, D.C. 20231, on the date below. │
│                                          │
│ 3/13/95   Tumanee A Read                 │
│ Date        Signature                    │
└─────────────────────────────────────────┘

Honorable Commissioner of
     Patents and Trademarks
Washington, D.C. 20231

Dear Sir:

        AMENDMENT AND REQUEST FOR RECONSIDERATION

        A Request for Extension of Time accompanies this paper.

        In response to the Office Action dated September 13, 1994,

please amend the above-identified application as follows:

IN THE SPECIFICATION

        Page 19, line 20 please insert --in step 94a-- after "contains are

copied".

tam\pto\1910-2.amd

IN THE CLAIMS

Please cancel claims 11-13, 16-18, 22, and 23 without prejudice.

RB
11 Apr
1995

Please amend claims 1, 2, 10, 14, 15, 19-21, and 24-30 as follows:

1   1.   (Twice Amended) A computer display system for
2   presenting images of anatomical structure [and the like] for
3   examination, including:
4        monitor means for presenting graphical images;
5        means for displaying a first display container and a
6   second display container [means for presenting] on the monitor
7   means, the first display container including a first preselected
8   number of substantially rectangular presentation areas in a first
9   substantially rectangular array[;], and [a] the second display
10  container [means for presenting] including a second preselected
11  number of substantially rectangular presentation areas in a
12  second substantially rectangular array;
13       at least one data storage device for storing:
14       an image database stored in the at least one data storage
15  device, the image database including a plurality of images of
16  anatomical structure, the images being separated into image
17  groups, in which:
18            each image group is indexed by a unique group
19  identification, wherein each group identification names a
20  respective image group and includes an identification of a
21  patient whose anatomy is illustrated by the image group;
22  and
23            each image group is partitioned into one or more

B'

RB
11 Apr 1995

tam\pto\1910-2.amd                    2

29

24      ordered image series, each ordered image series including

25      a succession of images which illustrate incrementally

26      registered aspects of an anatomical target, each image

27      series being ordered by assignment to each image in the

28      image series of a position in a respective monotonically

29      changing sequence; [and]

30      a first table data structure ~~stored in the at least one data~~     *RB*

31      ~~storage device, the first table storage data structure~~ listing a      11 Apr 1995

32      plurality of referring physician identifiers, each referring

33      physician identifier being indexed from at least one group

34      identification, each referring physician identifier identifying a

35      referring physician and including respective fields specifying

36      output preferences of the identified referring physician for

37      outputting to the identified referring physician images from the

38      monitor means; *and*     *RB*

39      a second table data structure ~~stored in the at least one~~     11 Apr 1995

40      ~~data storage device, the second table storage data structure~~

41      listing a plurality of diagnosing physician identifiers, each

42      diagnosing physician identifier identifying a diagnosing physician

43      and including respective fields specifying format preferences

44      and mode preferences of the identified diagnosing physician for     *RB*

45      displaying images on the monitor means; and     11 Apr 1995

46      application means connected to the monitor means, to

47      the at least one data storage device [image database] and to the

48      means for displaying the first and second display containers

49      [means] and responsive to a user-selected group identification

50      and a diagnosing physician identifier for displaying at least two

51      image series of an image group indexed by the user-selected

52          group identification, said application means further for:

53                  formatting each image series for display on the

54          monitor means in accordance with format preferences

55          specified in fields of the diagnosing physician identifier;

56          displaying each image series [being displayed] on the

57          monitor means in the order of its respective sequence in

58          a respective display container [means] such that each

59          presentation area of the respective display container

60          [means] includes no more than one image; and

61                  outputting images from said at least two image

62          series according to output preferences of a referring

63          physician identified by a referring physician identifier

64          indexed from the user-specified group identification.

1           2.   (Twice Amended) A computer display system for

2    presenting images of anatomical structure [and the like] for

3    examination, including:

4           monitor means for presenting graphical images;

5           means for displaying at least one display container on

6    the monitor means,[means for presenting] the at least one

7    display container including a preselected number of substantially

8    rectangular presentation areas in a substantially rectangular

9    array; and

10          at least one data storage device for storing:

11          an image database stored in the at least one data storage

12          device, the image database including a plurality of images of

13   anatomical structure, the images being separated into image

14   groups, in which:

15                  each image group is indexed by a unique group

RB
11 Apr 199

RB
11 Apr 199

tam\pto\1910-2.amd                    4

DR000181

16    identification, wherein each group identification names a

17    respective image group and includes an identification of a

18    patient whose anatomy is illustrated by the image group;

19    and

20    each image group is partitioned into one or more

21    ordered image series, each ordered image series including

22    a succession of images which illustrate incrementally

23    registered aspects of an anatomical target, each image

24    series being ordered by assignment to each image in the

25    image series of a position in a respective monotonically

26    changing sequence; [and]

27    a first table data structure ~~stored in the at least one data~~

28    ~~storage device, the first table storage data structure~~ listing a

29    plurality of referring physician identifiers, each referring

30    physician identifier being indexed from at least one group

31    identification, each referring physician identifier identifying a

32    referring physician and including respective fields specifying

33    output preferences of the identified referring physician for

34    outputting to the identified referring physician images from the

35    monitor means; and

36    a second table data structure ~~stored in the at least one~~

37    ~~data storage device, the second table storage data structure~~

38    listing a plurality of diagnosing physician identifiers, each

39    diagnosing physician identifier identifying a diagnosing physician

40    and including respective fields specifying format preferences

41    and mode preferences of the identified diagnosing physician for

42    displaying images on the monitor means; [and]

43    application means connected to the monitor means, to

tam\pto\1910-2.amd                    5

44    the at least one data storage device [image database] and to the
45    means for displaying at least one display container [means] and
46    responsive to a user-selected group identification and a
47    diagnosing physician identifier for displaying at least two image
48    series of an image group indexed by the [patient] user-selected
49    group identification, said application means further for:
50         formatting each image series for display on the
51    monitor means in accordance with format preferences
52    specified in fields of the diagnosing physician identifier;
53         displaying each image series [being displayed] on
54    the monitor means one image at a time in the order of its
55    respective sequence in a respective presentation area;
56    and
57         outputting images from said image group according
58    to output preferences of a referring physician identified
59    by a referring physician identifier indexed from the user-
60    specified group identification.
61    10.    (Amended) The computer display system of Claim 1,
62    further including:
63         means for displaying a palette display container [means
64    for presenting] on the monitor means, the palette display
65    container including a plurality of presentation areas in an array;
66    and
67         means coupled to the means for displaying first and
68    second display containers [means for selecting] for picking an
69    image of an image series displayed in the first or second display
70    container [means] and reproducing the selected image in a
71    presentation area of the palette display container [means].

tam\pro\1910-2.amd                    6

14. (Amended) The computer display system of Claim 1,
wherein: [further including:
        a table data structure listing a plurality of physician
identifiers, each physician identifier identifying an examining
physician, each physician identifier including respective fields
for specifying:]
        the respective fields of each diagnosing physician
identifier specify:
                a mode of image series presentation;
                a rectangular array format; and
                rectangular array dimensions; and
        [means for enabling a user to provide a physician
identifier; and
        in the means for displaying,] the application means
includes respective means for:
                presenting an image series in a mode specified by
a diagnosing physician identifier;
                means for presenting rectangular arrays in the first
and second display containers in a format specified by
the diagnosing physician identifier; and
                means for presenting the rectangular arrays in
dimensions specified by the diagnosing physician
identifier.
15. (Amended) The computer display system of Claim 2,
further including:
        means for displaying a palette display container [means
for presenting] on the monitor means, the palette display
container including a plurality of presentation areas in an array;

6    and

     means coupled to the [first and second] <u>means for</u>

8   <u>displaying at least one</u> display container [means for selecting]

  <u>for picking</u> an image of an image series displayed in the [first or

10   second] <u>at least one</u> display container [means] and reproducing

  the selected image in a presentation area of the palette display

12   container [means].

   <del>19.</del> (Amended) The computer display system of Claim 2,

2   <u>wherein:</u> [further including:

    a table data structure listing a plurality of physician

4   identifiers, each physician identifier identifying an examining

  physician, each physician identifier including respective fields

6   for specifying:]

    <u>the respective fields of each diagnosing physician</u>

8   <u>identifier specify:</u>

     a mode of image series presentation;

10      a rectangular array format; and

     rectangular array dimensions; <u>and</u>

12   [means for enabling a user to provide a physician

  identifier; and

14     in the means for displaying,] <u>the application means</u>

  <u>includes</u> respective means for:

16     presenting an image series in a mode specified by

  a <u>diagnosing</u> physician identifier;

18     <del>means for</del> presenting rectangular arrays in the [first

  and second] <u>at least one</u> display container[s] in a format

20   specified by the <u>diagnosing</u> physician identifier; and

    <del>means for</del> presenting the rectangular arrays in

DR000185

22          dimensions specified by the <u>diagnosing</u> physician
            identifier.

       20.  (Amended) A system for presenting images of anatomical

2   structure and the like for examination by a[n examining] <u>diagnosing</u>
    physician, including:

4               <u>means including one or more display monitors for</u>
            <u>displaying</u> at least one display container [means for presenting]

6           <u>including</u> a display area subdivided into a plurality of
            presentation areas in a predetermined array;

8               <u>means for storing</u> an image database including a plurality
            of images of anatomical structures, the images being separated

10          into <u>a plurality of</u> image groups, in which:

                    each image group is indexed by a unique group

12              identification; and

                    each image group is partitioned into one or more

14          ordered image series, each ordered image series including
            a succession of images which illustrate incrementally

16          registered aspects of an anatomical target, each image
            series being ordered by assignment to each image in the

18          image series of a numerical position in a respective
            ~~monotonically~~ <ins>monotonically</ins> changing sequence; <ins>and</ins>

20          physician data tables <ins>are stored</ins> with indexes to unique group
            identifications and to physician identifiers and including entries

22          <u>specifying output functions and displaying formats;</u>
                <u>means for receiving a physician identifier;</u>

24              means for receiving a group identification; [and]
                means connected to the means for receiving, to the

26          <u>means for storing an</u> image database and to the <u>means for</u>

28    _displaying_ at least one display container [means] and responsive
      to a _physician identification and to a_ group _identification_ for
      retrieving at least one image series of an image group indexed
30    by the group identification and for displaying the at least one
      image series in one or more presentation areas of the plurality
32    of presentation areas _in a display format contained in the_
      _physician data tables; and_
34                _means for providing an output from the system according_
      _to an output function specified in the physician data tables._

      21.   (Amended) The system of Claim 20, [further including]
2     _wherein:_

                [means for] _the physician data tables include at least one_
4     _entry_ specifying a mode of image series presentation, in which
      a first mode is a monitor mode and a second mode is a series
6     mode; and
            the means for retrieving and displaying including means
8     for ordering the display of the at least one image series in
      response to mode specification by:
10                displaying _each image series of_ the at least one
      image series in the order of its respective sequence _in a_
12    _single respective display container_ in the at least one
      display container [means] such that each presentation
14    area of the [at least one] _single respective_ display
      container [means] includes no more than one image, in
16    response to designation of the monitor mode; and
                displaying _each image series of_ the at least one
18    image series one image at a time in the order of its
      respective sequence in a _single_ respective presentation

tem\pto\1910-2.amd                          10

20    area of the plurality of presentation areas, in response to
      designation of the series mode.
      22.   (Amended) The system of Claim 21, wherein:
2     the at least one display container [means] includes:
              a first display container [means] for presenting a
4     first plurality of presentation areas in a predetermined
      array; and
6             a second display container [means] for presenting a
      second plurality of presentation areas in the
8     predetermined array;
      the at least one image series includes two or more image
10    series of the image group indexed by the group identification;
      and
12            the means for retrieving and displaying displays each
      image series in the order of its respective sequence in a
14    respective display container means such that each presentation
      area of the respective display container [means] includes no
16    more than one image, in response to designation of the monitor
      mode of presentation.

RB
11 Apr
1995

24.   (Amended) The system of Claim 21, further including
2     means for synchronizing the presentation of each image series of the
      two or more image series such that whenever the display of one
4     image series of the two or more image series is changed to display a
      next image in the order of its respective sequence, each other image
6     series of the two or more image series is correspondingly changed by
      the means for retrieving and displaying.
      25.   (Amended) The system of Claim 20, further including:
2             means for displaying a palette display container on the

RB
11 Apr
1995

one or more display monitors, the palette display container

4    [means] for presenting a plurality of presentation areas in an

array; and

6    means [coupled to the at least one display container

means] for selecting an image of an image series displayed in

8    the at least one display container [means] and reproducing the

selected image in a presentation area of the palette display

10    container [means].

