# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR SYSTEMS, INC., <br><br> Plaintiff, <br> vs. <br><br> FUJIFILM MEDICAL SYSTEMS USA, INC., et al., <br><br> Defendants. | CASE NO. 06-CV-417-JLS (CAB)[1] <br><br> ORDER GRANTING PLAINTIFF'S MOTION TO CORRECT FIGURE 8 IN U.S. PATENT NO. 5,452,416 <br><br> [# 241] |

At the *Markman* hearing on United States Patent No. 5,452,416 ('416 Patent), Plaintiff DR Systems, Inc. raised the issue that Figure 8 contained an error that required correction. The Court noted the point of contention in Claim 5, where Figure 8 is referenced, to indicate that a motion to correct would be filed, and completed the claim construction hearing. Thereafter, Plaintiff filed the instant motion to correct the patent. In light of the briefs and the argument of counsel at the November 13, 2007 hearing, the Court grants Plaintiff's motion. By separate Order, the Court will amend the Claim Construction Chart on the '416 patent (and incorporate the clerical changes in the parties' joint motion to correct that chart).

/ / /

---

[1] After the *Markman* hearing on Plaintiff's patent, the case was transferred to another District Judge in preparation for the undersigned's retirement; however, the Court heard this related motion in the interest of judicial economy.

|   |   |
|---|---|
| 1 | Background |

2    The '416 patent covers an automated system and a method for organizing,
3 presenting, and manipulating medical images. Figure 8 is a block diagram. A block
4 shaped like a diamond indicates the specific condition the computer evaluates, for example
5 "right button clicked?," and a block in a rectangular shape identifies the action to be taken
6 by the computer, such as "copy image and graphics indicated by cursor to palette grid
7 location indicated by palette grid pointer." '416 Patent at Fig. 8 (boxes 94 and 94a); Pl.'s
8 Ex. B at 212 (DR000008).

9    During the prosecution, the patentee submitted a rough hand-drawn version of
10 Figure 8 (hereinafter "First Rough"). Pl.'s Ex. A at 90 (DR000120). In that drawing, the
11 "No" arrow from Box 94 goes to a diamond-shaped box, which was then labeled as Box 95
12 and which is located at the top of the second column; while the "Yes" arrow leads to an
13 unnumbered rectangular box at the bottom of the first column. *Id.* (Only one of the
14 rectangular-shaped boxes on that "First Rough" has a number assigned to it, Box 90.)
15 Plaintiff asserts that this "First Rough" is the correct diagram because if the right button on
16 the mouse is clicked at Box 94, then the next action is taken (*i.e.*, to copy the image and
17 graphics to the palette grid location), but if the right button is *not* clicked, then the program
18 skips that step, and proceeds to Box 95 (which asks "next monitor?"). Thus, a "Yes"
19 answer results in a different step than a "No" answer.

20    After the Patent and Trademark Office ("PTO") accepted the application, the
21 patentee submitted a final smooth drawing, which was printed in the patent as issued
22 (hereinafter "Final Smooth"). '416 Patent, Fig. 8; Pl.'s Ex. B at 212 (DR000008). In that
23 "Final Smooth" version, the box that had not been numbered was now identified as Box
24 94a. Box 94a did not fit at the bottom of column one and was moved up to the top of the
25 second column; however, the drafter kept the arrows in the same location. As a result, both
26 the "No" arrow and the "Yes" arrow from Box 94 meet and continue to Box 94a. *Id.*
27 Plaintiff asserts that this diagram is incorrect and asks the Court to correct it. Plaintiff has
28 submitted an application to the PTO for a Certificate of Correction, but in the interim,

1 Plaintiff seeks relief from the Court. Defendants argue that the Court lacks the authority to
2 make this type of substantive correction. The parties agree on the facts and the law, but
3 dispute the application of the law to these facts.

4 <u>Discussion</u>

5       The Federal Circuit has held that a district court has the authority to correct a patent
6 "only if: (1) the correction is not subject to reasonable debate based on consideration of the
7 claim language and the specification and (2) the prosecution history does not suggest a
8 different interpretation of the claims." *Novo Industries, L.P. v. Micro Molds Corporation*,
9 350 F.3d 1348, 1350 (Fed. Cir. 2003). In reaching this conclusion, the Federal Circuit cited
10 with approval an early Supreme Court decision – *I.T.S. Rubber Co. v. Essex Rubber Co.*,
11 272 U.S. 429 (1926) (hereinafter "*Essex*") – for the proposition that "certain obvious errors
12 in the patent can be corrected by the district court in construing the patent." *Novo*, 350
13 F.3d at 1354-55.[2]

14       The *Essex* case concerned claim language on a rubber cushion for shoes that omitted
15 the term "rear" before the description of the "upper edge" of the heel lift. 272 U.S. at 429-
16 30. The district court had corrected the patent to include the word "rear" and the Supreme
17 Court affirmed. The Supreme Court considered both the face of the patent and the
18 prosecution history to determine whether a correction was appropriate. *Id.* at 435-43.
19 Looking at the information contained within the file wrapper, the Supreme Court found that
20 the error was "inadvertent and unnoticed" and that the PTO and the patentee "understood"
21 that the claim included the word "rear," otherwise it would be "for a different invention
22 from that described in the specification and drawings of the original patent." *Id.* The
23 Supreme Court stressed that the correction "is not in any real sense, a re-making of the
24 claim; but is merely giving it the meaning which was intended by the applicant and
25 understood by the examiner" during the prosecution of the patent's claims. *Id.* at 442.