26.    (Amended) A method for presenting images of anatomical

2    structure and the like for examination by a[n examining] diagnosing

physician, the method being executed on a computer display system

4    including: having:

a display for displaying at least one display container

6    [means] subdivided into a plurality of presentation areas in a

predetermined array;

8    a storage subsystem for storing

an image database stored in the storage subsystem and

10    including a plurality of images of anatomical structures; and

means connected to the image database and to the at

12    least one display container [means] for retrieving images from

the image database and displaying retrieved images in the at

14    least one display container [means];

the method including the steps of:

16    [providing] storing a plurality of images in the image

database;

18    separating the plurality of images into image groups;

indexing each image group by a unique group

20    identification;

ZB
11 Apr
1995

ZB
11 Apr
1995

tam\pto\1910-2.amd                12

39

partitioning each image group into one or more ordered
22   image series, each ordered image series including a succession
of images which illustrate incrementally registered aspects of an
24   anatomical target, each image series being ordered by
assignment to each image in the image series of a numerical
26   position in a respective monotonically changing sequence;
storing a first data table in the storage subsystem, the
28   first data table listing a plurality of referring physician identifiers,
each referring physician identifier being indexed from at least
30   one group identification, each referring physician identifier
identifying a referring physician and including respective fields
32   specifying output preferences of the identified referring
physician for outputting to the identified referring physician
34   images from the display;
storing a second data table in the storage subsystem, the
36   second data table listing a plurality of diagnosing physician
identifiers, each diagnosing physician identifier identifying a
38   diagnosing physician and including respective fields specifying
format preferences and mode preferences of the identified
40   diagnosing physician for displaying images on the display; and
providing a group identification; [and]
42   providing a diagnosing physician identifier;
in response to the group identification and the diagnosing
44   physician identifier, retrieving at least one image series of an
image group indexed by the group identification and displaying
46   the at least one image series in one or more presentation areas
of the plurality of presentation areas in accordance with a
48   format preference specified in fields of the diagnosing physician

tam\pto\1910-2.amd                    13

identifier; and

50         outputting images from the at least one image series

according to output preferences of a referring physician

52   identified by a referring physician identifier indexed from the

group identification.

27. (Amended) The method of Claim 26, further including:

2     providing mode fields in the diagnosing physician identifiers, each

mode field specifying a mode of image series presentation, in

4   which a first mode is a monitor mode and a second mode is a

series mode;

6     displaying [the at least] one image series in the order of

its respective sequence in [the at least] one display container

8   [means] such that each presentation area of the [at least one]

display container [means] includes no more than one image of

10  the at least one image series, in response to designation of the

monitor mode; and

12     displaying [the at least] one image series one image at a

time in the order of its respective sequence in a single

14  respective presentation area of one display container [a plurality

of presentation areas], in response to designation of the series

16  mode.

28. (Amended) The method of Claim 27, further including the

2  steps of:

     displaying a first display container including a first

4  plurality of presentation areas in a predetermined array;

     displaying a second display container including a second

6  plurality of presentation areas in the predetermined array;

     the step of retrieving and displaying including retrieving

tam\pto\1910-2.amd        14

8          two [or more] image series of the image group indexed by the group identification; and

10        the step of retrieving and displaying including displaying each image series in the order of its respective sequence in a

12        respective display container means such that each presentation area of the respective display container means includes [no

14        more than] one image, in response to designation of the monitor mode of presentation.

2        29. (Amended) The method of Claim 27, further including the steps of:

4        in the step of retrieving and displaying, retrieving two [or more] image series of the image group indexed by the group identification and displaying each image series one image at a

6        time in the order of its respective sequence in a <u>single</u> respective presentation area.

2        30. (Amended) The method of Claim 29, further including synchronizing the presentation of each image series of the two [or more] image series such that whenever the display of one image series

4        of the two or more image series is changed to display the next image in the order of its respective sequence, each other image series of the

6        two or more image series is correspondingly changed.

## REMARKS

This amendment is presented in response to the Office Action mailed September 13, 1994 (Paper No. 11) to place the application in condition for favorable reconsideration and allowance.  By the amendment, claims 1, 2, 10, 14, 15, 19-22, and 24-30 have been amended and claims 11-13, 16-18, and 23 have been canceled.

tam\pto\1910-2.amd               15

Thus, claims 1-10, 14-15, 19-22, and 24-30 are now in the application. Favorable reconsideration and allowance of all claims in the application are hereby requested.

Claims 1-2 and 10-30 were rejected under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter that the applicants regard as the invention. It is submitted that the amendments have removed the bases for this rejection, and the Examiner is respectfully requested to withdraw it.

Claims 1-2 and 10-30 were rejected under 35 U.S.C. § 103 as being unpatentable over U.S. Patent No. 5,235,510 to Yamada et al. ("Yamada") in view of U.S. Patent No. 5,293,313 to Cecil et al. ("Cecil"). Yamada concerns a computer aided diagnosis system for medical use, which is said to use a computer to analyze medical image data, and store the diagnosis in memory until its output is requested. Cecil involves a real time physician view box, which purports to construct raw scan data into digital image representations stored in memory, after which a diagnosing physician selects and adjusts an image and transfers the image to a film printer.

For a number of reasons, claim 1 is patentable over the suggested combination. For example, the proposed combination omits any linkage between a referring physician database and the means by which images are displayed. Specifically, Yamada and Cecil do not teach or suggest "a first table data structure" in which "referring physician identifiers" are "indexed from at least one group identification", where the physician identifiers include a field specifying "output preferences" of identified referring physicians. These references further omit any reference to "a second table data

structure" in which "diagnosing physician identifiers" are stored, each "including respective fields specifying format preferences and mode preferences" of an identified diagnosing physician. Moreover, the combination proposed by the Examiner does not show or suggest an "application means" that formats image series display "in accordance with format preferences" specified in a diagnosing physician identifier and outputs images "according to the output preferences of a referring physician" in a referring physician identifier indexed from a group identification. These elements and limitations effectively automate the display and output of images according to prespecified physician preferences that are stored in the system.

Yamada in Figure 10 merely annotates image data with a physician identifier that maps to administrative data, not to output preferences. In Figure 6, Yamada shows only data which summarizes a digital image produced by conversion of an X-ray radiograph which is performed by a film digitizer. There are no fields in this table for specifying "format preferences" of a "diagnosing physician". The Examiner's speculation about what these tables might be used for is not prior art. Yamada (and Cecil) do not teach or suggest that they be structured, limited, and used as recited in the independent claims of this application (1, 2, 20, and 26).

In contrast to the present invention, and as correctly stated in the Office Action, Yamada is apparently limited to a fixed-format, single-image display on each one of plural display devices. Cecil, on the other hand, purports to address various adjustable image display characteristics. For example, the operator is purportedly able to select various image display patterns, adjust window and level of images, add diagnostic information, and choose images from a real time

DR000194

scanner or from memory. [column 3, lines 19-49]  However, Cecil still fails to disclose any means for displaying or outputting images in accordance with physicians' predetermined format preferences.

Hence, independent claim 1 is patentable over the applied references.  Moreover, even without considering any other grounds for patentability of claims 10 and 14, it is apparent that these claims are patentable because they depend from claim 1.  Independent claim 2 (and its dependent claims 15 and 19), as well as independent claims 20 and 26 (and their dependent claims 21, 25, and 27-30) are patentable for similar reasons.

Last, with respect to the Examiner's remarks in support of rejecting claims 10, 15, and 25, the palette container is used by the diagnosing physician to receive and display images picked from the one or more display containers.  The palette container includes "a plurality of presentation areas" where picked images are "displayed" by a "monitor means" or "one or more display monitors".  Manifestly, the means (and purposes) for transferring to photographic film images selected by a physician are different than those for "picking" and "displaying" on the "monitor means" or "one or more display means" recited in these claims.

In view of the foregoing, all pending claims in the application are now considered to be patentable over the applied art.  Accordingly, favorable reconsideration and allowance of the application are hereby requested.

Enclosed is a Petition Under 37 C.F.R. 1.136 for a three month extension of time, and a check for the required fee of $435 (small entity).  If the enclosed checks are missing or incorrect in amount, the

tam\pto\1910-2.amd                    18

Commissioner is hereby authorized to charge any deficit, or credit any

overpayment, to Deposit Account No. 02-0460, Order No. 1910-2.

Respectfully submitted,

*Terrance A. Mead*

TERRANCE A. MEADOR
Registration No. 30,298

BAKER, MAXHAM, JESTER & MEADOR
Symphony Towers
750 "B" Street, Suite 2770
San Diego, California 92101

Telephone:   (619) 233-9004
Fax:             (619) 544-1246

tam\pto\1910-2.amd                    19

DR000196

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

RECEIVED

95 APR -3 PM 3:26

In re Application of:        )
                            )
HILTON, et al.              )        Art Unit: 2303
                            )
Serial No.: 07/998,550      )        Examiner:  Bayerl, R.
                            )
Filed:  December 30, 1992   )        Atty. Docket No.:  1910-2
                            )
For:  AUTOMATED SYSTEM AND A )
      METHOD FOR ORGANIZING, )
      PRESENTING AND MANIP-  )
      ULATING MEDICAL IMAGES )

Honorable Commissioner of
    Patents and Trademarks
Washington, D.C. 20231

---

CERTIFICATE OF MAILING
37 C.F.R. 1.8

I hereby certify that this correspondence is being deposited with the U.S.Postal Service as First Class Mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231, on the date below:

3/13/95        Terrance A. Meador
Date           Signature

---

Dear Sir:

REQUEST FOR DRAWING AMENDMENT

    In accordance with 37 C.F.R. § 1.123, two copies of substitute Figure 8 are enclosed herewith, depicting the proposed change in red ink.  Although Figure 8 is already explained in sufficient depth in the specification, (page 18, line 18 to page 20, line 34), reference numeral 94a has been added to more precisely describe Figure 8.  Accordingly, the applicants hereby request the Examiner's approval of the proposed change.

                            Respectfully submitted,

                            Terrance A. Meador

                            TERRANCE A. MEADOR
                            Registration No. 30,298

BAKER, MAXHAM, JESTER & MEADOR
Symphony Towers
750 "B" Street, Suite 2770
San Diego, California 92101

Telephone:    (619) 233-9004
Fax:          (619) 544-1246

SHEET 7/15, HILTON ET AL, 1910-02



MONITOR FORMAT PROCESSING

FIG. 8

DR000198



SHEET 7/18, HILTON ET AL, 1910-02

MONITOR FORMAT PROCESSING

FIG.8



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

```
07/998,550   12/30/92   HILTON              W    901
                                   BAYERL,R
              24M1/0413
TERRANCE A. MEADOR
BAKER, MAXHAM, JESTER & MEADOR
750 "B" STREET
SYMPHONY TOWERS, SUITE 2770               2415      15/C
SAN DIEGO, CA 92101
                                               04/13/95
```

## NOTICE OF ALLOWABILITY

**PART I.**

1. ☒ This communication is responsive to _papers filed 16 Mar 1995_

2. ☒ All the claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.

3. ☒ The allowed claims are _1-2, 10, 14-15, 19-22, 24-30, all others cancelled_

4. ☐ The drawings filed on _____ are acceptable.

5. ☐ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has [..] been received. [..] not been received. [ ] been filed in parent application Serial No. _____ filed on _____

6. ☒ Note the attached Examiner's Amendment.

7. ☐ Note the attached Examiner Interview Summary Record, PTOL-413.

8. ☐ Note the attached Examiner's Statement of Reasons for Allowance.

9. ☒ Note the attached NOTICE OF REFERENCES CITED, PTO-892.

10. ☐ Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449.

**PART II.**

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" indicated on this form. Failure to timely respond will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

2. ☒ APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER.

  a. ☒ Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No. _____. CORRECTION IS REQUIRED.

  b. ☒ The proposed drawing correction filed on _16 Mar 1995_ has been approved by the examiner. CORRECTION IS REQUIRED.

  c. ☐ Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.

  d. ☒ Formal drawings are now REQUIRED.

------------------------------------------------------------------------

Any response to this letter should include in the upper right hand corner, the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER.

Attachments:
☒ Examiner's Amendment
__ Examiner Interview Summary Record, PTOL- 413
__ Reasons for Allowance
☒ Notice of References Cited, PTO-892
__ Information Disclosure Citation, PTO-1449

__ Notice of Informal Application, PTO-152
__ Notice re Patent Drawings, PTO-948
__ Listing of Bonded Draftsmen
__ Other

RAYMOND J. BAYERL
PRIMARY EXAMINER
ART UNIT 2415

PTOL-37 (REV. 4-89) *                                    USCOMM-DC 89-3789

_12 April 1995_

Serial Number: 07/998,550                                          -2-
Art Unit: 2415

ATTACHMENT TO NOTICE OF ALLOWABILITY, PAPER #15

1.      An Examiner's Amendment to the record appears below.
Should the changes and/or additions be unacceptable to applicant,
an amendment may be filed as provided by 37 C.F.R. § 1.312.   To
ensure consideration of such an amendment, it **MUST** be submitted
no later than the payment of the Issue Fee.

        Authorization for this Examiner's Amendment was given
in a telephone interview with Mr. Meador, applicant's
representative of record, on 11 April 1995.