26 ——————————

27 [2]At the time the Supreme Court decided *Essex*, the patent statute did not contain express provisions for correcting errors, but the Federal Circuit held that Congress did not overrule *Essex* or limit the district court's authority by enacting 35 U.S.C. § 254 (authorizing
28 corrections of errors made by the PTO) and § 255 (authorizing corrections of errors made by the patentee). *Novo*, 350 F.3d at 1354-57.

1  The Federal Circuit followed and applied this analysis in the *Novo* case but found
2  that the requirements were not satisfied. *Novo*, 350 F.3d at 1354-58 (nature of error was
3  not evident on face of patent, patentee proposed two different corrections, prosecution
4  history undermined theory, and court would have to guess as to what was intended);
5  *Southwest Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280, 1291 (Fed. Cir. 2000). By
6  contrast, when there are minor, unintentional errors apparent from the intrinsic record and
7  the correction is not inconsistent with the prosecution history, then district courts have the
8  authority to make the correction. *Hoffer v. Microsoft Corp*, 405 F.3d 1326, 1331 (Fed. Cir.
9  2005); *Group One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1302-03 (Fed. Cir. 2005);
10 *Lemelson v. General Mills, Inc.*, 968 F.2d 1202, 1203 & n.3 (Fed. Cir. 1992) (correcting
11 inadvertent, obvious clerical error).

12  Here, it is clear to the reader of the "Final Smooth" Figure 8 that there is an obvious
13 error in the arrows from Box 94.[3] When a question asks if a condition has been met and the
14 only possible answer is either "yes" or "no," then the answer affects the outcome. The
15 specification confirms that at Box 94 "[i]f the right button of the trackball mechanism is
16 clicked, then application process infers that the user wants the image in the presentation
17 area moved to the working palette grid location indicated by the palette grid pointer." '416
18 Patent, Col. 12:48-54; Pl.'s Ex. B at 229 (DR0000025). The logical interpretation of the
19 flow chart in Figure 8 is that outcome depends upon the answer and that a different thing
20 happens if that condition is not satisfied (*i.e.*, the right button on the mouse has <u>not</u> been
21 clicked). The Court does not need to guess what was intended, *Novo*, 350 F.3d at 1357-58,
22 because the prosecution history contains the "First Rough" drawing in which the "No"

---

[3]The Court invited the parties to submit expert testimony regarding the correction, but neither party provided a declaration by a person of ordinary skill in the art. RT 9/24/07 at 155-56. The cases do not specify that such testimony is required and the Court was able to resolve this motion without expert testimony. *Group One*, 407 F.3d at 1303 (referring to "a reader of the patent"); *see Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1370-71 (Fed. Cir. 2001) (referring to "the reader of the public record" and discussing importance of public notice when a claim was broadened); *see also Biotec Biologische Naturverpackungen GmbH v. Biocorp, Inc.*, 249 F.3d 1341, 1348 (Fed. Cir. ) (referring to "the interested reader" and "a person of reasonable intelligence").

arrow skips a rectangular box (which is now identified as Box 94a) to proceed to another diamond-shaped box, but the "Yes" arrow goes directly to that next rectangular box (now labeled as Box 94a). Thus, the error "is apparent on the face of the printed patent and the correct[ion] . . . is apparent from the prosecution history." *Hoffer*, 405 F.3d at 1331. Moreover, the patent application as filed, prosecuted, and approved showed that the "No" arrow from Box 94 skipped a rectangular box and that the "Yes" arrow did not skip that rectangular box. Because "the error was apparent from the face of the patent, and that view is not contradicted by the prosecution history," Plaintiff's motion to correct Figure 8 is granted. *Hoffer*, 405 F.3d at 1331; *cf. Novo*, 350 F.3d at 1358 (correction denied when court could not determine "what correction is necessarily appropriate").

Defendants oppose the correction because the prosecution history contains a "Second Rough" freehand sketch. Pl.'s Ex. A at 168 (DR000198). Defendants argue that the Court cannot make the proposed correction because the two rough drawings are inconsistent. The Court disagrees. The "Second Rough" Figure 8 merely added an identifying number to the rectangular box located below Box 94. The difference of labeling box 94*a* is not material to the correction at issue. In both the "First Rough" and "Second Rough" Figure 8 shows that the "No" click bypasses Box 94a and proceeds directly to the question in Box 95. This is not an instance in which the proposed correction is inconsistent with the prosecution history. *Novo*, 350 F.3d at 1357 ("the prosecution history undermines [Plaintiff's] argument" when Plaintiff proposed two different corrections).

In sum, the Court has the authority to correct this error because it is clear on the face of the patent that the "Final Smooth" Figure 8 in the Patent (DR 43) is incorrect and the intrinsic record makes "clear how the mistake should be corrected." *Superior Fireplace*, 270 F.3d at 1370.

## Conclusion

Upon due consideration of the parties' memoranda and exhibits, the arguments of counsel, a review of the record, and for the reasons set forth above, the Court GRANTS

1  Plaintiff's Motion to Correct Figure 8 of U.S. Patent No. 5,452,416. [# 241]. The Court
2  will issue a separate Amended Claim Construction Order.
3      IT IS SO ORDERED.
4  DATED: December 3, 2007

*Rudi M. Brewster*

Hon. Rudi M. Brewster
United States Senior District Judge