2.      The application has been amended as follows:

In the Claims:

Claim 1, line 13--";" has been replaced by "for storing:";
Claim 1, lines 14 - 15--"stored in the at least one data storage
device, the image database" has been deleted;
Claim 1, lines 30 - 31--"stored in the at least one data storage
device, the first table storage data structure" has been deleted;
Claim 1, line 38--"and" has been inserted after "means;";
Claim 1, lines 39 - 40--"stored in the at least one data storage
device, the second table storage data structure" has been
deleted;
Claim 1, line 45--"and" has been deleted;
Claim 2, line 5--"one" has been replaced by "on";
Claim 2, line 6--"," has been inserted after "means";
Claim 2, line 10--";" has been replaced by "for storing:";

Serial Number: 07/998,550                                    -3-
Art Unit: 2415

Claim 2, lines 11 - 12--"stored in the at least one data storage
device, the image database" has been deleted;
Claim 2, lines 27 - 28--"stored in the at least one data storage
device, the first table storage data structure" has been deleted;
Claim 2, line 35--"and" has been inserted after "means;";
Claim 2, lines 36 - 37--"stored in the at least one data storage
device, the second table storage data structure" has been
deleted;
Claim 2, line 42--"and" has been deleted;
Claim 14, lines 18, 21--"means for" has been deleted at both
occurrences;
Claim 19, lines 18, 21--"means for" has been deleted at both
occurrences;
Claim 20, line 2--"and the like" has been deleted;
Claim 20, line 19--"monotomically" has been replaced by
"monotonically", and "and" has been inserted after "sequence;";
Claim 20, line 20--"are stored" has been inserted after "tables";


[Claim 22--Applicant's instructions to cancel this claim at page
2 of the 16 March 1995 response have been disregarded in view of
the later discussion of this as a pending claim (as at page 16,
paragraph 1).  During the 11 April 1995 telephone interview, Mr.
Meador further confirmed that claim 22 was to be considered.]

Serial Number: 07/998,550                                    -4-
Art Unit: 2415

Claim 22, line 14--"means" has been deleted;

Claim 24, line 2--the second occurrence of "the" has been

deleted;

Claim 26, line 2--"and the like" has been deleted;

Claim 26, line 4--"including" has been replaced by "having";

Claim 26, lines 8 - 10--";", followed by the line 9 indentation,

have been deleted and replaced by "for storing", resulting in a

single indented passage from "a storage subsystem..." through

"...anatomical structures; and";

Claim 26, line 9--"image database" has been replaced by "storage

subsystem";

Claim 27, line 2--"providing" has been inserted before "mode";

Claim 30, lines 4, 6--"or more" has been deleted at both

occurrences.


         These amendments to the claims have been made to remove

uncertainties noted when the Examiner first reconsidered the

present application, as amended by applicant's response,

overcoming possible rejection under 35 USC 112, second paragraph.

3.         The prior art made of record and not relied upon is

considered pertinent to applicant's disclosure.

         During a final search, the Examiner's attention was

drawn to Yoshioka's ULTRASONIC DIAGNOSTIC APPARATUS CAPABLE OF

MULTI-FRAME REPRESENTATION (US #5,274,759), which has been made

of record, but which is merely cumulative to other plural-image

Serial Number: 07/998,550                                    -5-
Art Unit: 2415

review systems such as those already cited, which do not, as
applicant argues in the 16 March 1995 response, archive in a
database the presentation formats particular to physicians
involved in referral or diagnosis.

4.      Any inquiry concerning this communication or earlier
communications from the Examiner should be directed to Raymond J.
Bayerl, whose telephone number is (703) 305-9789. The Examiner
can normally be reached on M - F, from 6:30 to 3:00 ET.

        If attempts to reach the Examiner by telephone are
unsuccessful, the Examiner's supervisor, Mark R. Powell, can be
reached on (703) 305-9703.  The fax phone number for this Group
is (703) 308-5356.

        Any inquiry of a general nature or relating to the
status of this application or proceeding should be directed to
the Group receptionist, whose telephone number is (703) 305-9600.


RAYMOND J. BAYERL
PRIMARY EXAMINER
ART UNIT 2415

12 April 1995

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP—APART AND DISCARD CARBON

| FORM PTO-892 (REV. 2-92) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 07/998,550 | GROUP ART UNIT 2415 | ATTACHMENT TO PAPER NUMBER 15 |
|---|---|---|---|---|
| **NOTICE OF REFERENCES CITED** | | APPLICANT(S) Hilton | | |

**U.S. PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| ✳ | A | 5 2 7 4 7 5 9 | 12/1993 | Yoshioka | 395 | 161 X | 7/1990 |
| | B | | | | | | |
| | C | | | | | | |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

**OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)**

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER R Beyer] | DATE 11 Apr 1995 |
|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

Address: Box ISSUE FEE
COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

TERRANCE A. MEADOR                    24M1 0417
BAKER, MAXHAM, JESTER & MEADOR
750 "B" STREET                                    **NOTICE OF ALLOWANCE**
SYMPHONY TOWERS, SUITE 2770                        **AND ISSUE FEE DUE**
SANDIEGO, CA 92101

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 07/998,550 | 12/30/92 | 016 | BAYERL, R | 2415 | 04/13/95 |

First Named
Applicant          HILTON          WESLEY W.

TITLE OF
INVENTION      AUTOMATED SYSTEM AND A METHOD FOR ORGANIZING, PRESENTING, AND
               MANIPULATING MEDICAL IMAGES

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 9017 | 395-161.000 | K87 | UTILITY | YES | $605.00 | 07/13/95 |

THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.
PROSECUTION ON THE MERITS IS CLOSED.

*THE ISSUE FEE MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS
APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.*

**HOW TO RESPOND TO THIS NOTICE:**

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your
current SMALL ENTITY status:

A. If the status is changed, pay twice the amount of the
FEE DUE shown above and notify the patent and
Trademark Office of the change in status, or

B. If the status is the same, pay the FEE DUE shown
above.

If the SMALL ENTITY is shown as NO:

A. Pay FEE DUE shown above, or

B. File verified statement of Small Entity Status before, or with,
pay of 1/2 the FEE DUE shown above.

II. Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE.
Even if the ISSUE FEE has already been paid by charge to deposit account, Part B should be completed and returned.
If you are charging the ISSUE FEE to your deposit account, Part C also should be completed and returned.

III. All communications regarding this application must give series code (or filing date), serial number and batch number.
Please direct all communication prior to issuance to Box ISSUE FEE unless advised to contrary.

*IMPORTANT REMINDER: Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of
maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance
fees when due.*

PTOL-85 (REV. 12-93) (0651-0033)          4. PATENT AND TRADEMARK OFFICE COPY

DR000206



"PATENT"

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re application of: | ) |
| | ) |
| Wesley W. Hilton | ) Batch No.: |
| | ) K67 |
| | ) |
| Serial No.: 07/998,550 | ) |
| | ) Examiner: |
| | ) R. Bayerl |
| Filed:   December 30, 1992 | ) |
| | ) |
| For:   AUTOMATED SYSTEM AND A METHOD | ) |
| FOR ORGANIZING, PRESENTING, AND | ) |
| MANIPULATING MEDICAL IMAGES | ) |

Honorable Commissioner of
   Patents and Trademarks
Washington, D.C. 20231

ATTN: Draftsman (Mr. Fon Lam)

CERTIFICATE OF MAILING
37 C.F.R. 1.8

I hereby certify that this correspondence is being deposited with
the U.S. Postal Service as First Class Mail in an envelope
addressed to: Commissioner of Patents and Trademarks,
Washington, D.C. 20231, on the date below:

5/24/95   *Terrance A. Nason*
Date      Signature

### TRANSMITTAL OF FORMAL DRAWINGS

Transmitted herewith are EIGHTEEN (18) sheets of formal drawings in place of the informal drawings submitted previously.

As discussed with Mr. Fon Lam, Figures 3-5, 14A-14D, and 16 were submitted as rough draft illustrations of image sequences. Although originally rendered by photocopying photographs, these figures are only meant to represent the images in the image sequences, not to portray them. In this regard, the figures have

\clare\forms\transfor.dra

Exhibit A

DR000207

consistently been described as "illustrat[ing]" or as "illustration[s]", or as"drawings".
See, for example, the Brief Description of the Drawings.

Respectfully submitted,

*Terrance A. Mead*

TERRANCE. A. MEADOR
Registration No. 30,298

BAKER, MAXHAM, JESTER & MEADOR
Symphony Towers
750 "B" Street, Suite 2770
San Diego, California  92101
Phone: 619/233-9004  Fax: 619/544-1246

\clare\forms\transfor.dra

99855D

5452416



SHEET 1/18
HILTON ET AL
1910-

FIG. 1

FIG. 2

SHEET 2/18
HILTON ET AL
1910-





FIG. 3

SHEET 3/18
HILTON ET AL
1910-





FIG. 4



SHEET 4/18
HILTON ET AL
1910-

FIG. 5



SHEET 5/18
HILTON ET AL
1910-

FIG. 6



SHEET 6/18
HILTON ET AL
1910-

**START**

70 READ PATIENT.dB

71 CONSTRUCT DISPLAY LIST

72 SELECT PATIENT

73 PATIENT SELECTED ? — NO → **EXIT**

YES

75 WARNING MESSAGE

NO

ROOT.PAT EXIST FOR THIS PATIENT ?

YES

76 READ IN ROOT.PAT

77 EXTRACT IMAGE GROUP ORGANIZATION

78 READ IMAGES INTO MAIN MEMORY IN THEIR SEQUENTIAL ORDER

79 CONSTRUCT DISPLAY OF RADSTAFF.dB AND SELECT RADIOLOGIST

80 DO FOR ALL MONITORS EXCEPT ONE: INITIALIZE THE OBJECT LIST

81 SET GRAPHICS FOR MONITORS ACCORDING TO THE SPECIFIED MODE

82 SET INITIAL IMAGE PRESENTATION ACCORDING TO SPECIFIED MODE

83 INITIALIZE THE WORKING PALETTE ON LAST MONITOR

GO TO PRESENTATION MODE PROCEDURE

APPROVED BY DNC-13SHAM   O.G. FIG.   CLASS SUBCLASS

**FIG. 7**



SHEET 7/18
HILTON ET AL
1910-

FIG. 8

SHEET 8/18
HILTON ET AL
1910—



FIG. 9



SHEET 9/18
HILTON ET AL
1910-

FIG. 10

SHEET 10/18
HILTON ET AL
1910-



FIG. 11

DR000218

SHEET 11/18
HILTON ET AL
1910-





FIG. 12

SHEET 12/18
HILTON ET AL
1910-



FIG. 13



SHEET 13/18
HILTON ET AL
1910-



FIG. 14a

SHEET 14/18
HILTON ET AL
1910-





FIG. 14b

SHEET 15/18
HILTON ET AL
1910-





FIG. 14c

SHEET 16/18
HILTON ET AL
1910-





FIG. 14d

SHEET 17/18
HILTON ET AL
1910-





FIG. 15

SHEET 18/18
HILTON ET AL
1910-





FIG. 16

605.00 242
40.00 581

## PART B—ISSUE FEE TRANSMITTAL

**MAILING INSTRUCTIONS:** This form should be used for transmitting the ISSUE FEE. Blocks 2 through 6 should be completed where appropriate. All further correspondence including the Issue Fee Receipt, the Patent, advance orders and notification of maintenance fees will be mailed to addressee entered in Box 1 unless you direct otherwise, by: (a) specifying a new correspondence address in Block 3 below; or (b) providing the PTO with a separate "FEE ADDRESS" for maintenance fee notifications with the payment of Issue Fee or thereafter. **See reverse for Certificate of Mailing.**

RECEIVED

APR 18 1995

Baker, Maxham, Jester & Meador

24M1/0413

1. CORRESPONDENCE ADDRESS

TERRANCE A. MEADOR
BAKER, MAXHAM, JESTER & MEADOR
750 "B" STREET
SYMPHONY TOWERS, SUITE 2770
SAN DIEGO, CA 92101

2. INVENTOR(S) ADDRESS CHANGE (Complete only if there is a change)

INVENTOR'S NAME

Street Address

City, State and ZIP Code

CO-INVENTOR'S NAME

Street Address

City, State and ZIP Code

☐ Check if additional changes are on reverse side

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 07/998,550 | 12/30/92 | 016 | BAYERL, R | 2415 | 04/13/95 |

First Named Applicant    HILTON,                    WESLEY W.

TITLE OF INVENTION

AUTOMATED SYSTEM AND A METHOD FOR ORGANIZING, PRESENTING, AND MANIPULATING MEDICAL IMAGES

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 2  901 | 395-161.000 | K67 | UTILITY | YES | $605.00 | 07/13/95 |

3. Correspondence address change (Complete only if there is a change)

TERRANCE A. MEADOR, ESQ.
BAKER, MAXHAM, JESTER & MEADOR
Symphony Towers
750 "B" Street, Suite 2770
San Diego, California   92101

4. For printing on the patent front page, list the names of not more than 3 registered patent attorneys or agents OR, alternatively, the name of a firm having as a member a registered attorney or agent. If no name is listed, no name will be printed.

1  BAKER, MAXHAM,

2  JESTER & MEADOR

3

DO NOT USE THIS SPACE

060 UW 07/10/95 07998550        1  561      40.00 CK
060 UW 07/10/95 07998550        1  242     605.00 CK
120 PH 07/17/95 07998550        1  561      40.00 CK
5. ASSIGNMENT DATA (CONTD) (FOR PATENT PRINTING)        1  561      30.00 CK
(1) NAME OF ASSIGNEE    07/17/95 07998550              1  561
   DOMINATOR RADIOLOGY, INC.
(2) ADDRESS: (CITY & STATE OR COUNTRY)
   San Diego, California

Certain issue fees or copies are enclosed:
☒☒ Issue Fee    ☒☒ Advance Order - # of Copies   TEN (10)

6b. The following fees should be charged to:
   DEPOSIT ACCOUNT NUMBER   02-0460
   (ENCLOSE PART C)
   ☐ Issue Fee        ☐ Advance Order - # of Copies
   ☒☒ Any Deficiencies in Enclosed Fees

A. ☐ This application is NOT assigned.
   ☒☒ Assignment previously submitted to the Patent and Trademark Office.
   ☐ Assignment is being submitted under separate cover. Assignments should be directed to Box ASSIGNMENTS.
   **PLEASE NOTE:** Unless an assignee is identified in Block 6, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the PTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

The COMMISSIONER OF PATENTS AND TRADEMARKS is requested to apply the Issue Fee to the application identified above.

(Assignee's Signature)                    (Date)
TERRANCE A. MEADOR                        6/13/95

NOTE: The Issue Fee will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the Patent and Trademark Office.

**1. TRANSMIT THIS FORM WITH FEE-CERTIFICATE OF MAILING ON REVERSE.**

PTOL-85B (REV.12-93)(0651-0033)



PTO UTILITY GRANT
Paper Number

*The United States of America*

The Commissioner of Patents
and Trademarks

*Has received an application for a patent for a new and useful invention. The title and description of the invention are enclosed. The requirements of law have been complied with, and it has been determined that a patent on the invention shall be granted under the law.*

*Therefore, this*

United States Patent

*Grants to the person or persons having title to this patent the right to exclude others from making, using or selling the invention throughout the United States of America for the term of seventeen years from the date of this patent, subject to the payment of maintenance fees as provided by law.*

*Bruce Lehman*

*Commissioner of Patents and Trademarks*

*Marjorie V. Turner*

*Attest*

PTO-1584

Exhibit A



100 - 14

C OF C

M.W.
# 18
9/2/()

"PATENT"

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re U.S. Patent No.: 5,452,416    )
                                    )
Inventor:  Hilton et al            )
                                    )
Issued:   September 19, 1995        )
                                    )   Examiner: R.J. Bayrer
For:   AUTOMATED SYSTEM AND A       )
       METHOD FOR ORGANIZING,       )
       PRESENTING, AND              )
       MEDICAL IMAGES               )

PATENT & TRADEMARK OFFICE
RECEIVED
5 1995

CERTIFICATE OF CORRECTION BR.

CERTIFICATE OF MAILING
37 C.F.R. 1.8
I hereby certify that this correspondence is being deposited with
the U.S. Postal Service as First Class Mail in an envelope
addressed to: Commissioner of Patents and Trademarks,
Washington, D.C. 20231, on the date below:

10/18/95    Tennille A. Mad
Date          Signature

Honorable Commissioner of
     Patents and Trademarks
Washington, D.C. 20231

Dear Sir:

REQUEST FOR CERTIFICATE OF CORRECTION
OF OFFICE AND APPLICANT'S MISTAKE (Rule 1.323)

APPROVED
JAN 2 9 1996
FOR THE COMMISSIONER OF PAT. & T.M.

Applicants hereby request that a Certificate of Correction
issued to correct the above-identified patent as indicated on the
attached PTO FORM 1050.

F:\WP60\USERS\CLARE\FORMS\CERTAPP.OFF

A check in the amount of $100.00 is enclosed.  Please credit any over payment or charge and deficit to Deposit Account 02-0460.  A duplicate copy of this paper is enclosed.

Respectfully submitted,

TERRANCE. A. MEADOR
Registration No. 30,298

BAKER, MAXHAM, JESTER & MEADOR
Symphony Towers
750 "B" Street, Suite 3100
San Diego, California  92101
Phone: 619/233-9004  Fax: 619/544-1246

F:\WP60\USERS\CLARE\FORMS\CERTAPP.OFF

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO. :   5,452,416
DATED        :   September 19, 1995
INVENTOR(S) :   Hilton et al.

It is certified that error appears in the above-indentified patent and that said Letters Patent is hereby corrected as shown below:

Col. 18, lines 36-39, indent the subparagraph rightwardly to align with the subparagraphs beginning at column 18, lines 26 and 28; and

line 45, please change "identification" to --identifier--.

Col. 21, line 55, please change "physica" to --physician--;

line 65, indent the subparagraph rightwardly to align with the subparagraphs beginning at column 21, lines 28 and 33; and

Col. 21, line 68 through Col. 22, line 4, please make a subparagraph break between the semicolon and "displaying" and align the subparagraph:

displaying each image series on the monitor means in the order of its respective sequence in a respective display container such that each presentation area of the respective display container includes no more than one image; and

with the subparagraphs beginning at Col. 21, lines 28 and

Col. 22, lines 10 and 23, change each occurrence of "1" to --11--.

Col. 24, lines 3 and 15, change each occurrence of "2" to --14--.

**PATENT APPLICATION FEE DETERMINATION RECORD**
Effective October 1, 1992

Application or Docket Number: 998550

## CLAIMS AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE | FEE | OR | OTHER THAN SMALL ENTITY RATE | FEE |
|---|---|---|---|---|---|---|---|
| BASIC FEE | | | | $355.00 | OR | x$22= | $710.00 |
| TOTAL CLAIMS | 9 minus 20 = | * | x$11= | | OR | x$22= | |
| INDEPENDENT CLAIMS | 4 minus 3 = | 1 | x 37= | 37 | OR | x 74= | |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | +115= | | OR | +230= | |
| * If the difference in column 1 is less than zero, enter "0" in column 2 | | | TOTAL | 392 | OR | TOTAL | |

## CLAIMS AS AMENDED - PART II

### AMENDMENT A

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | ADDI-TIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| Total | * 23 | Minus | ** 20 | = 3 | x$11= | | OR | x$22= | |
| Independent | * 3 | Minus | *** 3 | = | x 37= | | OR | x 74= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | + 115= | | OR | +230= | |
| | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

### AMENDMENT B

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | ADDI-TIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| Total | * | Minus | ** | = | x$11= | | OR | x$22= | |
| Independent | * | Minus | *** | = | x 37= | | OR | x 74= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | + 115= | | OR | + 230= | |
| | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

### AMENDMENT C

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | ADDI-TIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|
| Total | * | Minus | ** | = | x$11= | | OR | x$22= | |
| Independent | * | Minus | *** | = | x 37= | | OR | x 74= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | +115= | | OR | +230= | |
| | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875
(Rev.10-92)

Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE



DR000233

# Exhibit B

US005452416A

# United States Patent [19]

## Hilton et al.

[11] **Patent Number:** 5,452,416

[45] **Date of Patent:** Sep. 19, 1995

[54] **AUTOMATED SYSTEM AND A METHOD FOR ORGANIZING, PRESENTING, AND MANIPULATING MEDICAL IMAGES**

[75] Inventors: **Wesley W. Hilton**, Del Mar; **Murray A. Reicher**, Rancho Santa Fe; **Dale Seegmiller**, Solana Beach, all of Calif.

[73] Assignee: **Dominator Radiology, Inc.**, San Diego, Calif.

[21] Appl. No.: **998,550**

[22] Filed: **Dec. 30, 1992**

[51] Int. Cl.⁶ .......................... G06F 3/14; G06F 15/00
[52] U.S. Cl. .................................... 395/161; 395/157; 395/160; 395/124; 364/413.13; 364/413.22
[58] Field of Search ............... 395/161, 157, 155, 124, 395/160, 164, 153; 364/413.13, 413.14, 413.22

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,642,621 | 2/1987 | Nemoto et al. | 364/413.22 X |
| 5,019,976 | 5/1991 | Chiu et al. | 364/413.13 |
| 5,099,846 | 3/1992 | Hardy | 364/413.13 X |
| 5,235,510 | 8/1993 | Yamada et al. | 364/413.22 X |
| 5,272,760 | 12/1993 | Echerer et al. | 382/6 |
| 5,274,759 | 12/1993 | Yoshioka | 395/161 X |
| 5,293,313 | 3/1994 | Cecil et al. | 364/413.22 |
| 5,313,567 | 5/1994 | Civanlar et al. | 395/124 |

### OTHER PUBLICATIONS

Sanders et al., "Design and Implementation of a Clinical MSI Workstation", Proceedings of Computer–Based Medical Systems, IEEE Computer Society Press, Jun. 1992, pp. 138–146.
International Search Report, Issued by European Patent Office, Jun. 17, 1994, 3 sheets.
Proceedings of the 12th Annual International Conference of the IEEE Engineering in Medicine and Biology Society, IEEE Press New York, US, vol. 1/5, 1 Nov. 1990, Philadelphia, Pa., US, pp. 219–220.
Visual Computer, Springer Verlag, vol. 4, No. 2, 1988, Germany, pp. 98–108.
Sigbio Newsletter, vol. 12, No. 1, Feb. 1992, New York, US, pp. 10–22.

Primary Examiner—Raymond J. Bayerl
Attorney, Agent, or Firm—Baker, Maxham, Jester & Meador

[57] **ABSTRACT**

An automated system for organizing, presenting, and manipulating medical images includes a database in which the medical images are structured into groups, each group including one or more image series, each image series including an ordered sequence of images which illustrate incrementally registered aspects of an anatomical target. Image series are presented in their sequential order either in a monitor presentation format which displays each sequence in its entirety in a single monitor display container or which presents two or more image series, image-by-image, in adjacent presentation areas of a series display container. The system includes a plurality of monitors in which all monitors, save one, produce display containers for image series presentation. One monitor is reserved for displaying a working palette to which images of the image series displayed on the other monitors may be moved. The system activates a monitor in a plurality of monitors in response to movement of a cursor between monitors. An active monitor is indicated by presentation of a control panel. The system also provides heads-up presentation of control panel icons at a cursor location outside of the control panel by sequentially changing the shape of the cursor to the icon shapes for user selection.

**16 Claims, 18 Drawing Sheets**





FIG. 1

FIG. 2



FIG. 3

**U.S. Patent**          Sep. 19, 1995          Sheet 3 of 18          5,452,416



FIG. 4



FIG. 5



FIG. 6



FIG. 7



FIG. 8



FIG. 9



FIG. 10



FIG. 11

U.S. Patent          Sep. 19, 1995          Sheet 11 of 18          5,452,416



FIG. 12



FIG. 13



FIG. 14a

Case 3:06-cv-00417-JLS -NLS   Document 241-1   Filed 10/12/07   Page 219 of 235



FIG. 14b

Exhibit B



FIG. 14c



FIG. 14d

DR000017

U.S. Patent          Sep. 19, 1995          Sheet 17 of 18          5,452,416



FIG. 15

U.S. Patent          Sep. 19, 1995          Sheet 18 of 18          5,452,416



FIG. 16

5,452,416

1

# AUTOMATED SYSTEM AND A METHOD FOR ORGANIZING, PRESENTING, AND MANIPULATING MEDICAL IMAGES

## BACKGROUND OF THE INVENTION

The invention relates to the organization, presentation, and manipulation of images. More particularly, the invention provides efficient, user-friendly means and procedures for presenting images of anatomical structure and the like for examination.

The invention is also concerned with the activation of a display container for medical images in a context of a plurality of display containers, and with the presentation of icons without distracting the attention of a user from medical images which are being examined.

Magnetic resonance imaging (MRI) is an important, non-invasive imaging modality that is widely used by radiologists to examine internal anatomy to aid in the analysis of trauma and the diagnosis of disease. An MRI study provides a multi-planar representation of an anatomical target in the form of one or more image series. The images of a series may be parallel planar "slices" of the anatomical target which are incrementally registered along an imaging axis. Another imaging technology may produce image sequences which include nonparallel views that are incrementally registered about an axis of rotation or over a non-planar surface.

MRI technology is well understood. See, for example, MRI OF THE KNEE by Jerrol H. Mink, et al, Raven Press Ltd. (New York, N.Y. 1987) and the work by F.W. Wehrli, et al, entitled PARAMETERS DETERMINING THE OCCURRENCE OF NMR IMAGES published by the General Electric Company, Medical Systems Operations, in 1983.

In the prior art, the transparencies produced by an MRI system would be manually mounted in their series sequence on long light boxes where they would be read and annotated by radiologists. Following examination, the images would be physically stored in a patient's medical history folder. Recently, automated systems for archiving, retrieving, and presenting MRI images have been developed. In these systems, the images are conventionally converted to multi-bit, pixelated data representations which are formatted, stored, and retrieved using file management techniques. However, most conventional file management techniques are adapted for storage, retrieval, and presentation of documents, rather than images. Of course, these systems give even less consideration to the specialized requirements for storage and presentation of images showing internal anatomy.

Even the addition of a directly-manipulated user interface in conventional image storage and presentation systems does little to adapt these systems to the special needs of radiologists who must consider and manipulate many images in particular ways for special purposes. Furthermore, each radiologist has a highly personal mode of examination. For example, one radiologist may wish to examine a first sequence of transparencies in its entirety and then a second, related sequence before trying to correlate between individual images of the sequences. Another radiologist may wish to examine sequences in parallel by simultaneously considering images taken of the same anatomical plane under different conditions of exposure. Even currently-available database systems which have been adapted for storage and presentation of radiological images have not automated the presentation modalities of image series. Instead, a radiologist must provide for the individual retrieval and presentation of each and every stored image. In these systems, the images are individually identified and processed for storage and presentation without correlation to other images in their respective sequences. Furthermore, the existing systems do not provide for concurrent presentation of related image series.

Moreover, the currently available automated image storage systems are awkward and difficult to use, providing little in the way of means for direct manipulation of image presentation formats and images which are displayed for analysis.

## SUMMARY OF THE INVENTION

Therefore, it is a primary objective of this invention to provide an automated system for storage, retrieval, and presentation of medical images which is especially adapted for the presentation of medical image sequences and which affords the user with a flexible and responsive set of functions that permit direct manipulation of the modes of image presentation and of the presented images themselves.

The invention is embodied in a computer display system which presents images of anatomical structure and the like for examination. The system includes the following combination:

a first display container including a first preselected number of substantially rectangular presentation areas in a substantially rectangular array;

a second display container including a second preselected number of substantially rectangular presentation areas in a substantially rectangular array;

an image database including a plurality of images of anatomical structure, the images being separated into image groups in which:

each image group is indexed by a unique group identification; and

each image group is partitioned into one or more ordered image series, each ordered image series including a succession of images which illustrate incrementally registered aspects of an anatomical target, each image series being ordered by assignment to each image in the image series of a position in a respective monotonically changing sequence;

a mechanism connected to the image database and to the first and second display container and responsive to a group identification for displaying at least two image series of an image group indexed by the patient identification, wherein:

each image series is displayed in the order of its respective sequence in a respective display container such that each presentation area of the respective display container includes no more than one image; or,

all of the image series are displayed in one display container and each image series is displayed one image at a time in the order of its respective sequence in a respective presentation area of the display container.

For direct manipulation of an interactive computer system with an output means for presenting visual displays wherein a user is presented with a visual display that includes a control display container (control panel), the invention further includes the following combination:

a first bounded display area presented by the output means, the first display area including:

    a control panel; and

    a plurality of icons displayed in the control panel;

a second bounded display area presented separately from the first display area by the output means;

a cursor mechanism connected to the output means for displaying and moving a cursor in a display area; and

a functional mechanism coupled to the first and second display areas and the to the cursor mechanism for presenting the control panel in the second display area in response to movement of the cursor from the first to the second display area.

Also, in an interactive computer system with an output means for presenting visual displays wherein a user is presented with a display that includes a directly-manipulated display container for presenting program output, the invention is embodied in a combination, in which:

a cursor mechanism is connected to the output means for displaying and moving a cursor;

a control display area is provided in the display in which a plurality of icons are displayed in a predetermined order;

a pointing mechanism is provided, with connection to the cursor mechanism, for positioning the cursor and selecting icons in response to direct manual manipulation by a user; and

an icon rotation mechanism is provided, with connection to the pointing mechanism and to the cursor mechanism, which responds to a position of the cursor inside the display container by changing the shape of the cursor at the position to the shape of an icon of the plurality of icons and by changing the shape of the cursor to the shapes of the other icons in the plurality of icons, such that the shape of the cursor is changed one shape at a time and in the predetermined order, in response to direct manual manipulation of the pointing mechanism.

## BRIEF DESCRIPTION OF THE DRAWINGS

The invention, and its achievement of the above-stated objective, will be understood when the following detailed description is read in connection with the below-described drawings, in which:

FIG. 1 is a block diagram illustrating basic components of an automated system for storing, retrieving, and displaying medical images;

FIG. 2 is a block diagram illustrating in greater detail certain components of the system of FIG. 1;

FIG. 3 is an illustration of a display container output on a monitor of the system of FIG. 1 for a presentation of medical images according to one mode of the invention;

FIG. 4 is an illustration showing a display container for presentation of medical images according to a second mode of the invention;

FIG. 5 is an illustration showing a working palette display container presented on a monitor of the system of FIG. 1;

FIG. 6 illustrates the organization of a medical image database according to the invention;

FIG. 7 is a flow diagram illustrating how the database of FIG. 6 is accessed;

FIG. 8 is a flow diagram illustrating how the system of FIGS. 1 and 2 presents images according to the first mode of the invention;

FIG. 9 is a block diagram illustrating presentation of images according to the first mode of the invention;

FIG. 10 is a flow diagram illustrating how the system of FIGS. 1 and 2 presents images according to the second mode of the invention;

FIG. 11 is a block diagram illustrating presentation of images in a database of FIG. 6 according to the second mode of the invention;

FIG. 12 is a flow diagram illustrating a procedure for indicating an active monitor according to the invention;

FIG. 13 is a flow diagram illustrating a procedure for rotating image manipulation icons according to the invention;

FIGS. 14a through 14d are illustrations of display containers showing icon rotation according to the procedure of FIG. 13;

FIG. 15 is a flow diagram illustrating annotation rotation according to the invention;

FIG. 16 is an illustration showing a display container with annotation rotation according to the procedure of FIG. 15.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

The invention is intended to operate in connection with an image database which stores medical images for retrieval and presentation. Although the following description assumes that the images are data representations of pixelated images conventionally produced from the output of medical imaging technology such as MRI, X-ray, and CAT, this is not intended to limit such images to such sources. The inventors contemplate that the means and processes presented in this description would apply as well to a database of synthetically-created medical images.

In the preferred embodiment and best mode of this invention, the medical images are, in fact, those produced from an MRI apparatus. As is known, such an apparatus produces series, or sequences of images, which represent successively deeper planar slices of an anatomical target. In the examples given below, the anatomical target is the head of a human patient and it is assumed that three distinct series of images have been taken of the target. Two of these series are termed "axial". The images of an axial series represent parallel, planar images of cross-sectional anatomy taken along an imaginary vertical axis of the head. Each axial series is generated to emphasize particular anatomical features by varying parametric values of the MRI process. In this regard, see Chapter 1 of the Mink et al reference. The two axial series described in this embodiment are the well-known axial T1 and axial T2 sequences. The third series is a sagittal sequence in which the images are anatomical cross-sections lying in planes parallel to the median plane of the head.

It is assumed, without further explanation, that axial and sagittal images obtained from an MRI apparatus will have been digitized and rendered into conventional scanned, pixelated data representations that can be processed by the computer system illustrated in FIG. 1. In FIG. 1, the system includes a DOS-based personal computer or work station 10 which has the capability to concurrently execute an application process 12 and a plurality of interface processes 14. The application process, preferably, is written in the well-known C language, embodies processes and functions of the invention as described later in further detail. The interface processes 14 include commercially available programs

5,452,416

| 5 | 6 |

as well as processes which can be constructed by the reasonably skilled computer programmer with the following description in hand. The interface processes 14 are connected to standard I/O devices such as a conventional trackball mechanism 16, a conventional QWERTY keyboard 22, and output devices 23 such as a full grey scale printer, a facsimile machine, and a modem (none of which is illustrated). The trackball mechanism 16 is a conventional picking device that includes a left button 18, a right button 19, and a rotation ball 20. The trackball mechanism 16 provides a user with the means for directly manipulating the position and functions of a cursor. The keyboard 22 is manually operated to input alphanumeric characters. The output devices 23 operate conventionally to provide tangible, visual results produced by the invention as described in further detail below. An image database 24 includes one or more conventional on-line storage devices for storage of medical image data representations which have been generated as described above. Therefore, the image database 24 includes not only the storage hardware, but also the stored images and all necessary indices. An output device 25 in the form of a multi-screen apparatus provides the means by which the images stored in the image database 24 are arranged and presented to a practitioner for examination, manipulation, and disposition. In the preferred embodiment, the device includes three separate output monitors 26, 27, and 28 which are connected by a coupling mechanism 29 to the interface processes 14 for control by the application process 12.

FIG. 2 shows certain architectural aspects of the best mode for practicing the invention in a system such as that illustrated in FIG. 1. In FIG. 2, the interface processes 14 include a conventional directly-manipulated user interface 14a which is directly connected to a screen driver 14b. The screen driver 14b is connected to the trackball mechanism 16 and the keyboard 22, passing inputs from these devices by conventional means directly to the user interface 14a. The screen driver 14b also operates in conjunction with the user interface 14a to provide the pixel information necessary to draw and manipulate graphics on the monitors 26, 27, and 28.

The graphics include a cursor, display containers which give a visible structure for image presentation, and a control panel in which icons and function buttons are displayed. It is assumed that the user interface includes the ability not only to generate a cursor, but also to move the cursor among the monitors in response to trackball motion. It is further presumed that the user interface includes the ability to highlight icons and control buttons which have been "pointed to" by the cursor and "clicked" by a trackball mechanism button. The interface processes 14 further include an image subsystem 14c and a low level video controller 14d. The image subsystem 14c accesses the image database 23 for retrieval of stored images. Image selection is made by the application process 12 and indicated by control signals coupled to the image subsystem 14c. In response to control signals which designate images to be retrieved, the image subsystem 14c obtains the data representations of the specified images and enters them into a high-capacity working memory 33 as directed by the application process 12. The application process 12 further specifies how and which images in the working memory 33 are to be output on the monitors 26, 27, and 28. Thus, the pixel information representing database images flows from the working memory 33, through the

image subsystem 14c to the monitors 26, 27, and 28. Control over the display apparatus 25 is provided by the coupling mechanism 29 in the form of a video card which has separately accessed and separately controlled memories for Red, Green, and Blue pixels. These memories are indicated by reference numerals 29a, 29b, and 29c, respectively. The memories of the video card are controlled by a low-level video controller 14d, which receives control signals from the image subsystem 14c. The image subsystem 14c generates control input for the low-level controller 14d in response to control signals generated by the application process 12.

In the architecture illustrated in FIG. 2, each of the memories 29a, 29b, and 29c is connected by a respective gun of a tri-color output to a particular video monitor. In particular, the Red memory 29a is connected by way of a Red (R) video output connector to the monitor 26, the Green memory 29b by a Green (G) video output connector to the monitor 27, and the Blue memory 29c by a Blue (B) video output connector to the monitor 28. The monitors 26, 27, and 28 are operated in the monochromatic mode and the memories 29a, 29b, and 29c are operated effectively as frame buffers for the monitors to which they are connected. This architecture merely reflects the design choices of the inventors in implementing the invention, and is not intended to limit the use of equivalent architectures. For example, instead of separate video monitors 26, 27, and 28, a designer might select an architecture which provides separate display containers (windows) on a single, large video monitor so that each window operates as a separate, independently-controlled monitor.

The application program 12 employs object-oriented programming techniques to provide programming controls and cues to the user interface 14a and the imaging subsystem 14c. Controls and cues are in an object list 34 which is initiated and updated as needed by the application process 12. The object list has a conventional structure in that it includes a plurality of objects, each of which represents some feature or attribute of a display which is presented on one of the monitors 26, 27, or 28. Objects in the object list 34 are conventionally indexed. Each object includes one or more application process functions and any data necessary to establish machine state when the object is encountered or otherwise identified during system operation.

The application process 12 maintains and increments an icon index 35 whose output is provided to the user interface 14a for accessing the object list 34 in a procedure described later in greater detail.

IMAGE PRESENTATION

The invention is practiced on a system architecture corresponding to that illustrated and discussed above. The invention is concerned with the presentation of one or more medical image series for consideration, analysis, and disposal by a user such as a radiologist. The invention includes at least two modes for presenting medical image series. The first mode is illustrated in FIG. 3.

FIG. 3 illustrates what is termed the "monitor" mode of image presentation. FIG. 3 illustrates a rectangular display container which is produced on one or more monitors for presentation of image series. The series shown in FIG. 3 is an axial T2 series including 18 images. The display container is subdivided into a rectangular array of 20 presentation areas. In the monitor mode of image presentation, an image series is shown in

7

5,452,416

8

a single display container in its sequence order such that each presentation area of the display container includes one image of the sequence. Only one image series at a time is shown in any display container. Separate series are shown in separate display containers. The axial T2 sequence illustrated in FIG. 3 is ordered by assignment to each image in the series of a monotonically increasing number. The number assigned to an image represents the image's position in the sequence of which it is a member. In FIG. 3, therefore, the image in the upper left-hand presentation area is the first image of the axial T2 sequence, with the next image in the sequence being assigned the number 2 and being displayed in the next presentation area of the display container to the right of the presentation area where image number 1 is shown.

In the monitor mode of the presentation, a display container such as that illustrated in FIG. 3 is output on all but one of the monitors or monitor equivalents supported by the system. Thus, in FIGS. 1 and 2, a display container such as shown in FIG. 3 would be presented on, for example, monitors 26 and 27, with monitor 28 being reserved for presentation of a work product palette as described below. This permits more than one image series to be presented, with each image series being presented in its sequence order in a presentation area of a respective display container on a particular monitor. Since co-relative series such as axial T1 and axial T2 typically consist of an identical number of images taken at identical planes, identical side-by-side presentations of axial T1 and T2 series on adjacent monitors in the manner illustrated in FIG. 3 contributes significantly to a radiologist's ability to differentially analyze the images.

FIG. 4 illustrates a second presentation mode of the invention which is termed the "series" mode. In the series mode, a display container comprising a rectangular array of rectangular presentation areas is displayed on one or more monitors. For example, the display container in FIG. 4 includes four substantially rectangular presentation areas numbered 1, 2, 3, and 4 in the drawing. In the invention, each presentation area of a series mode display container is employed to display an image series, one image at a time, in the order of its respective sequence. In this regard, consider presentation area 2 in which an axial T2 series is illustrated. Assume that the axial T2 series is identical to that illustrated in FIG. 3. Thus, the images of the axial T2 series would be shown in presentation area 2 beginning with image 1 and continuing sequentially until image 18 is shown. Assume next that a co-relative axial T1 series comprising 18 images is presented in presentation area 1 in the display container of FIG. 4. An important feature of the invention termed "coupling" is employed to synchronize the presentation of the axial T1 and T2 series so that whenever an image of one series is changed to the next image in the series, the other series is changed identically to display the image of the other series occupying the same sequence position. Thus, if presentation area 1 in the display container of FIG. 4 displays image 1 of the axial T1 series and then riffles through the 60 images of the series, the display images in presentation area 2 would identically riffle through the images of the axial T2 series, beginning with image 1. The invention contemplates that the coupling feature of the series mode of presentation will synchronize image presentation only 65 between co-relative image series. Thus, for example, an axial T1 series would be coupled for a presentation with an axial T2 series, but not with a sagittal T1 series such

as that shown in presentation area 4 of the display container in FIG. 4.

The series mode of presentation is practiced by presenting the display container of FIG. 4 on all available monitors or monitor equivalents except one, which is also reserved for the working palette display container.

Refer now to FIG. 5 for an illustration of the working palette display container. This display container is presented on one monitor of a multi-monitor system, such as monitor 28 in FIGS. 1 and 2. The working palette display container has a substantially rectangular aspect and is subdivided into a rectangular array of individual presentation areas. The working palette is provided to receive individual images which are picked and copied from presentation areas in monitor mode or series mode display containers. The working palette allows a radiologist to assemble the images which are deemed to be the most important in illustrating trauma or disease for provision to a referring physician. For example, the axial image displayed in presentation area 3 of the working palette display container may have been copied there from presentation area 12 in the monitor mode display container of FIG. 3.

FIG. 6 illustrates the structure of the image database which enables the efficient storage and retrieval of image series. When an MRI apparatus is used to generate images, examination protocols normally provide for identification of the patient, and set out the number and types of sequences which are to be taken and the anatomical target of interest. From this information, a unique composite patient identifier (ROOTNAME) is algorithmically derived. A patient, thus, has a unique ROOTNAME for each MRI examination. A patient identification, the corresponding ROOTNAME, and an identification of a referring physician are entered for each patient examination into a database file 50 entitled "PATIENT.dB". For any patient identification entered in the file 50, its corresponding ROOTNAME points to an examination file such as the file 53, which is entitled "ROOTNAME. PAT". Each examination file 53 identifies an image group including one or more image series obtained during an examination. Each image series in an image group is indexed to a set of sequentially named or numbered files in which the images of the series are contained. For example, in the ROOTNAME.PAT file 53 illustrated in FIG. 6, the image group includes axial T1, axial T2, and sagittal T1 series. The axial T1 series consists of n consecutively-numbered files, each containing a respective image of the series such that the sequence position of the named file corresponds to the sequence position of the image it contains. The image files are named ROOTNAME. XXX. Thus, image 1 in the axial T1 series has a file name ROOTNAME.1, the second image in this series is in a file named ROOTNAME.2, and so on. Similarly, the n images of the axial T2 series are stored in files consecutively numbered as ROOTNAME. m through ROOTNAME. (m+n). When a patient is identified to the application process 12, the application process determines a ROOTNAME value for that patient, obtains a ROOTNAME.PAT file, and commands the image subsystem to extract the image series contained in the ROOTNAME file sequence defined by the ROOTNAME.PAT file and place them in linked list form in the working memory 33. The application process 12 then presents the image series to a radiologist and provides the radiologist's work product assembled in a working palette, to the referring physician.

5,452,416

9

The file-naming rule for image series is important to the invention because it preserves the unique identity, and the order, of each image series. For any given ROOTNAME, an image series can be identified by reference to the ROOTNAME file 53 and manipulated, as a unit and independently of any other image series, by the system of FIGS. 1 and 2. This provides a very significant advantage over the existing systems which treat each image as an independent unit, unconnected with any other image in its sequence or with any other image in any other series or group.

As FIG. 6 illustrates, the PATIENT.dB file includes a REFERRING PHYSICIAN column containing values which index to entries in a REF.DOCS file 52. The REF.DOCS file 52 lists referring physicians. Each referring physician entry includes a set of functions specified by the identified referring physician which are to be executed when a radiologist indicates that examination of an image group is completed by pressing a DONE button, which is explained later in more detail. A RAD-STAFF.dB file 63 includes at least seven columns. In the first column (RAD NAME) are listed the names of radiologists having access to the system. The second through sixth columns comprise a format specification for the monitors in which the image series are to be displayed. The seventh column includes a working palette specification. The format specification, columns two through six of the Table 63, include a MODE column, identifying the monitor or series mode of presentation, a MATRIX column setting forth the number of rows and columns in the display containers, and a COUPLE column specifying whether the coupling function is invoked for synchronization of two or more image series in a series mode of presentation. The format specification further includes SHRINK and EXPAND columns which specify whether the rows and columns of the matrix are to be adapted to predefined dimensional parameters for display containers. The seventh column specifies the matrix size of the working palette. The application process also has access to a set of annotation lists 60 and to the set of image functions that are linked to objects which are in or which may be added to, the object list 34 of FIG. 2.

FIG. 7 illustrates the procedure executed by the application process 12 to initialize the system of FIGS. 1 and 2 for presentation of images. The procedure starts at step 70 by receipt of an indication that the PA-TIENT.dB file is to be read. In step 71, a list illustrating the PATIENT.dB file is constructed and presented on one of the monitors. It is assumed that the user can select the name of a patient simply by moving a cursor to the patient's name in the displayed list and clicking on the name by depressing and releasing a trackball button. The decision 73 awaits selection of a patient. In decision 73, the negative exit can be manually selected. If the negative exit is taken from decision 73, the procedure is exited. If a patient is selected, the positive exit is taken from decision 73 and a search is conducted of the database for a ROOTNAME.PAT file for this patient in step 74. If the file does not exist, a warning message to the operator is displayed on the monitor in step 75. Otherwise, the ROOTNAME.PAT file is provided to the application process which extracts the image group organization from the file in step 77, and passes the appropriate control signals to the imaging system in step 78 to enable the imaging subsystem to copy the images named in the ROOTNAME.PAT file from the image database to the main memory. In step 79, a list illustrat-

10

ing the RADSTAFF.dB file is presented in a manner permitting a radiologist to log on by pointing to and clicking his name in the list. When the radiologist's name is identified in this manner, the format specification and working palette matrix size in the same RAD-STAFF.dB row are provided to the application process 12 which enables it to initialize control blocks for each monitor, as well as the object list, in step 80. The object list includes a full specification of the graphics objects required in the first monitor for the mode and the matrix size, and palette size specified in the RADSTAFF.dB entry selected by the user. The first monitor is then initialized with graphics and images in steps 81 and 82. Once the first monitor has been initialized, the object list is updated for specifying the graphics of the second monitor, and then is updated once again to specify the working palette graphics for the third monitor. The third monitor is initialized with graphics in step 83. The application process then executes the appropriate presentation mode procedure. In the preferred embodiment, the monitors 26 and 27 in FIGS. 1 and 2 are formatted with display containers of the specified mode and matrix size and populated with images and then the monitor 28 is formatted with the specified working palette.

Referring once again to FIGS. 1 and 2, when the object list 34 is initialized or updated, the application process provides a "SELECT MONITOR" control signal to the image subsystem 14c. This signal is appropriately conditioned to indicate the monitor to which control is to be transferred. In response, the image subsystem configures the low level controller 14d to enable the appropriate one of the memories 29a, 29b, or 29c. For example, when the object list is initialized, the SE-LECT MONITOR control signal forces the low level controller 14d to enable the Red memory 29a to receive the appropriate display container graphics established in the object list 34. The user interface 14a inspects the object list 34 to determine the graphics objects for which graphics pixels must be generated and provided by the screen driver 14b. The screen driver 14b outputs the specified graphics pixels in parallel to all of the memories 29a, 29b, and 29c. The pixels, however, are read into only the currently-enabled memory.

Once the series of an image group have been entered in sequence order into the working memory 33 and the display containers have been initialized, the application process produces the appropriate image system control signals to present an initial image display in the specified presentation mode. If, for example, the monitor mode has been specified, simply placing a display container such as that illustrated in FIG. 3 in the specified matrix size are entered into the Red memory 29a of the video card together with image pixels for the first series of the image group. When the memory 29a is appropriated loaded with graphics and image pixels, the application process issues a SELECT MONITOR control signal to the low level controller 14d through the image subsystem 14c, which disables data entry to the Red and Blue memories 29a and 29c and enables data entry into the Green memory 29b. Graphics pixels and image pixels for the second series of the image group are entered into the memory 29b and the SELECT MONI-TOR signal is once again issued so that graphics pixels for the working palette can be entered into the Blue memory 29c. Next, the object list is updated to describe the Red memory 29a, the Red memory 29a is enabled, and the cursor is generated. The cursor pixels are fed to

5,452,416

11                                                12

the enabled memory and updated therein when the cursor is moved.

At this point, display containers with images would be presented on the monitor 26 and on the monitor 27, while an empty working palette would be displayed on the monitor 28.

Returning to FIG. 3, assume that the monitor display container and image series in this figure are displayed on monitor 26 as shown in the figure. Thus, the presented display includes a rectangular area adjacent to the right edge of the display container. This area is referred to as the "control panel" and contains a plurality of function buttons (DONE, CHANGE SERIES, and PRINT), a set of image manipulation icons immediately below the function buttons, and a set of annotation icons below the image manipulation icons. Any of the function buttons and any of the image manipulation or annotation icons can be activated by "point and click" using the trackball to point with the cursor, and the left cursor button to click on a button or icon.

The function buttons represent application process functions that can be activated by pointing and clicking. The DONE button, when activated, invokes the "DONE" functions of the referring physician. The CHANGE SERIES button, when activated, deletes the series presently displayed in the display container and enters the images of the next series listed in the ROOT-NAME.PAT file. The PRINT button invokes an application process function which prints a copy of the screen. As also illustrated in dashed outline in FIG. 3, another button may be presented in a control panel between the DONE and CHANGE SERIES buttons. The button may be a NEXT or a PREVIOUS button. When the image series includes more images than there are presentation areas in the display container, the NEXT button replaces the currently-displayed subset of consecutively numbered images of the series with the following subset. So long there are images remaining to be presented, the NEXT button will be presented. When the last subset of the image series is displayed in the display container, the PREVIOUS button is displayed. When activated, the PREVIOUS button returns the previous subset of series images in the display container. It should be evident that the NEXT and PREVIOUS buttons are displayed only in monitor mode control panels.

The set of image manipulation function icons is positioned immediately beneath the PRINT button. These icons control various image manipulation functions. The upper left-most icon is a magnifying glass and controls a conventional zoom function which magnifies or minifies an image in response to trackball motion. Immediately beneath the zoom icon is a riffle icon in the form of a spaced set of pages. In response to trackball motion, the riffle function shuffles through an image series in forward or reverse sequence. Beneath the riffle icon is an icon representing illumination which adjusts the contrast or brightness of an image in response to trackball motion. Immediately to the right of the zoom icon is a roam icon consisting of four outwardly-directed arrows. The roam function is used in conjunction with the zoom function and moves a magnified image under a viewing aperture in response to trackball motion. The icon in the shape of a movie camera immediately beneath the roam icon denotes the cine function, which is an automated riffle that, once selected, automatically steps through an image series in sequence

order. The speed of the cine function is controlled by the trackball.

A set of annotation icons consisting of four arrows and A and X and a rectangular box is presented immediately beneath the image manipulation icons. These icons are discussed later in more detail.

As FIGS. 3 and 4 illustrate, the cursor has a default shape in the form of a hollow arrow.

Refer now to FIGS. 3, 8, and 9 for an understanding of a monitor presentation format procedure according to the invention. Once the displays in the monitors 26, 27, and 28 have been initialized for monitor presentation as described above, the monitor format procedure begins. This procedure executes in response to cursor location and trackball button activation. Thus, in step 90, beginning with monitor 26, for example, and using the cursor location and sensing button activation, the procedure determines whether one of the image manipulation icons has been selected in decision 91. If so, the image function is performed at the cursor location. Otherwise, the negative exit is taken from decision 91 and the status of the CHANGE SERIES button is inspected in decision 92. If the button function has been activated, the next series listed in the ROOTNAME.PAT file is moved into the display container grid of the monitor where the cursor is located when the left button of the trackball mechanism is clicked. Now, a series counter (not shown) for the monitor is updated to identify the series currently displayed on the monitor. If the function has not been activated, the negative exit is taken from decision 92. In decision 93, the application process determines whether a working palette grid location has been selected for placement of an image. In this regard, the application process maintains a working palette grid pointer which is updated to the next working palette grid location when an image is moved to the current one. The grid pointer can also be forced to a grid location by moving the cursor from the monitor where it is currently located to the monitor where the working palette is displayed and pointing and clicking a grid location in the working palette display container. Preferably, a working palette grid location is selected by clicking the left button of the trackball mechanism. (Once an image has been moved to a preselected working palette grid location, the grid pointer is reset to indicate the next empty grid location which was available before user selection.) The cursor is then returned to a monitor which shows an image series. Decision 94 assumes that the cursor is in a presentation area of the monitor mode display container. If the right button of the trackball mechanism is clicked, the application process infers that the user wants the image in the presentation area moved to the working palette grid location indicated by the palette grid pointer. In this case, the image at the cursor location and any annotation graphics which it contains are copied in step 94a into the working palette grid at the location indicated by the working palette grid pointer. Refer to FIG. 9 for an understanding of how the application process accomplishes this step.

In FIG. 9, three monitor control blocks 100, 102, and 103 are illustrated. The application process maintains the control blocks, each of which completely describes in object form the current display on a particular monitor. For example, the monitor control block 100 lists the identification and location of each graphical object displayed on the monitor 26. This would include a complete object description of a monitor mode display con-

5,452,416

13

tainer, a control panel, if a monitor is active, and the images of the series presented in the display container. For example, consider the first image of an axial T1 series which is listed in grid location 1, corresponding to the upper left-hand presentation area in the display container of FIG. 3. The monitor control block 100 also lists the graphics displayed at the grid location. When an image is to be moved to the working palette it is copied from the object indexed by the current cursor location in the control block of the monitor where the cursor is located to the palette monitor control block at the grid location indicated by the working palette grid pointer 104. In order to effect the update on the working palette display container presented on the palette monitor 28, the application process, using the palette 28 monitor control block, updates the object list to describe the updated working palette display container and issues a SELECT MONITOR control signal. In response to the SELECT MONITOR control signal, the image subsystem accesses the working memory to obtain the pixels for the image to be moved and enters them into the Blue memory 29c which has been enabled by the SELECT MONITOR signal. At the same time, the screen driver 14b provides any annotation pixels for the image which may be described in the object list. This causes the selected image and accompanying graphics to be added to the working palette presented on the monitor 28. When entry of the image and graphics pixels in the Blue memory 29c is complete, the application process updates the object list to describe the display presented in the monitor where the cursor is located and issues a SELECT MONITOR signal to enable the corresponding color memory.

In decision 95, the application process inspects the cursor location to determine whether the cursor has been moved to another monitor. If so, the object list is updated to the configuration of the monitor where the cursor is located and the SELECT MONITOR control signal is conditioned to enable the corresponding color memory for the new monitor.

In decision 96, if a DONE button is selected, the application program executes the DONE functions for the referring physician. These may include, for example, simply printing out a hard copy of the working palette display container and entering the printout into the patient's file, faxing a data or an image copy of the working palette display container to a predetermined location, or transmitting a data representation of the working palette monitor through a modem to a predetermined location.

Refer now to FIGS. 4, 10, and 11 for an understanding of a series presentation format procedure according to the invention. Once the displays in the monitors 26, 27, and 28 have been initialized for series presentation as described above, the format procedure begins. This procedure executes in response to cursor location and trackball activation. Thus, in step 110, beginning with monitor 26, for example, using cursor location and sensing button activation, the procedure determines whether one of the image manipulation icons has been selected in decision 111. If so, the image manipulation function is filtered at decision 112 to determine whether the riffling function has been invoked with the coupling feature selected. If not, the negative exit is taken from decision 112 and the image manipulation function is performed in the presentation area where the cursor is located. On the other hand, if the riffling function has been invoked with coupling activated, the positive exit

14

is taken from decision 112. Here, the images of the series being output through the presentation area where the cursor is located are riffled (in response to trackball motion) in the presentation area where the cursor is located. In addition, the images of any coupled series are riffled at the presentation area where the coupled series is displayed. The riffling is in synchronism with riffling the series at the cursor location. Decision 113 tests the CHANGE SERIES button of the control panel. If the button has been activated, the procedure waits until the cursor is moved to a display container presentation area and the left button is clicked. Then, the series is changed to the next ROOTNAME.PAT file image series. When the series is changed, the first image of the next series is displayed at the presentation area where the cursor is located. Step 116 moves the image to the working palette display container in the manner described above for the monitor presentation format. Next, monitor processing and DONE button processing are performed in decisions 117 and 118 as discussed above in connection with FIG. 8.

FIGS. 4 and 11 illustrate how the working palette is populated with images during the series presentation mode. In the series presentation mode, the application process maintains a monitor control block for each of the monitors 26, 27, and 28. The monitor control blocks are, respectively, 120, 121, and 122. Assume that the series presentation display containers such as the display container illustrated in FIG. 4 are presented on the monitors 26 and 27. For each monitor, the control block must list the principal objects which, for the display container of FIG. 4, are the four presentation areas of the control panel and the icon control panel. The control block links a respective series with each of the presentation areas in the IMAGES column of the block. In the COUPLING column, a related image series is listed if the coupling function has been invoked. The GRAPHICS column lists the graphics for, and in, each presentation area. The monitor control block 121 fully describes the display container and control panel displayed on the monitor 27, while the control block 122 fully describes the working palette presented on the monitor 28. A grid pointer 122a is used to denote the current working palette grid location in the manner described above in connection with FIG. 9.

### ACTIVE MONITOR INDICATION

The invention also includes the ability to indicate, by the control panel, which monitor is currently active. In this regard, the "active" monitor is most likely the one wherein the cursor is currently located. The configuration of the active monitor is fully described in the object list; user inputs are received through it; and application response is provided through it. Manifestly, it would be inefficient and distracting to the user to have to remember which monitor is active by devoting full attention to the cursor's location. Positioning the cursor in a particular monitor might, in some instances, not indicate the active monitor. In addition, as described later, the shape of the cursor may change, causing the user to lose track of it and the active monitor.

In the invention, the active monitor is indicated by the presence of a control panel. Preferably, when a user moves a cursor to a monitor boundary which is shared with another monitor, the cursor is moved from the one monitor (which is called the "last" monitor) to the monitor which is adjacent the boundary of the last monitor (which is called the "next" monitor). The last monitor is

DR000026
Page 230 of 235

5,452,416

15

then deactivated and the next monitor is activated. In response to movement of the cursor from the last monitor to the next, the control panel in the last monitor is turned off and the control panel is presented in the next monitor.

The procedure for performing the active monitor indication function is illustrated in the flow diagram of FIG. 12. Initially, the cursor position is read in step 123. When the cursor location is the same as the location of a boundary object defined in the object list of the current monitor, the application process prepares to deactivate the present monitor. In this regard, the positive exit is taken from the decision 124 and the application process issues control signals which turn off the control panel of the last monitor in step 125, reconfigures the object list to define all of the objects, including the boundaries, in the next monitor in step 126, and then executes a series of next monitor routines in step 127. One next monitor routine is conditioning of the SWITCH MONITOR signal to enable the color memory for the next monitor. Additional next monitor routines are shown in step 128. In this respect, cursor graphics pixels are configured to place the cursor adjacent the boundary in the next monitor which is closest to the last monitor. Next, the control panel is turned on in the next monitor and the procedure returns to step 123.

The control panel deactivation/activation sequence to indicate monitor activation is not necessarily limited to turning off the control panel in the last monitor and turning on the control panel in the next monitor. Other visual cues may be used. For example, the control panel colors may be inverted or changed in intensity.

ICON ROTATION

The invention also provides a "heads up" feature which permits a user to select an image manipulation icon without shifting attention from a presentation area to the control panel. This is accomplished by moving the cursor one time to an image manipulation icon in the control panel, changing the shape of the cursor to that icon, moving the cursor back to a presentation area, and rotating the shape of the cursor at that location through the succession of image manipulation icon shapes in response to motion of the trackball, and selecting an icon function at the location where the cursor shape has been changed.

Refer to FIGS. 13 and 14a–14d for an understanding of the icon rotation function of the invention. Initially, in decision 131, the cursor position read at step 130 is evaluated to determine whether it is over one of the image manipulation icons in the control panel. Positioning the cursor over one of these icons and clicking the left button causes the cursor to change its shape from a default shape (preferably, a hollow arrow) to the shape of the selected icon and results in illumination of the icon at the control panel as provided in step 133. The result of performing step 133 is illustrated in FIG. 14a where the shape of the cursor has been changed to the riffle icon shape comprising a set of pages. Selection of the icon at its control panel location will not immediately invoke the corresponding function because the image manipulation functions are intended to execute with respect to a selected image. Thus, to invoke the selected function, the cursor, now in the shape of the selected icon, must be moved to one of the presentation areas. Therefore, in step 134, the position of the cursor (now in the shape of an icon) is read and when decision 135 determines that the cursor is in an image display

16

container, the positive exit is taken and decision 136 checks the status of the left button on the trackball mechanism. If the left button is not down, the procedure loops through 134, 135, and 136 until it detects depression of the left button. When the left button is held down and the trackball is moved, the shape of the cursor is successively changed to the shapes of the image manipulation icons in their order of presentation in the control panel. This is illustrated in FIG. 14b where the cursor, in the shape of the riffle icon, is moved to the lower left corner of the top right presentation area of the illustrated series display container. Assuming that the user continues to hold the left button down while moving the trackball (136, 137, 138), the icon counter (indicated by reference numeral 35 in FIG. 2) is incremented or decremented in response to the trackball motion. The threshold check in step 139 indicates when the trackball has moved far enough to increment to the next value of the icon counter. The icon counter indexes to the portion of the object list which contains the image manipulation icons. These objects are numbered consecutively in the object list so that, by constraining the icon counter to cycle through a count sequence which corresponds to the index numbers of the icon objects, the user interface and video driver are enabled to correspondingly cycle through the icon shapes at the cursor location. In step 140, the shape of the cursor is changed at its location to the next image manipulation icon shape in sequence.

For example, consider FIGS. 14b–14d where the cursor initially has the shape of the riffle icon. Assume that the trackball is moved in a certain direction, resulting in change of the icon counter to a value which corresponds to the magnifying glass icon shape. The result is illustrated in FIG. 14c, where the cursor shape is changed to the magnifying glass. Further movement of the trackball in the same direction results in change at the icon counter to a value corresponding to the image motion icon consisting of four outwardly directed arrows shown in FIG. 14d. As illustrated in step 140, and in FIGS. 14b–14d, each time the cursor shape is changed to that of the next icon in the icon rotation procedure, the corresponding icon is illuminated on the control panel at the cursor location. The decision in step 141 continues the icon rotation loop until the left button is released. In this regard, for so long as the left button is held down and the negative exit is taken from decision 141 if there is no trackball motion or back up to step 138 if there is further trackball motion. If, after icon rotation, the left button is released, the positive exit is taken from decision 141 and a click of the left button is searched for by entering decision 136 through C.

The sequence 136, 137, 145 signifies a left button click to select an icon function, with the function being performed in step 146. This sequence can be entered by selecting an icon shape at the control panel, moving the cursor in the form of the icon to a display container, and then clicking the left button, as at 136, 137, 145. Alternatively, the clicking sequence is detected out of the positive exit from decision 141 after icon rotation when the left button is released. Note that the clicking sequence is exited if trackball motion is detected in step 137 following depression of the left button in step 136 before the left button is released (step 145). Any appropriate reset sequence will restore the cursor to its default shape.

5,452,416

17

18

## IMAGE ANNOTATION

Image annotation is provided by the set of annotation icons which is beneath the image manipulation icon set in the control panel. Arrows may be dragged from this icon set and selectively dropped on images by moving the cursor to the arrow, clicking the left button to change the shape of the cursor to the arrow, and moving the cursor in the arrow shape to the desired location. At the desired location, clicking the left button will "drop" the arrow at the location. Any appropriate RESET routine will return the cursor to its default shape.

An image can be annotated by selecting the A icon in the control panel, dragging the icon to a location where annotation is desired, clicking the left button of the trackball mechanism and then using the keyboard to annotate the image at the cursor location.

FIGS. 15 and 16 illustrate a procedure executed by the application process for automatically annotating a figure using the annotation lists indicated by reference numeral 60 in FIG. 6. Initially, it is asserted that the application process includes logic capable of selecting an annotation list which is appropriate to the anatomical target. Thus, for example, a sagittal image sequence of a portion of the spine would identify an annotation list which included shorthand annotations commonly employed to identify individual vertebra. The procedure of FIG. 15 provides for the rotation of an annotation list through the annotation box which is illuminated in the annotation icon group in FIG. 16. When this icon is selected, the cursor assumes its shape and is moved in response to the trackball to the desired location. At the desired location, the left button of the trackball is depressed in order to couple the annotation list to the box at the cursor location and in the control panel. For so long as the left button is depressed, motion of the trackball will rotate the listed annotations through the annotation box outlined in the image and in the control panel. When the appropriate annotation is rotated into the box, the left button is released. When the left button is clicked again, the annotation will be dropped in the shape of the annotation box at the cursor location and the cursor's shape will be changed back to the default shape with the tip of the cursor pointing to the lower left-hand corner of the annotation box in the image. This is illustrated in FIG. 16 and the procedure laid out in FIG. 15.

In FIG. 15, when the cursor is clicked at the annotation box, positive exits are taken from decisions 150 and 151, the box icon is illuminated at the control panel and the cursor in the shape of the box is moved to a desired location. When the left button is depressed while the cursor is in an image display container, the positive exits are taken from decisions 152 and 153 and the annotation list is rotated through the box shape in steps 154. When the left button is released and clicked again, the annotation is dropped at the last cursor position and the cursor shape is restored.

The X icon in the annotation set (FIG. 16) is used to delete annotations from an image. Initially, the X icon is clicked using the cursor. This illuminates the X icon and changes the cursor to the icon shape. The cursor is moved over the annotation to be deleted and the left trackball button is clicked. This removes the annotation from the object list and from the image, restores the cursor to its default shape, and turns off the X icon in the control panel.

Clearly, other embodiments and modifications of this invention will occur readily to those of ordinary skill in the art in view of these teachings. For example, cursor movement and clicking can be controlled from a keyboard. Furthermore, the images which are stored in the database may be actual images taken from the human patient, may be images taken from a veterinary subject, or may be synthesized images. Therefore, this invention is to be limited only by the following claims, which include all such embodiments and modifications when viewed in conjunction with the above specification and accompanying drawings.

We claim:

1. A system for presenting images of anatomical structure for examination by a diagnosing physician, including:

means including one or more display monitors for displaying at least one display container including a display area subdivided into a plurality of presentation areas in a predetermined array;

means for storing an image database including a plurality of images of anatomical structures, the images being separated into a plurality of image groups, in which:

each image group is indexed by a unique group identification; and

each image group is partitioned into one or more ordered image series, each ordered image series including a succession of images which illustrate incrementally registered aspects of an anatomical target, each image series being ordered by assignment to each image in the image series of a numerical position in a respective monotonically changing sequence; and

physician data tables are stored with indexes to unique group identifications and to physician identifiers and including entries specifying output functions and displaying formats;

means for receiving a physician identifier;

means for receiving a group identification;

means connected to the means for receiving, to the means for storing an image database and to the means for displaying at least one display container and responsive to a physician identification and to a group identification for retrieving at least one image series of an image group indexed by the group identification and for displaying the at least one image series in one or more presentation areas of the plurality of presentation areas in a display format contained in the physician data tables; and

means for providing an output from the system according to an output function specified in the physician data tables.

2. The system of claim 1, wherein:

the physician data tables include at least one entry specifying a mode of image series presentation, in which a first mode is a monitor mode and a second mode is a series mode; and

the means for retrieving and displaying including means for ordering the display of the at least one image series in response to mode specification by:

displaying each image series of the at least one image series in the order of its respective sequence in a single respective display container such that each presentation area of the single respective display container includes no more than one image, in

5,452,416

19

response to designation of the monitor mode; and

displaying each image series of the at least one image series one image at a time in the order of its respective sequence in a single respective presentation 5 area of the plurality of presentation areas, in response to designation of the series mode.

3. The system of claim 2, further including means for synchronizing the presentation of each image series of two or more image series such that whenever the dis- 10 play of one image series of the two or more image series is changed to display a next image in the order of its respective sequence, each other image series of the two or more image series is correspondingly changed by the means for retrieving and displaying. 15

4. The system of claim 2, wherein:
the at least one display container includes:
    a first display container for presenting a first plurality of presentation areas in a predetermined array; and 20
    a second display container for presenting a second plurality of presentation areas in the predetermined array;
the at least one image series includes two or more image series of the image group indexed by the 25 group identification; and
the means for retrieving and displaying displays each image series in the order of its respective sequence in a respective display container such that each presentation area of the respective display con- 30 tainer includes no more than one image, in response to designation of the monitor mode of presentation.

5. The system of claim 1, further including:
means for displaying a palette display container on the one or more display monitors, the palette dis- 35 play container for presenting a plurality of presentation areas in an array; and
means for selecting an image of an image series displayed in the at least one display container and reproducing the selected image in a presentation 40 area of the palette display container.

6. A method for presenting images of anatomical structure for examination by a diagnosing physician, the method being executed on a computer display system having: 45
a display for displaying at least one display container subdivided into a plurality of presentation areas in a predetermined array;
a storage subsystem for storing an image database including a plurality of images of anatomical struc- 50 tures; and
means connected to the storage subsystem and to the at least one display container for retrieving images from the image database and displaying retrieved images in the at least one display container; 55
the method including the steps of:
storing a plurality of images in the image database;
separating the plurality of images into image groups;
indexing each image group by a unique group identification; 60
partitioning each image group into one or more ordered image series, each ordered image series including a succession of images which illustrate incrementally registered aspects of an anatomical target, each image series being ordered by assign- 65 ment to each image in the image series of a numerical position in a respective monotonically changing sequence;

20

storing a first data table in the storage subsystem, the first data table listing a plurality of referring physician identifiers, each referring physician identifier being indexed from at least one group identification, each referring physician identifier identifying a referring physician and including respective fields specifying output preferences of the identified referring physician for outputting to the identified referring physician images from the display;

storing a second data table in the storage subsystem, the second data table listing a plurality of diagnosing physician identifiers, each diagnosing physician identifier identifying a diagnosing physician and including respective fields specifying format preferences and mode preferences of the identified diagnosing physician for displaying images on the display; and

providing a group identification;

providing a diagnosing physician identifier;

in response to the group identification and the diagnosing physician identifier, retrieving at least one image series of an image group indexed by the group identification and displaying the at least one image series in one or more presentation areas of the plurality of presentation areas in accordance with a format preference specified in fields of the diagnosing physician identifier; and

outputting images from the at least one image series according to output preferences of a referring physician identified by a referring physician identifier indexed from the group identification.

7. The method of claim 6, further including:
providing mode fields in the diagnosing physician identifiers, each mode field specifying a mode of image series presentation, in which a first mode is a monitor mode and a second mode is a series mode;
displaying one image series in the order of its respective sequence in one display container such that each presentation area of the display container includes no more than one image of the at least one image series, in response to designation of the monitor mode; and
displaying one image series one image at a time in the order of its respective sequence in a single respective presentation area of one display container, in response to designation of the series mode.

8. The method of claim 7, further including the steps of:
displaying a first display container including a first plurality of presentation areas in a predetermined array;
displaying a second display container including a second plurality of presentation areas in the predetermined array;
the step of retrieving and displaying including retrieving two image series of the image group indexed by the group identification; and
the step of retrieving and displaying including displaying each image series in the order of its respective sequence in a respective display container means such that each presentation area of the respective display container means includes one image, in response to designation of the monitor mode of presentation.

9. The method of claim 7, further including the steps of:
in the step of retrieving and displaying, retrieving two image series of the image group indexed by the

5,452,416

21

group identification and displaying each image series one image at a time in the order of its respective sequence in a single respective presentation area.

10. The method of claim 9, further including synchronizing the presentation of each image series of the two image series such that whenever the display of one image series of the two image series is changed to display the next image in the order of its respective sequence, each other image series of the two image series is correspondingly changed.

11. A computer display system for presenting images of anatomical structure for examination, including:

monitor means for presenting graphical images;

means for displaying a first display container and a second display container on the monitor means, the first display container including a first preselected number of substantially rectangular presentation areas in a first substantially rectangular array, and the second display container including a second preselected number of substantially rectangular presentation areas in a second substantially rectangular array;

at least one data storage device for storing:

an image database including a plurality of images of anatomical structure, the images being separated into image groups, in which:

each image group is indexed by a unique group identification, wherein each group identification names a respective image group and includes an identification of a patient whose anatomy is illustrated by the image group; and

each image group is partitioned into one or more ordered image series, each ordered image series including a succession of images which illustrate incrementally registered aspects of an anatomical target, each image series being ordered by assignment to each image in the image series of a position in a respective monotonically changing sequence;

a first table data structure listing a plurality of referring physician identifiers, each referring physician identifier being indexed from at least one group identification, each referring physician identifier identifying a referring physician and including respective fields specifying output preferences of the identified referring physician for outputting to the identified referring physician images from the monitor means; and

a second table data structure listing a plurality of diagnosing physician identifiers, each diagnosing physician identifier identifying a diagnosing physician and including respective fields specifying format preferences and mode preferences of the identified diagnosing physician for displaying images on the monitor means;

application means connected to the monitor means, to the at least one data storage device and to the means for displaying the first and second display containers and responsive to a user-selected group identification and a diagnosing physician identifier for displaying at least two image series of an image group indexed by the user-selected group identification, said application means further for:

formatting each image series for display on the monitor means in accordance with format preferences specified in fields of the diagnosing physician identifier; displaying each image series on the monitor

22

means in the order of its respective sequence in a respective display container such that each presentation area of the respective display container includes no more than one image; and

outputting images from said at least two image series according to output preferences of a referring physician identified by a referring physician identifier indexed from the user-specified group identification.

12. The computer display system of claim 1, further including:

means for displaying a palette display container on the monitor means, the palette display container including a plurality of presentation areas in an array; and

means coupled to the means for displaying first and second display containers for picking an image of an image series displayed in the first or second display container and reproducing the selected image in a presentation area of the palette display container.

13. The computer display system of claim 1, wherein: the respective fields of each diagnosing physician identifier specify;

a mode of image series presentation;

a rectangular array format; and

rectangular array dimensions; and

the application means includes respective means for;

presenting an image series in a mode specified by a diagnosing physician identifier;

presenting rectangular arrays in the first and second display containers in a format specified by the diagnosing physician identifier; and

presenting the rectangular arrays in dimensions specified by the diagnosing physician identifier.

14. A computer display system for presenting images of anatomical structure for examination, including:

monitor means for presenting graphical images;

means for displaying at least one display container on the monitor means, the at least one display container including a preselected number of substantially rectangular presentation areas in a substantially rectangular array; and

at least one data storage device for storing:

an image database including a plurality of images of anatomical structure, the images being separated into image groups, in which:

each image group is indexed by a unique group identification, wherein each group identification names a respective image group and includes an identification of a patient whose anatomy is illustrated by the image group; and

each image group is partitioned into one or more ordered image series, each ordered image series including a succession of images which illustrate incrementally registered aspects of an anatomical target, each image series being ordered by assignment to each image in the image series of a position in a respective monotonically changing sequence;

a first table data structure listing a plurality of referring physician identifiers, each referring physician identifier being indexed from at least one group identification, each referring physician identifier identifying a referring physician and including respective fields specifying output preferences of the identified referring physician for outputting to

5,452,416

23

24

the identified referring physician images from the monitor means; and

a second table data structure listing a plurality of diagnosing physician identifiers, each diagnosing physician identifier identifying a diagnosing physician and including respective fields specifying format preferences and mode preferences of the identified diagnosing physician for displaying images on the monitor means;

application means connected to the monitor means, to the at least one data storage device and to the means for displaying at least one display container and responsive to a user-selected group identification and a diagnosing physician identifier for displaying at least two image series of an image group indexed by the user-selected group identification, said application means further for:

formatting each image series for display on the monitor means in accordance with format preferences specified in fields of the diagnosing physician identifier;

displaying each image series on the monitor means one image at a time in the order of its respective sequence in a respective presentation area; and

outputting images from said image group according to output preferences of a referring physician identified by a referring physician identifier indexed from the user-specified group identification.

15. The computer display system of claim 2, further including:

means for displaying a palette display container on the monitor means, the palette display container including a plurality of presentation areas in an array; and

means coupled to the means for displaying at least one display container for picking an image of an image series displayed in the at least one display container and reproducing the selected image in a presentation area of the palette display container.

16. The computer display system of claim 2, wherein: the respective fields of each diagnosing physician identifier specify:

a mode of image series presentation;

a rectangular array format; and

rectangular array dimensions; and

the application means includes respective means for:

presenting an image series in a mode specified by a diagnosing physician identifier;

presenting rectangular arrays in the at least one display container in a format specified by the diagnosing physician identifier; and

presenting the rectangular arrays in dimensions specified by the diagnosing physician identifier.

* * * * *